1  Divya Gupta (SBN 284282)
   *gupta.divya@dorsey.com*
2  **DORSEY & WHITNEY LLP**
   600 Anton Blvd., Suite 2000
3  Costa Mesa, CA 92626
   Tel: (714) 800-1400; Fax: (714) 800-1499
4
   Michelle S. Grant*
5  *grant.michelle@dorsey.com*
   Andrew Holly*
6  *holly.andrew@dorsey.com*
   Meghan Deslauriers*
7  *deslauriers.meghan@dorsey.com*
   **DORSEY & WHITNEY LLP**
8  50 S. 6th Street, #1500
   Minneapolis, MN, 55402
9  Tel: (612) 340-2600; Fax: (612) 340-2868

10 Attorneys for Defendants
   UnitedHealth Group Incorporated,
11 United HealthCare Services, Inc., UnitedHealthcare
   Insurance Company, United Behavioral Health,
12 United HealthCare Service LLC,
   OptumInsight, Inc., Optum Services, Inc.
13
   *Pro Hac Vice Forthcoming*
14

15            **UNITED STATES DISTRICT COURT**

16    **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

17

18 SOBERTEC LLC, a California limited       | CASE NO. _____
   liability company, and BEACHSIDE        |
19 RECOVERY LLC, a California limited       | **NOTICE OF REMOVAL OF**
   liability company,                      | **ACTION TO FEDERAL COURT**
20           Plaintiffs,                    | **(28 U.S.C. §§ 1331 AND 1441(a))**
21      v.                                  |
22 UNITEDHEALTH GROUP                       | (Superior Court of the State of
   INCORPORATED, et. al.                    | California, County of Orange, Case
23                                          | No. 30-2019-01069823-CU-CO-CJC)
           Defendants.                      |
24                                          |
25                                          | Complaint Filed: May 14, 2019
26
27
28

                                    1

**TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446(a), Defendants UnitedHealth Group Incorporated, United HealthCare Services, Inc., UnitedHealthcare Insurance Company, United Behavioral Health, United HealthCare Service LLC, OptumInsight, Inc., and Optum Services, Inc. (collectively "United"), by and through its undersigned counsel, appearing specially so as to preserve any and all defenses including those available under Rule 12 of the Federal Rules of Civil Procedure, hereby invoke this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1331, 1367 and 1441(a) and 29 U.S.C. 1132(e)(1).  As grounds in support of this Notice of Removal, United respectfully states as follows:

1.     On May 16, 2019, Plaintiffs served each of the United Defendants with a Summons and Complaint ("Complaint"), a true and correct copy of which is attached hereto as **Exhibit A**.  The action was filed on May 14, 2019 in the Superior Court of the State of California, County of Orange, styled and captioned exactly as above, and assigned Case No. 30-2019-01069823-CU-CO-CJC.  The Complaint identified the United entities as the only named defendants, along with 1-100 "Doe" defendants.  United is informed and believes that none of the unidentified Doe defendants have been served in this matter.

2.     On June 6, 2019 the parties jointly filed and the court later approved a protective order regarding confidential information and material, a true and correct copy of which is attached hereto as **Exhibit B**.  No other pleadings or papers have been filed in the action.

3.     This Notice of Removal is timely filed as required by 28 U.S.C. Section 1446(b) and Fed. R. Civ. P. 6(a) because it is filed within thirty days after service of the Summons and Complaint was first made on any of the United defendants.  Where, as here, the thirtieth day falls on Saturday, June 15, 2019, the

1   thirty-day period is extended until Monday June 17, 2019.  *See, e.g., Cmty. Hous.*

2   *P'ship v. Byrd*, 2013 U.S. Dist. LEXIS 164661, at *5-7 (N.D. Cal. Nov. 19, 2013)

3   (thirty-day period for removal fell on Saturday June 29, 2013, so period was extended

4   until Monday July 1, 2013 by Rule 6(a)); *Hernandez v. Menlo Logistics, Inc.*, 2013

5   U.S. Dist. LEXIS 156746, at *1, 18, 56-59 (D. N.M. Sept. 30, 2013) (collecting cases,

6   and holding that although thirty-day deadline for removal fell on Sunday August 26,

7   2012, that deadline was extended until Monday August 27, 2012 by Rule 6(a)).

8        4.      All of the United defendants, the only properly joined and served

9   Defendants, join in the removal of this action.

10       5.      Pursuant to 28 U.S.C. Section 1331 and 29 U.S.C. Section 1132(e)(1),

11  Federal District Courts have original jurisdiction over all civil actions arising under

12  the laws of the United States and under the Employee Retirement Income Security

13  Act ("ERISA"), Title 29, United States Code, Sections 1001 *et seq.*  Pursuant to 28

14  U.S.C. Sections 84(c), 1331, 1441(a), and 29 U.S.C. Section 1132(e) this state court

15  action may be removed to this Federal District Court because it is the district and

16  division embracing the place, the County of Orange, California, where such action

17  is pending.

18                    **FEDERAL QUESTION JURISDICTION**

19       6.      The action described in Paragraph 1 above is a civil action of which

20  this Court has original jurisdiction under the laws of the United States, specifically

21  under ERISA, and therefore removable under 28 U.S.C. Section 1441(a) and 29

22  U.S.C. Section 1132(e)(1).  In pertinent part, Section 1441 provides as follows:

23

24       Except as otherwise expressly provided by Act of Congress, any civil action
         brought in a State court of which the district courts of the United States have
25       original jurisdiction, may be removed by the defendant or the defendants, to
         the district court of the United States for the district and division embracing
26       the place where such action is pending.

27  28 U.S.C. § 1441(a).

28

                                                    **NOTICE OF REMOVAL**

7. Removal jurisdiction based upon a federal question exists when a federal question is presented on the face of a plaintiff's complaint. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). An exception to the well-pleaded complaint rule exists where, as here, a federal statute, such as ERISA, wholly displaces one or more state law causes of action through "complete preemption." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08 (2004). Under this doctrine, although Plaintiffs' Complaint purports to assert only state-law causes of action, since at least some of those causes of actions are entirely encompassed by Section 502(a) of ERISA, 29 U.S.C. Section 1132(a), the Complaint is converted from a state law complaint into a federal claim for purposes of the well-pleaded complaint rule. *Davila*, 542 U.S. at 207-08.

8. Here, at least some of the claims asserted relate to patients who are covered by ERISA-governed employee benefit plans.

9. At United's request, Plaintiffs have provided additional information to United for the patients whose claims are at issue. United used that information to determine that at least some of the patients involved are beneficiaries or participants in ERISA health plans, and their claims for benefits under these ERISA plans for these services provided by the provider-Plaintiffs have been denied. Specifically, United used the claims numbers and dates of service identified in Exhibits C and D to the Complaint—as well as patient names provided by Plaintiffs—to identify a sampling of applicable health plans. (*See* Declaration of Ngoc Han Nguyen at ¶ 4.) For example, one patient was covered by the Van De Pol Enterprises Welfare Benefit Plan, which is an ERISA-governed employee health benefit plan sponsored by Van De Pol Enterprises; one patient was covered by the ROCO Management, LLC Welfare Benefit Plan, which is an ERISA-governed employee health benefit plan sponsored by ROCO Management, LLC; one patient was covered by the U.S. Bank Comprehensive Welfare Benefits Plan, which is an ERISA-governed employee health benefit plan sponsored by U.S. Bancorp. (Nguyen Decl., Exs. 1-

3). As the exhibits reflect, those plan sponsors are employers engaged in commerce. *See* 29 U.S.C. § 1003(a).

10. For each of the patients identified above, Plaintiffs submitted claim forms to United indicating that they had received an assignment of ERISA plan benefits from the patient. (Nguyen Decl., Exs. 4-6). Thus, Plaintiffs could have brought suit as assignees under ERISA for the portion of their patients whose claims for benefits are covered under ERISA plans.

11. Under the complete preemption doctrine, the legal claims that Plaintiffs seek to adjudicate with respect to these ERISA plans are properly characterized as claims under ERISA Section 502(a), even though they are pled as state law claims. Specifically, the Complaint makes clear that Plaintiffs are asking the Court to adjudicate claims for benefits under ERISA Section 502(a)(1)(B), and to award damages pursuant to ERISA. Plaintiffs, for example, seek a declaration that their "Claims for payment are valid and enforceable against Defendants and Defendants' claim denials and processing delays are unlawful." (Compl. at p. 55.) This refers to the claims for benefits that Plaintiffs brought on behalf of their patients under ERISA's administrative review procedures. The relief sought aligns with, and relies upon, ERISA which permits civil actions to recover benefits due and to enforce plan rights, and which makes improper claim denials and improper processing delays unlawful. ERISA §§ 502(a)(1)(B), 503.

12. Further, Plaintiffs allege that United violated the administrative review procedures established under ERISA Section 503 and 29 C.F.R. Section 2560.503-1. (*See, e.g.*, Compl. ¶ 124 ("the parties' conduct must be viewed against the backdrop of the comprehensive regulatory scheme under which the parties conducted business"); *id.* ¶ 146 ("Defendants [] have a duty to fairly and competently receive, review and process Plaintiffs' claims").) Thus although couched in state law causes of action, the Complaint attempts to adjudicate rights that are properly characterized as claims under ERISA. Because Plaintiffs' state

NOTICE OF REMOVAL

1  law claims are attempting to adjudicate rights that arise under federal law, this
2  Court has federal question jurisdiction over these claims, which are inherently
3  federal in nature.

4       13.    Likewise, Plaintiffs' claims require interpretation of the ERISA plan
5  terms and seek to enforce obligations imposed by ERISA, not any independent
6  duties.  Plaintiffs' claims all seek relief authorized by ERISA.  Each individual
7  claim is therefore preempted and removal is proper.  *See Melamed, M.D. v. Blue*
8  *Cross of California*, 557 Fed. Appx. 659, 661 (9th Cir. 2014) (complete preemption
9  of an individual claim is sufficient for removal to be proper).  Specifically,
10  Plaintiffs' claim for breach of an "implied-in-fact" contract (Count 1) is properly
11  characterized as a claim for ERISA benefits or a claim that properly arises under
12  federal law.  Plaintiffs allege that an implied contract existed due to the parties'
13  "course of conduct and dealing." (Compl. ¶ 114.)  But that "course of conduct and
14  dealing" consisted of Plaintiffs calling United to "verify [] members' benefits and
15  confirm those members' eligibility" pursuant to the terms of their "coverage," *i.e.*,
16  their ERISA benefits.  (Compl. ¶ 81.)  Those alleged calls and communications are
17  not only communications about the terms of ERISA plans, but also are undertaken
18  pursuant to ERISA's claims regulations and plan terms.  Courts hold that such
19  claims are completely preempted.  *Melamed*, 557 Fed. Appx. at 661 (holding
20  implied contract claim is "completely preempted" because claim existed "only
21  because of [the defendant's] administration of ERISA-regulated benefit plan)
22  (citation omitted).  Plaintiffs' Complaint seeks benefits due under the terms of the
23  ERISA plans in question and, as such, Count I is preempted by ERISA.

24       14.    All of Plaintiffs' remaining claims—for quantum meruit (Count 2),
25  promissory estoppel (Count 3), fraud and deceit (Count 4), negligent
26  misrepresentation (Count 5), negligence (Count 6), and statutory unfair competition
27  (Count 7)—are all preempted for the same reason: any alleged obligation to pay
28  arises from ERISA or the terms of ERISA plans, or they raise federal questions that

NOTICE OF REMOVAL

create federal question jurisdiction. *See Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*, 2013 U.S. Dist. LEXIS 190703, at *30-32 (C.D. Cal. Mar. 12, 2013) (holding ERISA preempted quantum meruit claim because provider's "claim to reimbursement [arose] from Plaintiff's status as a beneficiary of its patients and therefore 'relates to' ERISA"). Likewise, any claim that misrepresentations were made about plan terms during the communications mandated by plan terms and ERISA's claims regulations could be adjudicated under ERISA Section 502(a). *See, e.g., In re Wellpoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 930 (C.D. Cal. 2012) (complete preemption under Section 502(a)); *Lyms, Inc. v. Millimaki*, 2009 U.S. Dist. LEXIS 136850, at *9-10 (S.D. Cal., Aug, 25, 2009) (ERISA completely preempted fraud claim based on "plan mismanagement"). The ultimate basis for these claims is United's alleged failure to pay benefits under ERISA plans and/or violations of ERISA's claims processing procedures. They are therefore preempted. *Serpa v. SBC Telecomms., Inc.*, 318 F. Supp. 2d 865, 871 (N.D. Cal. 2004) (ERISA completely preempted state law claims that "would not exist" absent the failure to pay benefit claims.)

15.    To the extent Plaintiffs' fraud claims are based on United's allegedly delayed "processing" of claims (Compl. ¶¶ 131-32, 140-44), those allegations go the core of the claims handling function under ERISA Section 503 and 29 C.F.R. Section 2560.503-1 and are likewise preempted. *Davila*, 542 U.S. at 204 (ERISA completely preempts claims regarding the "handling of coverage decisions"); *see also Cruzeta v. Sony Elecs., Inc.*, 2013 U.S. Dist. LEXIS 60251, at *17 (April 25, 2013) ("Because these claims therefore 'spring from the handling and disposition' of Plaintiff's benefit plan, these claims are entirely preempted by ERISA . . . .") (citing *Tingey v. Pixley-Richards West, Inc.*, 953 F.2d 1124, 1131 (9th Cir. 1992)). Alternatively, even if Plaintiffs' claims are not preempted by ERISA, they nevertheless depend upon federal standards and rules and thus raise federal questions under 28 U.S.C. § 1331.

7

16.     The result is the same for Plaintiffs' negligence claim (Count 6). ERISA provides an avenue to adjudicate claims that an "an insurance company[] negligent[ly] administ[ered] [claims]." *Bast v. Prudential Ins. Co. of Amer.*, 150 F.3d 1003, 1008 (9th Cir. 1998). Thus, Plaintiffs' claim that the Defendants failed to "fairly and competently receive, review, and process Plaintiffs' claims" (Compl. ¶ 146) arises under ERISA, not California law.

17.     Finally, Plaintiffs' Unfair Competition Law, Cal. Bus. & Prof. Code Section 17200, *et. seq.* is also preempted or presents a removable federal question. UCL claims for denials of ERISA benefits are preempted. *Lodi Mem'l Hosp. Ass'n v. Tiger Lines, Ltd. Liab. Co.*, 2015 U.S. Dist. LEXIS 110495, at *19 (E.D. Cal. Aug. 20, 2015). Injuries that derive solely from ERISA, such as a failure to pay benefits, cannot be used as the injury in fact or economic loss for a UCL claim because those are derivative claims subject to ERISA's exclusive remedies. *Cleghorn v. Blue Shield of California*, 408 F.3d 1222, 1227 (9th Cir. 2005) (holding that a UCL claim could not be based upon liabilities created by ERISA); *see also Leonard v. Metlife Ins. Co.*, 2013 U.S. Dist. LEXIS 200342, at *16 (C.D. Cal. Feb. 25, 2013) (ERISA completely preempted UCL claim because any obligation that Defendant has to pay benefits . . . arises from its administration of the ERISA-regulated plan"). Here, although couched in various state statutes, the heart of Plaintiffs' UCL claim is that United allegedly "refused to reimburse Plaintiffs" for patients' claims and failed to "adopt and implement reasonable standards for the prompt investigation and processing of claims." (Compl. ¶¶ 157, 158.) As noted above, ERISA governs claims for ERISA benefits and improper claims processing. Alternatively, the UCL claim purports to raise claims under the federal Mental Health Parity Act, which is incorporated into ERISA under 29 U.S.C. Section 1185a. Although presented under the guise of state law terms, this claim seeks to adjudicate claims that are both completely preempted by ERISA and also present federal questions under 28 U.S.C. Section 1331. The Complaint is therefore

NOTICE OF REMOVAL

1  removable to federal court.

2      18.    Accordingly, Plaintiffs' federal claim arises under the laws of the

3  United States and could have been originally filed in this Court.

**ADOPTION AND RESERVATION OF DEFENSES**

5      19.    Nothing in this Notice of Removal shall be interpreted as a waiver or

6  relinquishment of any of United's rights to assert any defense or affirmative matter

7  under California law and/or Rule 12 of the Federal Rules of Civil Procedure, any

8  state or federal statute, or otherwise.

9      WHEREFORE, Defendants UnitedHealth Group Incorporated, United

10 HealthCare Services, Inc., UnitedHealthcare Insurance Company, United

11 Behavioral Health, United HealthCare Service LLC, OptumInsight, Inc., and

12 Optum Services, Inc. request to remove this action from the Superior Court in and

13 for Orange County, California, to the United States District Court for the Central

14 District of California, Southern Division.  In the event the Court considers remand

15 *sua sponte*, United respectfully requests the opportunity to submit such additional

16 argument or evidence in support of removal as may be necessary.

18 Dated: June 17, 2019

DORSEY & WHITNEY LLP

By: _____
Divya S. Gupta
Michelle Grant
Andrew Holly
Meghan DesLauriers

Attorneys for Defendants UnitedHealth
Group Incorporated, United HealthCare
Services, Inc. UnitedHealthcare Insurance
Company, United Behavioral Health,
United HealthCare Service LLC,
OptumInsight, Inc., and Optum Services,
Inc.

9

4848-1696-8088\

# EXHIBIT A

1  Zachary Rothenberg (SBN 215404)
   Salvatore J. Zimmitti (SBN 245678)
2  **NELSON HARDIMAN LLP**
   1100 Glendon Avenue, 14th Floor
3  Los Angeles, CA 90024
   Telephone: (310) 203-2800
4  Facsimile:  (310) 203-2727
   zrothenberg@nelsonhardiman.com
5  szimmitti@nelsonhardiman.com

6  Attorneys for Plaintiffs SOBERTEC LLC
   And BEACHSIDE RECOVERY LLC
7

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**05/14/2019** at 04:33:40 PM
Clerk of the Superior Court
By Karla Macias, Deputy Clerk

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF ORANGE

10

11  SOBERTEC LLC, a California limited
    liability company, and BEACHSIDE
12  RECOVERY LLC, a California limited
    liability company,
13                              Plaintiffs,

14       v.

15  UNITEDHEALTH GROUP INC, a
    Delaware corporation, UNITED
16  HEALTHCARE SERVICES, INC., a
    Minnesota corporation,
17  UNITEDHEALTHCARE INSURANCE
    COMPANY, a Connecticut corporation,
18  UNITED BEHAVIORAL HEALTH, INC.,
    a California Corporation,
19  UNITEDHEALTHCARE SERVICE LLC,
    a Delaware limited liability company,
20  OPTUMINSIGHT, INC., a Delaware
    corporation, OPTUM SERVICES, INC., a
21  Delaware corporation, and DOES 1-100,
    inclusive,
22
                                Defendants.
23

24

25

26

27

28

CASE NO.:  30-2019-01069823-CU-CO-CJC

Judge James Crandall

**COMPLAINT FOR:**

**(1) Breach of Implied-in-fact Contract;**
**(2) Quantum Meruit;**
**(3) Promissory Estoppel;**
**(4) Fraud and Deceit;**
**(5) Negligent Misrepresentation;**
**(6) Negligence;**
**(7) Unfair Competition.**

**DEMAND FOR JURY TRIAL**

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

593559.1

1

COMPLAINT

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

Plaintiffs Sobertec LLC and Beachside Recovery LLC (collectively, "Plaintiffs") hereby allege as follows:

**INTRODUCTION**

1.      Each of us in America face a roughly 50% chance of needing behavioral health services during the course of our lifetimes.[1] In 2017, approximately 19% of all U.S. adults aged 18 or older in U.S. – 46.6 million people – experienced some form of mental illness; among them, younger adults (aged 18-25 years) suffered the highest prevalence (25.8%) of mental illness.[2]

2.      While the drivers of mental illness in the U.S. are complex and multifactorial, one thing is clear – mental illness and substance abuse disorders are strongly correlated with one another. Based on data from several nationwide studies, roughly half of those who experience a mental illness during their lives will also experience a substance use disorder,[3,4] with adolescents having a particularly high (60%) likelihood of a having a mental illness together with a substance use disorder.[5] Data gathered by the National Institute on Drug Abuse ("NIDA") are in accord, also confirming high rates of comorbid substance use disorders and anxiety disorders, including panic disorder, generalized anxiety disorder, and post-traumatic stress disorder.[6] Substance use

---

[1] Lifetime prevalence and age-of-onset distributions of DSM-IV disorders in the National Comorbidity Survey Replication (available at, https://www.ncbi.nlm.nih.gov/pubmed/15939837)

[2] Retrieved from the National Institute of Mental Health on April 11, 2019 from http://www.nimh.nih.gov/health/statistics/prevalence/any-mental-illness-ami-among-adults.shtml

[3] Ross S, Peselow E. Co-occurring psychotic and addictive disorders: neurobiology and diagnosis. *Clin Neuropharmacol*. 2012;35(5):235-243. doi:10.1097/WNF.0b013e318261e193.

[4] Kelly TM, Daley DC. Integrated Treatment of Substance Use and Psychiatric Disorders. *Soc Work Public Health*. 2013;28(0):388-406. doi:10.1080/19371918.2013.774673.

[5] Hser YI, Grella CE, Hubbard RL, et al. An evaluation of drug treatments for adolescents in 4 US cities. *Arch Gen Psychiatry*. 2001;58(7):689-695.

[6] Magidson JF, Liu S-M, Lejuez CW, Blanco C. Comparison of the Course of Substance Use Disorders among Individuals With and Without Generalized Anxiety Disorder in a Nationally Representative Sample. *J Psychiatr Res*. 2012;46(5):659-666. doi:10.1016/j.jpsychires.2012.02.011.

Conway KP, Compton W, Stinson FS, Grant BF. Lifetime comorbidity of DSM-IV mood and anxiety disorders and specific drug use disorders: results from the National Epidemiologic Survey on Alcohol and Related Conditions. *J Clin Psychiatry*. 2006;67(2):247-257.

disorders are also highly likely to co-occur with depression and bipolar disorder,[7] attention-deficit hyperactivity disorder (ADHD),[8] psychotic illness,[9] borderline personality disorder,[10] and antisocial personality disorder.[11] Similarly, research indicates that patients with schizophrenia

---

Brady KT, Haynes LF, Hartwell KJ, Killeen TK. Substance use disorders and anxiety: a treatment challenge for social workers. *Soc Work Public Health*. 2013;28(3-4):407-423. doi:10.1080/19371918.2013.774675.

Wolitzky-Taylor K, Operskalski JT, Ries R, Craske MG, Roy-Byrne P. Understanding and treating comorbid anxiety disorders in substance users: review and future directions. *J Addict Med*. 2011;5(4):233-247. doi:10.1097/ADM.0b013e31823276d7.

Torrens M, Gilchrist G, Domingo-Salvany A, psyCoBarcelona Group. Psychiatric comorbidity in illicit drug users: substance-induced versus independent disorders. *Drug Alcohol Depend*. 2011;113(2-3):147-156. doi:10.1016/j.drugalcdep.2010.07.013.

[7] Conway KP, Compton W, Stinson FS, Grant BF. Lifetime comorbidity of DSM-IV mood and anxiety disorders and specific drug use disorders: results from the National Epidemiologic Survey on Alcohol and Related Conditions. *J Clin Psychiatry*. 2006;67(2):247-257.

Torrens M, Gilchrist G, Domingo-Salvany A, psyCoBarcelona Group. Psychiatric comorbidity in illicit drug users: substance-induced versus independent disorders. *Drug Alcohol Depend*. 2011;113(2-3):147-156. doi:10.1016/j.drugalcdep.2010.07.013.

Compton WM, Thomas YF, Stinson FS, Grant BF. Prevalence, correlates, disability, and comorbidity of DSM-IV drug abuse and dependence in the United States: results from the national epidemiologic survey on alcohol and related conditions. *Arch Gen Psychiatry*. 2007;64(5):566-576. doi:10.1001/archpsyc.64.5.566.

Pettinati HM, O'Brien CP, Dundon WD. Current Status of Co-Occurring Mood and Substance Use Disorders: A New Therapeutic Target. *Am J Psychiatry*. 2013;170(1):23-30. doi:10.1176/appi.ajp.2012.12010112.

[8] De Alwis D, Lynskey MT, Reiersen AM, Agrawal A. Attention-deficit/hyperactivity disorder subtypes and substance use and use disorders in NESARC. *Addict Behav*. 2014;39(8):1278-1285. doi:10.1016/j.addbeh.2014.04.003.

Harstad E, Levy S, Abuse C on S. Attention-Deficit/Hyperactivity Disorder and Substance Abuse. *Pediatrics*. 2014;134(1):e293-e301. doi:10.1542/peds.2014-0992.

[9] Hartz SM, Pato CN, Medeiros H, et al. Comorbidity of severe psychotic disorders with measures of substance use. *JAMA Psychiatry*. 2014;71(3):248-254. doi:10.1001/jamapsychiatry.2013.3726.

Flórez-Salamanca L, Secades-Villa R, Budney AJ, García-Rodríguez O, Wang S, Blanco C. Probability and predictors of cannabis use disorders relapse: Results of the National Epidemiologic Survey on Alcohol and Related Conditions (NESARC). *Drug Alcohol Depend*. 2013;132(0):127-133. doi:10.1016/j.drugalcdep.2013.01.013.

[10] Pennay A, Cameron J, Reichert T, et al. A systematic review of interventions for co-occurring substance use disorder and borderline personality disorder. *J Subst Abuse Treat*. 2011;41(4):363-373. doi:10.1016/j.jsat.2011.05.004.

[11] Compton WM, Thomas YF, Stinson FS, Grant BF. Prevalence, correlates, disability, and comorbidity of DSM-IV drug abuse and dependence in the United States: results from the

NELSON HARDIMAN LLP
1100 Glendan Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

593559.1

3

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

1    have higher rates of alcohol, tobacco, and drug use disorders than the general population.[12]

2         3.    Mental illness and substance abuse also correlate with the nonmedical use of
3    prescription painkillers. One particularly large longitudinal study of 34,653 people sampled
4    throughout the U.S. concluded that people with mental, personality, and substance use disorders
5    were at a significantly increased risk for nonmedical use of prescription opioids, even after
6    controlling for potentially confounding sociodemographic factors also associated with the
7    incident of such abuse.[13] These findings are supported by other research estimating that 43
8    percent of people in substance use disorder treatment for nonmedical use of prescription
9    painkillers have a diagnosis or symptoms of a mental health disorder, particularly depression and
10   anxiety.[14]

11        4.    Substance abuse and mental illness can be treated; but it is not a simple fix:
12   "Because addiction is a chronic disease, people can't simply stop using drugs for a few days and
13   be cured. Most patients need long-term or repeated care to stop using completely and recover
14   their lives."[15] Based on scientific research conducted since the mid-1970s, an effective treatment
15   should recognize the following "key" principles:

16   _____

national epidemiologic survey on alcohol and related conditions. *Arch Gen Psychiatry.* 2007;64(5):566-576. doi:10.1001/archpsyc.64.5.566.

Flórez-Salamanca L, Secades-Villa R, Budney AJ, García-Rodríguez O, Wang S, Blanco C. Probability and predictors of cannabis use disorders relapse: Results of the National Epidemiologic Survey on Alcohol and Related Conditions (NESARC*). Drug Alcohol Depend.* 2013;132(0):127-133. doi:10.1016/j.drugalcdep.2013.01.013.

[12] Lubman DI, King JA, Castle DJ. Treating comorbid substance use disorders in schizophrenia. *Int Rev Psychiatry Abingdon Engl.* 2010;22(2):191-201. doi:10.3109/09540261003689958.

[13] Katz C, El-Gabalawy R, Keyes KM, Martins SS, Sareen J. Risk factors for incident nonmedical prescription opioid use and abuse and dependence: results from a longitudinal nationally representative sample. *Drug Alcohol Depend.* 2013;132(1-2):107-113. doi:10.1016/j.drugalcdep.2013.01.010.

[14] Goldner EM, Lusted A, Roerecke M, Rehm J, Fischer B. Prevalence of Axis-1 psychiatric (with focus on depression and anxiety) disorder and symptomatology among non-medical prescription opioid users in substance use treatment: systematic review and meta-analyses. *Addict Behav.* 2014;39(3):520-531. doi:10.1016/j.addbeh.2013.11.022.

[15] NIDA: (2019, January 17). Treatment Approaches for Drug Addiction. Retrieved from https://www.drugabuse.gov/publications/drugfacts/treatment-approaches-drug-addiction on 2019, April 17.

(a)     Addiction is a complex but treatable disease that affects brain function and behavior;

(b)     No single treatment is right for everyone;

(c)     People need to have quick access to treatment;

(d)     Effective treatment addresses all of the patient's needs, not just his or her drug use;

(e)     Staying in treatment long enough is critical;

(f)     Counseling and other behavioral therapies are the most commonly used forms of treatment;

(g)     Medications are often an important part of treatment, especially when combined with behavioral therapies;

(h)     Treatment plans must be reviewed often and modified to fit the patient's changing needs;

(i)     Treatment should address other possible mental disorders;

(j)     Medically assisted detoxification is only the first stage of treatment;

(k)     Treatment doesn't need to be voluntary to be effective;

(l)     Drug use during treatment must be monitored continuously;

(m)     Treatment programs should test patients for HIV/AIDS, hepatitis B and C, tuberculosis, and other infectious diseases as well as teach them about steps they can take to reduce their risk of these illnesses.[16]

5.     While no one-size-fits-all for drug addiction treatment, treatments that have been successful include behavioral counseling, medication, medical devices and applications used to treat withdrawal symptoms or deliver skills training, evaluation and treatment for co-occurring mental health issues such as depression and anxiety, and long-term follow-up to prevent relapse.[17] Ultimately, a range of care with a tailored treatment program and follow-up options can be crucial to success, and treatment should include both medical and mental health services as needed. Follow-up care may include community or family-based recovery support systems.[18]

6.     The need for health insurance that covers a basic range of care for substance use disorders is more critical than ever given the alarming rates of prescription opioid and heroin abuse – and the tremendous loss of life associated with the incidence of such abuse.   The Substance Abuse and Mental Health Services Administration ("SAMHSA"), the agency within

---

[16] NIDA. (2019, January 17). Treatment Approaches for Drug Addiction. Retrieved from https://www.drugabuse.gov/publications/drugfacts/treatment-approaches-drug-addiction on 2019, April 17.

[17] *Id.*

[18] *Id.*

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

the U.S. Department of Health and Human Services leading the public health effort to advance the behavioral health of the nation, reports that **opioid abuse claims more lives than motor vehicle crashes**.[19]  In just 2017, there were 70,237 drug overdose deaths in the United States, with opioids (mainly synthetic) implicated in 47,600 of them – or **67.8% of all drug overdoses** that year.[20]  Health coverage is essential to saving lives because "providing access to effective care may prevent misuse and the consequences, such as overdose."[21]

7.      Ensuring that access to effective mental health care exists is a not only an important social and political debate but presently a national crisis, since **through much of the U.S., overdose death rates are significantly increasing**. According to the Centers for Disease Control and Prevention, between 2016 and 2017, exactly **23 states**[22] suffered statistically significant yearly increases in drug overdose death rates, including California.[23]

8.      Yet, even in the face of this accelerating loss of life fueled by the Opioid Epidemic, some insurance companies still put short-term profits over human life. In fact, some have devised a myriad of business strategies to refuse to provide the basic range of mental health care that may prevent the misuse of drugs and drug overdoses.

9.      Like most chronic illnesses, treatment of mental health and substance use disorders comes with a significant cost, which is why for many years most health coverage options failed to provide equal treatment for mental health and substance use disorder treatment compared to treatment for physical health conditions. To combat this coverage disparity and

---

[19] Retrieved from the Substance Abuse and Mental Health Services Administration on April 11, 2019 from https://www.samhsa.gov/data/taxonomy/term/7382

[20] Retrieved on April 11, 2019 from https://www.cdc.gov/drugoverdose/data/statedeaths.html

[21] Retrieved on April 11, 2019 from https://www.samhsa.gov/data/taxonomy/term/7382

[22] Alabama, Arizona, California, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Maine, Maryland, Michigan, New Jersey, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Tennessee, West Virginia, and Wisconsin.

[23] Multiple Cause of Death 1999–2017 on CDC Wide-ranging Online Data for Epidemiologic Research (CDC WONDER). Atlanta, GA: CDC, *National Center for Health Statistics*. 2018. Available at http://wonder.cdc.gov.

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

593559.1

COMPLAINT                                    Exhibit A, Page 16

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

improve access to mental health benefits, Congress enacted the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), which supplemented the Mental Health Parity Act of 1996. The MHPAEA generally requires that coverage for health care services for mental health and substance use disorders be in "parity" with, *i.e.*, comparable to, coverage for services for general medical and surgical care. The MHPAEA does this by generally aiming to eliminate overly burdensome restrictions health plans placed on mental health and substance use disorder coverage – restrictions like higher copayments, separate deductibles, lower annual visit limits, and techniques on how care is managed (such as pre-authorizations or medical necessity reviews) that are more restrictive than those placed on medical and surgical benefits.

10.     California has its own Mental Health Parity Act ("MHPA"), codified in Health and Safety Code section 1374.72 and Insurance Code section 10144.5. Like the MHPAEA, the MHPA generally requires mental health care services to be provided "under the same terms and conditions applied to other medical conditions."

11.     Under the MHPAEA, treatment limitations that constitute parity violations may be quantitative (such as visit limits) or non-quantitative treatment limitations ("NQTLs"), which are non-numerical limits that can otherwise affect "the scope or duration of benefits for treatment."     According to the Department of Labor, **NQTLs represent the majority of MHPEAE violations** based on citation type.[24]

12.     Given the myriad of forms a NQTL can take, MHPAEA regulations do not enumerate, but rather present an illustrative, non-exhaustive list of NQTLs, such as "medical management standards limiting or excluding benefits," "standards for provider admission to participate in a network, including reimbursement rates" and "restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of

---

[24] U.S. Department of Labor (2018) Report to Congress: *Pathway to Full Parity*, pp. 10-12.

593559.1

1    benefits for services provided under the plan or coverage."[25]

2          13.    Under the MHPAEA, a plan or issuer may not impose an NQTL on mental health

3    benefits *unless*, under the terms of the plan or coverage as written and in operation, any

4    processes, strategies, evidentiary standards, or other factors used in applying the NQTL to mental

5    health benefits in a classification[26] are comparable to, and are applied no more stringently than,

6    those used in applying the limitation with respect to medical/surgical benefits in the same

7    classification.   Moreover, simply having a parity-compliant policy in place is not sufficient,

8    "since compliance as written does not necessarily indicate compliance in practice."[27]

9          14.    The  U.S.  Department  of  Labor's  ("DOL")  Employee  Benefits  Security

10   Administration ("EBSA") is one of the primary enforcement bodies for the MHPAEA, acting

11   principally through its investigators who review plans for compliance with MHPAEA as well as

12   its benefits advisors (or customer service representatives) who provide participant education and

13   compliance assistance regarding MHPAEA. However, EBSA simply cannot provide adequate

14   oversight and lacks the authority to impose meaningful penalties necessary to ensure compliance

15   with the MHPAEA.

16         15.    According to DOL, EBSA reportedly consisted of 400 investigators and 100

17   benefits advisors who are responsible for overseeing over 5 million health, pension, and other

18   employee benefit plans (such as those providing life or disability insurance), including 2.2

19   million private employment-based group health plans (including self-insured, fully-insured or a

20   combination of both) that cover 130.8 million participants and beneficiaries.[28]  As of October 2,

21   2015, these plans covered about 143 million workers and their dependents and include assets of

22

23   _____

24

25   [25] 26 CFR 54.9812-1(c)(4)(ii); 29 CFR 2590.712(c)(4)(ii); 45 CFR 146.136(c)(4)(ii); and
     147.160.

26   [26] The classifications are inpatient in-network; inpatient out-of-network; outpatient in-network;
     outpatient out-of-network; prescription drugs and emergency care

27   [27] U.S. Department of Labor (2018) Report to Congress: *Pathway to Full Parity*, p. 8.

28   [28] U.S. Department of Labor (2018) Report to Congress: *Pathway to Full Parity*, p. 6.

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

593559.1

8

1    over $8.7 trillion. That equates to less than one EBSA investigator for every 12,500 plans.[29]

2        16.    In addition to being woefully understaffed, EBSA is a toothless tiger; it is

3    precluded from directly enforcing the MHPAEA against insurance companies, "even when

4    EBSA obtains evidence that the insurance company is the party responsible for the parity

5    violation."[30] "EBSA also cannot assess civil monetary penalties in egregious cases of

6    noncompliance to deter bad actors."[31]

7        17.    While the federal government authorizes states to enforce plan compliance with

8    MHPAEA, this too is insufficient.  In California, for example, the Department of Managed

9    Healthcare ("DMHC") is tasked with ensuring plan compliance with MHPAEA in commercial

10   coverage for individuals, small groups, and large groups. However, the DMHC's oversight is

11   aimed primarily at requiring full-service health plans that offer commercial coverage to *submit*

12   *filings* that demonstrate their compliance with MHPAEA. This cannot effectively monitor

13   compliance with MHPAEA because plans may *implement* otherwise facially-compliant policies

14   and procedures in a discriminatory manner that violates the MHPAEA.

15       18.    UnitedHealth Group, Inc. is one of the largest insurers of medical/surgical and

16   mental health care and it, along with its various subsidiaries companies (collectively, "United"),

17   are from all perspectives a wildly successful corporation – but with an especially dismal track

18   record of covering and paying for mental health care and complying with the MHPAEA.

19       19.    Headquartered in Minnesota and Minnesota's largest public company, United is a

20   behemoth, employing 300,000 people in 22 countries and insuring or administering plans for

21   over 100 million individuals worldwide. It is also a remarkably profitable company, currently

22   ranking 5th on the Fortune 500 list and boasting nearly $12 billion in net profits in revenues in

23   2018 according to SEC filings.

---

[29] *Id.*

[30] *Id.*

[31] *Id.*

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

9

20.     These SEC filings also reveal that United's profits temporarily dropped around the time of the passage of the MHPAEA in 2008, but have been steadily rising ever since, **with a particularly sharp spike in profits starting around 2016.**[32]



21.     United's company's top executives have also prospered in the face of the mental health crisis. Since taking the reins in 2006, United's former CEO and current Executive Chairman Stephen Hemsley has become one of the most handsomely-paid executives in the U.S., taking home a shocking **$102 million** in 2010 alone, putting him atop Forbes' highest-paid CEO list of that year.[33]

22.     But this lavishness and United's soaring profits beg the question:  how can United sustain this growth and these staggering (and steeply rising) profit margins in the face of the mental health crisis and rapidly growing need for mental health care?

23.     Minnesota's (United's) own Senator, John Marty (DFL-Roseville), who sits as the ranking minority on the Health and Human Services Finance and Policy Committee, says it's all about **United's pursuit of the "bottom line. Look at the money being made. You don't make**

---

[32] Retrieved on April 19, 2019 from https://en.wikipedia.org/wiki/UnitedHealth_Group.

[33] Retrieved on April 19, 2019 from https://en.wikipedia.org/wiki/Stephen_J._Hemsley

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

those kind of numbers without denying people the help they need."[34]

24.     This sentiment is echoed by many, including an attorney for the American Academy of Child & Adolescent Psychiatry who laments: **"It pays for [United] to deny claims because…those claims that are denied aren't subject to any kind of penalty except for the payment of the benefit**….They can get away with it because there's been virtually no enforcement of mental health parity laws…What makes United particularly offensive is they seem to ration care at every level."[35]

25.     An advisor to one Minnesota mental health facility operator likewise condemned United's subsidiary, Optum, who "seems to us to be **solely making mental health coverage decisions through financial considerations;**" Optum **"pressur[es] us to discharge the patient when they're not ready to come home.** Our medical staff is being pressured to violate their oath to do what's best for the patient." The advisor added that **while Optum accounts for roughly 20% of his provider-client's patient admissions, his staff spends about 80% of its time fending off Optum's requests.**[36]

26.     United's modus operandi of putting profits over patient outcomes is normally hidden but more thinly-veiled in United's marketing and promotion materials aimed at potential benefit plan clients interested in United's proven care "rationing" services.

27.     For example, the need for United's "unique" mental health care gatekeeping skill is plainly stated in Optum's "Behavioral Health Solutions for Health Plans" publication, where it openly laments the **costs** of mental health care:

/ /

/ /

---

[34] Cited in Zurowski, Cory (2015) *The broken girl and a mother's war with UnitedHealth*; published in CityPages.com and retrieved on April 19, 2019 from http://www.citypages.com/news/the-broken-girl-and-a-mothers-war-with-unitedhealth-7622258
[35] *Id.*
[36] *Id.*

COMPLAINT                                    Exhibit A, Page 21

593559.1

"Today, with the Patient Protection and Affordable Care Act, as well as the Federal Mental Health Parity law and its state variations, health plans expect expanding population bases and growing utilization of behavioral health services...**make it more difficult than ever to keep costs in check[.]**"[37]

28.     But keeping "costs in check" notwithstanding "growing utilization of behavioral health services" is what United evidently does best. And based on numerous lawsuits filed against United within the last several years, United is alleged to have tested a variety of *unlawful* ways an insurer could keep costs in check, including:

(a)     using restrictive coverage guidelines to categorically deny valid claims;[38]

(b)     using quantitative visit limitations on outpatient mental health services;[39]

(c)     imposing arbitrary reimbursement penalties on the use of psychologists;[40]

(d)     using restrictive preauthorization and review requirements for providers;[41]

---

[37] 2014 Optum, Inc. Behavioral Health Solutions for Health Plans, Retrieved on April 17, 2019 from https://campaign.optum.com/content/dam/optum/resources/brochures/Behavioral%20Health%20Solutions%20for%20Health%20Plans

[38] *Bushell v. UnitedHealth Group Inc., et al.* Case No.: 1:17-cv-02021 (filed 3/20/17) Class action complaint filed in the U.S. District Court, Southern District of New York alleging that UnitedHealth Group Inc. violated the Mental Health Parity Act by causing its subsidiary health plans to promulgate coverage guidelines that result in the categorical denial of claims for nutritional counseling from a dietician to treat an eating (mental health) disorder; despite interpreting such guidelines as covering such nutritional counseling for medical conditions.

[39] *Carr v. United Healthcare Services, Inc.* Case No.: 2:15-cv-01105 (filed 07/09/15) Class action complaint filed in the U.S. District Court, Western District of Washington alleging that United Healthcare Services, Inc. violated the Mental Health Parity act by drafting and proposing a quantitative visit limitation on outpatient mental health services that did not apply to medical and surgical services, causing class-plaintiff to incur out-of-pocket costs for mental health services and forgo mental health treatment that would have otherwise been covered absent such limitation.

[40] *Jane Doe v. UnitedHealth Group Inc.*, et al. Case No.: 1:17-cv-04160 (filed 07/13/17) Class action complaint filed in the U.S. District Court, Eastern District of New York alleging that UnitedHealth Group Inc, United Healthcare Insurance Co., and affiliated health plans violated federal and state mental health parity laws by improperly discriminating against patients and their providers by imposing arbitrary reimbursement penalties on psychotherapy rendered by psychologists and master's level counselors that are not equally imposed on office-based medical/surgical care nor grounded in actual provider quality/expertise.

[41] *Kamins v. UnitedHealthcare Insurance Company of New York, Inc. et al.* Case No.: 064276/2014 (filed 02/06/15) Class action complaint filed in the Supreme Court of the State of New York, county of Suffolk alleging that UnitedHealthcare Insurance Company of New York, Inc., United Behavioral Health (d/b/a OptumHealth Behavioral Solutions) and the Empire Plan

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

593559.1

12

1          (e)    refusing to process claims and improperly "flagging" mental health

2 providers;[42]

3          (f)    underpaying mental health claims by using inappropriate data and

4 criteria;[43]

5          (g)    applying "reimbursement penalties" for certain mental health clinicians;[44]

6          (h)    using highly restrictive and medically unjustified level of care

7 guidelines;[45]

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

improperly denied coverage for medically necessary mental health care by use of restrictive preauthorization and medical necessity requirements as well as flawed internal appeals procedures for mental health claims that violate New York statutes, including the New York Parity Law. Plaintiff further alleged that United's unlawful precertification and concurrent review requirements for plaintiff's providers began when "United's internal algorithms [which] identified [patient] as a potential high utilizer of mental health services."

[42] *National Laboratories, LLC, et al. v. UnitedHealth Group, Inc., et al.* Case No.: 9:17-cv-81178-DMM (amended compl. filed 11/27/17) Complaint filed in the U.S. District Court, Southern District of Florida, West Palm Beach Division by mental health providers and toxicology laboratory alleging that defendants UnitedHealth Group, Inc., United Healthcare Services, Inc., United Healthcare Insurance Company, United Healtcare Services, LLC, Optum, Inc. and Golden Rule Insurance Company, starting in late 2015/2016, repeatedly refused to process claims, determine benefits, issue benefit payments owing to the Plaintiffs and/or maintain reasonable claims procedures, thereby leaving the claims in an unprocessed "limbo."

[43] *Recovery Village at Umatilla, v. United Behavioral Health, Inc. et al.* Case No.: CACE-15-017488 Division: 08 (filed 10/05/15) Complaint filed in the U.S. District Court, Southern District of Florida alleging that UnitedBehavioral Health, Inc. d/b/a Optum Health, UnitedHealthcare Insurance Company, United Healthcare Services, Inc. d/b/a United Health, UnitedHealthcare of Florida, Inc., and Oxford Health Insurance, Inc. engaged in a systematic pattern and practice of underpaying plaintiff the known price for its mental health services, without regard to the reasonable value of the services, by using incomplete, arbitrary, and inappropriate benchmarks, data and other criteria.

[44] *Smith v. United Healthcare Insurance Co. and United Behavioral Health* Case No.: 3:18-cv-06336 (filed 10/16/18) Class action complaint filed in the U.S. District Court, Northern District of California alleging that defendants United HealthCare Insurance Co. and United Behavioral Health applied a discriminatory "reimbursement penalty" to plaintiffs' mental health claims, solely based on the type of mental health clinician plaintiff obtained treatment from, which was not applied to medical and surgical claims and therefore violated the Mental Health Parity Act.

[45] *Wit v. UnitedHealthcare Insurance Company and United Behavioral Health* Case No.: 3:14-cv-02346 (filed 05/21/14) Class action complaint filed in the U.S. District Court, Northern District of California alleging that Defendants UnitedHealthcare Insurance Company and United Behavioral Health systematically and improperly denied mental health and substance abuse-related insurance benefit claims by using discriminatory internal policies and practices, including highly restrictive and medically unjustified level of care guidelines, in violation of the Mental Health Parity Act.

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

(i)    arbitrarily denying partial hospitalization as non-covered benefits;[46]

(j)    systematically discriminating against insureds with autism spectrum disorder;[47]

(k)    unlawfully excluding coverage for residential treatment services;[48] and

(l)    failing to authorize and denying claims without appropriate procedures.[49]

29.    A recent ruling by Chief Magistrate Judge Joseph C. Spero of the U.S. District Court for the Northern District of California on March 5, 2019 (Case No. 14-cv-02346-JCS and Related Case No. 14-cv-05337 JCS) may be the worst indictment of United's profit-driven mental health care model to date.

30.    In his 106-page Findings of Fact and Conclusions of Law (the "Ruling"), Judge Spero openly condemns United Behavioral Health ("UBH"), a subsidiary of UnitedHealthcare, for using financial considerations to unlawfully deny mental health and substance use treatment

---

[46] *Raquel v. United Healthcare Insurance Company* Case No.: 15CV275936 (filed 01/23/15) Complaint filed in the U.S. District Court, Northern District of California alleging that United denied Plaintiff's claim for mental health benefits under her Plan arbitrarily, on the grounds that partial hospitalization services in a facility specializing in the treatment of mental illness is not a covered benefit under the Plan, in breach of her plan agreement and in violation of Mental Health Parity Act.

[47] *A.D. v. T-Mobile USA, Inc. et al* Case No.: 2:15-cv-00180 (filed 02/09/15) Class action suit filed in the U.S. District Court, Western District of Washington in which class plaintiff, a five-year-old, sued T-Mobile USA, Inc. Employee Benefit Plan, T-Mobile USA, Inc. and United Healthcare Service, Inc., alleging that defendants engaged in a standard practice of insurance discrimination against A.D. and other insureds with autism spectrum disorder in violation of the Mental Health Parity Act.

[48] *Wedekind v. United Behavioral Health and United Healthcare Insurance Company* Case No.: 1:07-cv-00026-TS (filed 02/26/07) Class action complaint filed in the U.S. District Court, District of Utah, Northern Division alleging that United Behavioral Health and United Healthcare Insurance Company engaged in a practice of excluding coverage for residential treatment services in violation of the Nebraska Mental Health Parity statute.

[49] *Kimberley D. v. United Healthcare Insurance Company* Case No.: 3:15- CV-1012-JM-JLB (filed 05/06/15) Complaint filed in the U.S. District Court, Southern District of California alleging that defendant United Healthcare Insurance Company wrongfully denied coverage of plaintiff's residential treatment care by failing to authorize and pay for the services, failing to provide an explanation of the reasons for the denial, failing to properly investigate the merits of plaintiff's medical claims, failing to provide an appropriate claims review by professionals with appropriate training and experience, and failing to properly evaluate plaintiff and her medical records before denying the claims.

to its policyholders across the country. Specifically, Judge Spero held that United's Level of Care Guidelines and United's Coverage Determination Guidelines (collectively, "Guidelines"), which are used by United to determine whether a member's treatment qualifies for coverage, completely **failed to meet generally accepted standards of care**. The Ruling also concluded United's development of its Guidelines was "**fundamentally flawed**" and that United's "**financial self-interest was a critical consideration in deciding what criteria would be used to make coverage decisions and when Guidelines would be revised.**"[50]

31.    The Court cited several examples where "**the heavy emphasis that UBH places on financial considerations**"[51] impacted the Guidelines; for example:

(a)    UBH's decision in late 2016 not to amend its Guidelines with respect to Applied Behavioral Analysis ("ABA"), a treatment for autism spectrum disorder because UBH's CEO cautioned that "**[w]e need to be more mindful of the business implications of guideline change recommendations**";[52]

(b)    UBH's decision to refrain from covering Transcranial Magnetic Stimulation ("TMS"), a treatment for major depressive disorder, because of the "**estimated cost per patient**"; and

(c)    UBH's decision *not* to adopt the ASAM Criteria for making substance use disorder coverage determinations, "**[d]espite the clear consensus among UBH's addiction specialists that the ASAM Criteria were preferable to UBH's own Guidelines from a clinical standpoint,**" because **UBH's *Finance Department* would not approve the change.**[53]

32.    But these examples and United's practice of denying or unlawfully limiting the type or extent of mental health care available to patients is just one of United's unlawful cost-cutting strategies.

---

[50] Ruling, p. 94, ¶ 184.

[51] *Id.*, ¶ 185.

[52] *Id.*

[53] *Id.*, p. 94-96, ¶¶186-189

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

593559.1

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

33.     As this case illustrates, **United has evidently realized that it can also achieve substantial mental health "savings" by targeting mental health providers**. United does this by purporting to authorize addiction treatment and substance use disorder services, and then stiffing the patients' mental health service providers when it comes time to actually pay. Sadly, this is a very effective business strategy, even more so when aimed at "out-of-network" ("OON") mental health and addiction treatment providers.

34.     OON providers are an especially high-value target for United's unlawful cost-containment machine because they are relatively more expensive for United compared to its contracted or "in-network" or "preferred" providers. In-network providers are of course "preferable" to United because they generally accept steeply-discounted contractual rates for their services, which are acceptable to these providers only because of the large/steady volume of business actively referred to the contracted provider by the insurer. OON providers, on the other hand, generally do not accept contracted rates but also do not expect any referrals or patient "steerage" to the OON provider from the insurer.  In other words, OON providers must market to and attract patients directly, the old fashioned way – by providing excellent and effective care.

35.     The problem or "opportunity" for United, however, is that the potential "savings" to United from forcing its members (either directly or indirectly) to use its contracted providers is too significant to pass up. Again as admitted in one of its marketing brochures, Optum boasted in its brochure, "Behavioral Health Solutions for Health Plans," that it was able to achieve "Cost savings" from "preferred" clinicians and "preferred" facilities of $185 and $3,379 per episode of care, respectively.[54] Accordingly, from United's perspective, there is a strong financial incentive to actively discourage its members' use of OON providers in as many ways as possible.

36.     Despite being unpopular with insurers' bottom lines, **OON benefits are highly**

_____

[54] 2014 Optum, Inc. Behavioral Health Solutions for Health Plans, Retrieved on April 17, 2019 from
https://campaign.optum.com/content/dam/optum/resources/brochures/Behavioral%20Health%20Solutions%20for%20Health%20Plans

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

1    **sought after by patients** because they are marketed as giving patients the freedom to use the

2    providers of their own choice, including providers who may be outside of the insurer's limited

3    network of contracted "preferred" providers. This "freedom" to use OON providers is not free; it

4    is paid for by the patients themselves, since they generally require a greater premium payment

5    and/or additional patient cost-sharing features, such as greater copays or higher coinsurance

6    amounts. Notwithstanding the additional cost to its members, OON benefits are a key selling

7    point for United's insureds, even though United would rather they are never used.

8         37.    As much as United dislikes having to pay for mental health care, particularly

9    OON mental health care, United knows that it cannot just stiff OON providers without at least

10   *some* basis for doing so. United also understands that attempting to retrieve or recoup

11   "overpayments" from OON providers *after* a claim is paid is not cost-effective for United,

12   especially when United has no legitimate basis to contest the claim in the first instance.

13        38.    To solve this lack of any legitimate basis to contest such claims, United has used a

14   so-called "proactive approach" to saving money in which it simply suspends processing of OON

15   provider claims pending mysterious "audits." These audit or claim review practices, including

16   "pre-payment" or "post-payment" reviews, are purportedly designed to detect fraud, abuse and

17   wasteful billing "errors," but in reality are often used as a convenient pretext to apply the brakes

18   on paying for millions of dollars' of medically necessary mental health services already

19   authorized by United and rendered by the provider.

20        39.    As explained in a white paper published by one of United's other subsidiaries,

21   OptumInsight, Optum explains that its claim review practices are essentially designed to take

22   "law enforcement" matters into United's own hands to achieve "greater savings":

23        **Proactive approaches to fraud and abuse detection**
     To reduce losses, the health care industry is taking a lesson from the financial

24        services industry by **no longer relying exclusively on law enforcement** to solve
     its payment integrity issues. Instead, health plans are evolving their fraud and

25        abuse strategies from 'pay and chase' to **'prevent and save,'** *which results in*

26        *greater savings*.[55]

27

28   [55] OptumInsight (2011) White Paper: *Using technology to enhance pre-payment fraud detection:*

17

40.     While United's "preventative" approach may have once been used to combat actual fraud and abuse; starting around 2016, United has evidently been using this approach to merely avoid paying for millions of dollars' of medically valid and necessary OON mental services that have already been rendered and are in no way tainted by fraud or abuse.

41.     Specifically, within the last several years – and coinciding with United's steep rise in corporate profits – United has evidently devised a strategy where it looks for any reason – or no reason – to perform some billing "audit" and ultimately "flag" the provider for "pre-payment review," a process where claims are "pended" or subject to often indefinite claim processing (and hence payment) suspensions while the provider is being "investigated" or remains otherwise flagged, just so that United can claim to be justified in refusing to pay for millions of dollars of mental health services already rendered.

42.     Moreover, United goes to extreme efforts to make sure that this prepayment review or flagged status is not lifted, at least anytime soon.

43.     For example, while United reports that a provider is entitled to have prepayment review lifted if the provider can submit error-free claims 80% or 85% of the time during some review period, United makes sure that a provider cannot reach this pass rate. Ironically, United does this in part by leveraging its own grossly negligent and incompetent claims-handling staff and "Program and Network Integrity" department to "rig the" system.

44.     Typically, when on prepayment review or subject to an audit for whatever reason, United starts making serial requests for medical records or other supporting documents. However, when a provider sends these records, United often claims they were not received or cannot be located. United may request, receive, and claim to be unable to find the same set of medical records several times, despite being furnished proof of previous faxing and/or mailing of the records by the provider. Then, when United subsequently does manage to receive and

_a multidimensional strategy_ retrieved on April 17, 2019 from
https://www.optum.com/content/dam/optum3/optum/en/resources/white-papers/1127221TechnologytoenhanceprepaymentfrauddetectionWP.pdf

18

COMPLAINT                                   Exhibit A, Page 28

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

"image" a medical record on the second or third or fourth try, it will often reject the records as "untimely" by claiming that the records were sent too late! All of this, unsurprisingly, results in a failing score and ensures that the pending and any new claims remain "in limbo."

45.     Using bogus audits and pre-payment reviews, and subjecting mental health providers to grossly incompetent or intentionally obstructive claims handling departments to deny a mental health provider's payments otherwise due and owing for valid OON mental health services already performed is a true win-win for United. The reasons for this are twofold.

46.     First, this strategy allows United to avoid its obligation to pay for mental health care while allowing United to *appear* compliant with the MHPAEA. Because this scheme does not depend on United actually denying coverage, United can freely authorize the care without regard for its financial cost, since United knows that it will ultimately make it up on the back end by refusing to make payments on those claims.

47.     Secondly, United's tactic of authorizing and then refusing to pay for OON services "kills two birds with one stone" by eroding the very network of OON providers who render the care. The crushing economic hardship of suspending millions of dollars' of payment for services rendered, and forcing already financially-distressed providers to jump through endless hoops trying to submit medical records that are routinely lost or discarded, can and does force OON providers to go out of business. And even if the OON provider can stay afloat despite United's offensive, United can still leverage the financial duress it caused to force the provider to "cut its losses" and accept only a fraction of the payment it is otherwise be entitled to. In either scenario, United's tactic of holding the provider's money "hostage" and burying them in pointless records requests benefits United and simultaneously promotes United's cheaper, "preferred" in-network providers instead.

48.     Even United cannot dispute that such harassing and burdensome "claim review" practices can qualify as an NQTL under the MHPAEA, since it is forced to recognize in its agency compliance filings that these practices "may impact the scope or duration of treatment by affecting the payment of benefits." Indeed, United readily admits this in its published "compliance" materials:

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

19

The Fraud, Waste and Abuse process that investigate and identify fraud **through pre-payment and post-payment reviews are non-quantitative limits that may impact the scope or duration of treatment by affecting the payment of benefits to a provider or member**. This limitation may occur through the denial of claims (pre-payment review) and the recovery of overpaid claims (post-payment review).[56]

49. United's scheme here constitutes a NQTL because clearly "affect[s] the payment of benefits to a provider" by not paying its members' OON providers, despite the fact that United accepts heightened monthly premium payments from its insureds precisely so that they can go to the OON providers of their choosing for substance use disorder treatment. But in strong-arming those OON providers, United is also consciously forcing its members to shoulder the cost of the care United refuses to pay for, because its members typically remain ultimately liable under the patient financial agreements executed before the OON services are rendered.

50. In this case, United expressly authorized millions of dollars' worth of OON addiction treatment services rendered to United's insureds, all while planning on conveniently reneging on those authorizations when it came time to pay based on fabricated, insignificant, or non-existent billing irregularities, or for no reason at all. Then, when United's denials of payment and justification for "pre-payment review" were challenged by Plaintiffs, United erected an obstacle course of excuses and launched burdensome and harassing requests for medical records that make no sense, have no legitimate purpose, and were designed merely to burn out two OON providers and ultimately cause them to tire, forfeit, and ultimately waive or otherwise forgo their right to payment. These are the true "cost savings" United's "proactive approach" is presently being used to achieve.

51. Sadly, United has no qualms with attacking OON mental health and addiction treatment providers at the expense of their members "freedom of choice," if it can reap a two-for-one windfall by avoiding payment for mental health care while simultaneously driving OON providers out of business, thereby promoting their cheaper in-network providers.

---

[56] Health Plan of Nevada, a UnitedHealthcare Company (2016): *Mental Health Parity and Addiction Equity Act Non-Quantitative Treatment Limitations Answers to Key Questions*, p. 4.

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

52. But even more disturbing than United's ruthless business approach to denying payment for mental health services is that United is protecting and growing its "bottom line" at a time when the staggering loss of human life caused by substance abuse and the Opioid Epidemic requires more, not less, coverage for mental health and addiction treatment services. Accordingly, the only way that United's unlawful business practices can be changed is through a civil judgement designed to meaningfully impact that bottom line.

## THE PARTIES

53. Plaintiff Sobertec LLC ("Sobertec") is a California limited liability company that owns and during the relevant time period operated an addiction treatment facility located in San Clemente, California, that is licensed and certified to provide detox, residential inpatient, and intensive outpatient services in California.

54. Plaintiff Beachside Recovery LLC ("Beachside") is a California limited liability company that owns and operates addiction treatment facilities located in Orange County, California, that are licensed and certified to provide detox, residential inpatient, and intensive outpatient services in California.

55. Defendant UnitedHealth Group Inc. ("UHGI") is a publicly traded Delaware company that Plaintiffs are informed and believe has its principal executive offices in Minnesota. Plaintiffs are informed and believe that UHGI issues health insurance and issues, administers, and makes benefit determinations related to health care plans nationally through its various wholly-owned and controlled subsidiaries, including but not limited to United Healthcare Services, Inc., United Healthcare Service LLC, UnitedHealthcare Insurance Company, and Optum, Inc. Plaintiffs are informed and believe that UHGI operates as, and owns the trademark to, "UnitedHealthcare."

56. Defendant United Healthcare Services, Inc. ("UHSI") is a Minnesota corporation that is licensed by the California Department of Insurance to offer health insurance policies to individuals in the state of California. Plaintiffs are informed and believe and based thereon allege that UHSI has its principal California office in Cypress, California, in the County of Orange.

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

593559.1

57.     Defendant UnitedHealthcare Service LLC ("UHSLLC") is a Delaware limited liability company that, on information and belief, provides or administers mental health coverage, including to individuals residing in the State of California.  Plaintiffs are informed and believe and based thereon allege that UHSLLC has its principal California office in Cypress, California, in the County of Orange.

58.     Defendant UnitedHealthcare Insurance Company ("UHIC") is a Connecticut corporation located in Hartford, Connecticut, that acts as claims administrator for various health insurance plans that insure individuals residing in the State of California.

59.     Defendant United Behavioral Health, Inc. ("UBH") is a California corporation licensed by the California Department of Insurance that Plaintiffs are informed and believe provides or manages mental health benefits for insureds of UHSI and/or UHSLLC.  UBH sometimes operates as OptumHealth Behavioral Solutions.

60.     Defendant OptumInsight, Inc. is a Delaware corporation that Plaintiffs are informed and believe provides healthcare data management for UBH in California.

61.     Defendant Optum Services, Inc. is a Delaware corporation licensed to conduct business in California that Plaintiffs are informed and believe provides shared claim handling and processing services for the aforementioned Defendants.

62.     Defendants OptumInsight, Inc. and Optum Services, Inc. are collectively referred to herein as "Optum." Plaintiffs are informed and believe and based thereon allege that Optum has its principal California office in the County of Orange.

63.     UHGI, UHSI, UHSLLC, UHIC, UBH, and Optum are collectively referred to herein as "Defendants" or "United."

64.     The true names or capacities, whether individual, corporate, associate, or otherwise, of defendant Does 1 through 100, inclusive, are unknown to Plaintiffs, who therefore designates those defendants by these fictitious names.  Each of the defendants sued herein as a Doe is legally responsible in some manner for the events and happenings referred to and proximately caused the injuries suffered by Plaintiffs.  Plaintiffs will amend this Complaint to allege the true names and capacities of these Does when the same becomes known to Plaintiffs.

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

65.     United and Does 1 through 100, inclusive, are collectively referred to herein as "Defendants."

66.     Plaintiffs are informed and believe, and based thereon allege, that the Defendants are alter egos of the other Defendants, have commingled assets, have commingled business operations, have undercapitalized operations, have ignored corporate formalities and have exercised such dominion and control over the operations of certain Defendants that it would be unjust to permit such Defendants to avoid individual liability.

67.     Plaintiffs are further informed and believe, and based thereon allege, that a unity of interest and ownership exists between the Defendants, that any individuality and separateness between the Defendants have ceased, and that the Defendants are the alter egos of one another. On information and belief, Plaintiffs understand and believe that Defendants share the same common ownership, place(s) of business, and management, and operate as a single enterprise.

68.     At all times relevant to the Complaint, Defendants conducted business in the County of Orange, State of California.

69.     At all times relevant to the Complaint, the treatment services in question were provided by Plaintiffs to patients who held health insurance policies or health plans that were issued and/or administered by Defendants.

70.     Defendants, and each of them, caused the acts about which Plaintiff complains to occur in the State of California.

71.     The acts about which Plaintiffs complain occurred in Orange County and throughout the State of California.

## FACTUAL ALLEGATIONS

72.     Plaintiffs operate state-licensed, certified and/or accredited mental health, behavioral health, and addiction treatment facilities in Southern California.  Plaintiffs' facilities offer addiction treatment programs, including detoxification, residential inpatient addiction treatment, partial hospitalization, and intensive outpatient treatment, among others.

73.     On information and belief, Defendant UHSI is a health insurance company authorized to transact business in California by virtue of a Certificate of Authority issued by the

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

593559.1

Exhibit A, Page 33

1 California Department of Insurance.

2   74. On information and belief, Defendants UHIC and UHSLLC provide or manage

3 health insurance coverage policies at issue in this Complaint together with the remaining

4 Defendants named herein.

5   75. On information and belief, Defendants UBH and Optum, individually and

6 collectively, are responsible for reviewing, authorizing, processing and paying claims submitted

7 by Plaintiffs for beneficiaries of UHSI, UHIC and/or UHSLLC. Further, Plaintiffs are informed

8 and believe that Defendants UBH and Optum, individually and collectively, are responsible for

9 reviewing and responding to provider appeals and performing so-called audits and investigations

10 of mental health services providers, including Plaintiffs.

11   **Industry Background  Regarding Out-of-Network Mental Health Benefits**

12   76. Plaintiffs have been providing addiction treatment services to Defendants'

13 insureds as out-of-network ("OON") providers since 2012 and 2015, respectively. Unlike in-

14 network providers, who typically agree to steep contractually-negotiated discounts off of the

15 providers' usual billed charges in exchange for a higher volume of business based on the

16 providers' advertised status as preferred "network providers" and the economic incentives

17 offered by the insurer to drive members towards in-network providers (e.g., lower copayments,

18 greater coverage), Plaintiffs as OON providers generally do not agree to contractual discounts off

19 of their charges since they do not expect a high or consistent volume of business based on patient

20 "steerage" by the insurer.

21   77. An insured's right to use the services of OON providers like Plaintiffs – for

22 example, in typical preferred provider organization ("PPO") plans – is a key selling point for

23 insureds. Specifically, these plans are marketed by insurers as giving insureds the "freedom to

24 choose" to go out of network to obtain the services of the provider of their choice, typically in

25 exchange for the member's agreement to assume a greater degree of financial responsibility for

26 the care in the form of, for example, higher copays and "coinsurance" rates. This right to use

27 OON providers, at a somewhat greater level of cost-sharing by the member, is what distinguishes

28 PPOs (and similar plans offering OON benefits) from health management organizations (or

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

1  "HMOs"), which typically only provide coverage for non-emergency services when they are

2  rendered or ordered by in-network providers.

3       78.    From the insurer's perspective, there is an inherent tension between, on one hand,

4  advertising a plan as giving members the "freedom to choose" to receive care by OON providers

5  and, on the other hand, wanting its members to utilize in-network providers. This is because

6  insurance companies typically pay significantly less to their in-network providers, who are

7  bound by contractually-discounted rates, compared to OON providers, who are under no

8  obligation to accept a discounted rate of reimbursement, for the same care.

9       79.    Presumably to address precisely this tension and profit motive, the Legislature

10  enacted section 10133 of the Insurance Code, which provides that an insurer may not "in any

11  manner . . .direct, participate in, or control the selection of the hospital or health facility . . . from

12  who the insured secures services . . . except that an insurer may negotiate and enter into contracts

13  for alternative rates of payment with institutional providers, and offer the benefit of these

14  alternative rates to insureds who select these providers." Cal. Ins. Code § 10133 (emphasis

15  added).

16  **The Parties' Custom and Practice and Course of Dealing Prior to September 2016**

17       80.    In this case, although no in-network agreement applied and Plaintiffs did not

18  expect Defendants to "steer" patients to Plaintiffs as "preferred" providers, Defendants' insureds

19  sought out and elected to exercise their freedom to "choose" Plaintiffs as their providers to

20  render care, and Plaintiffs therefore regularly treated Defendants' insureds and promptly

21  submitted bills to Defendants for payment at Plaintiffs' reasonable and customary rates for those

22  OON services.

23       81.    Consistent with industry norms and custom, when approached by United's

24  insureds, Plaintiffs first called Defendants to verify their members' benefits and confirm those

25  members' eligibility, and obtain basic information about their coverage for the purposes of

26  receiving mental healthcare, such as effective coverage date, deductibles, copays, out-of-pocket

27  maximums, and the plan's rate structure for OON services (e.g., percentage of the providers'

28  billed charges or an amount understood to represent the "usual or customary" rate for the type of

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

service, provider type, geographic region, etc.). During each of these verification calls, Defendants gave Plaintiffs a unique reference number that could be used to identify the specific call.

82.     Next, before Plaintiffs provided any substantial treatment to a particular member, Plaintiffs would call Defendants again for an initial "pre-authorization" or "pre-certification" to provide care to that member. During this pre-authorization process, Defendants would typically request information about Plaintiffs' facilities to confirm that Plaintiffs are eligible providers. Then, Defendants and Plaintiffs would typically discuss the particulars of the member's clinical presentation, needs, and the specific treatment(s) that Plaintiffs identified as necessary for that member.   In so doing, Plaintiffs would ordinarily provide information obtained from the member, such as the member's mental status, vital signs, current medications, medical history, treatment history, family history, psychosocial profile, withdrawal symptoms, withdrawal scoring, and various other relevant details as needed, or as Defendants requested in order to determine whether the course of treatment proposed by Plaintiffs was necessary and appropriate. Based on this clinical discussion, Defendants would then "authorize" Plaintiffs, as appropriate, to provide the specific proposed care. United would generally provide individual authorization codes for each patient and level of care and indicate the number of days that care was authorized for each level of care. Plaintiffs would document authorization codes and maintain them in the patients' electronic medical record.

83.     When the care initially authorized by Defendants was complete, and the member either required additional time in the same level of care or, more frequently, the member was ready to "step down" to a lower level of care (e.g., from detox to residential inpatient to partial hospitalization, or in some cases an outpatient program), Plaintiffs would contact Defendants again to obtain further authorizations. As with the initial authorizations, Plaintiffs and Defendants would engage in detailed, further clinical discussions about the member's progress, status, and need for further treatment.

84.     Plaintiffs relied on these benefits verifications, authorizations and related representations from Defendants, and this course of dealing generally, consistent with industry

COMPLAINT

593559.1

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

custom and practice, in agreeing to provide care to Defendants' insureds.

85. Prior to 2016, Plaintiffs and Defendants generally conducted business successfully and efficiently, and without significant incident. Defendants would typically process and pay Plaintiffs' claims fairly and promptly, generally within 30 to 45 business days from the date of Defendants' receipt of those claims. Payments for the claims would naturally vary depending on the member's cost-sharing responsibilities (i.e., whether a member's deductible or "out-of-pocket maximum" had been met, for example). However, Defendants generally paid Plaintiffs in a manner consistent with the rate structure information that Defendants conveyed during the process of verifying the members' benefits – typically, a rate based on a percentage of either Plaintiffs' actual billed charges or the "usual and customary" rate for Plaintiffs' services. Also during this time period, Defendants generally would not request Plaintiffs to submit medical records in connection with the claims.

**Defendants Perform an "Audit" and Plaintiffs are Placed in "Pre-Payment Review"**

86. Plaintiffs expected that Defendants would continue to honor the parties' course of dealing, including Defendants' express treatment authorizations, upon which Plaintiffs reasonably relied. However, beginning in or around the middle to late 2016, without any warning or notification, Defendants began to institute a pattern of unjustified denials and claim processing "roadblocks" that Plaintiffs are informed and believe were implemented as part of an overall scheme to underpay or indefinitely withhold payment to Plaintiffs for their services.

87. As the first step in Defendants' plan, Defendants purported to perform some type of "audit" that resulted in Plaintiffs being placed in "pre-payment review," which invariably required Plaintiffs to start submitting extensive medical documentation for each and every claim before Defendants would even consider processing Plaintiffs claims for services long ago rendered.

88. Although Plaintiffs did not fully understand what gave rise to this audit or prepayment review, because no clear explanation had been provided, Plaintiffs would receive form-letter correspondence from United vaguely suggesting that something may have been missing from the claims submissions and that patient's medical records needed to be submitted

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

1   to further consider or process the claims. In response, Plaintiffs would send the patients' medical

2   records.

3       89.    Notably, when sending the medical records, Plaintiffs would organize the records

4   by placing a cover page or face sheet ("Face Sheet") on top of the record. The Face Sheet was

5   created by Plaintiffs' electronic medical record ("EMR") software, "Kipu" EMR, a widely-used

6   tool developed specifically for addiction and behavioral health treatment centers. Although this

7   Face Sheet was not required by United, it was useful in that it provided key information –

8   updated in real-time – about that member, such as the "current program" that the member was

9   receiving *at the time the medical records were being submitted*.

10       90.    Thus, in instances where the member had recently "stepped down" from a higher

11   level of care to a lower level of care (i.e., from detox to residential), the current medical records

12   submitted in connection with a previous claim may show a "current program" on the face sheet

13   that does not match the level of care for the previous claim.  For example, if member John Doe

14   stepped-down from detox to residential on May 1st, and Plaintiffs submitted their claim for detox

15   services, along with the then-current medical records after May 1st, the face sheet would identify

16   John Doe's "current program" as being residential, even though the claim for payment was for

17   the completed detox services.  Attached as Exhibits "A" and "B" are, respectively, a redacted

18   request for medical records by United and a redacted example of a Face Sheet reflecting the

19   member's "Current Program" as PHP (partial hospitalization).  The redactions are to protect

20   patient privacy; unredacted copies will be made available to Defendants upon their request.

21       91.    Although including the Face Sheet on something as dynamic as a medical record

22   to denote the patient's current treatment program makes perfect clinical sense, Plaintiffs

23   ultimately learned that United's only problem with the medical records is that United did not

24   want to bother looking past the Face Sheet to read any part of the record!

25   **United's Grossly Incompetent and Broken Program and Network Integrity Department**

26   **Causes Plaintiffs to Waste Years Responding to Pointless Requests**

27       92.    Indeed, the absurdity of United's refusal to look beyond the medical record Face

28   Sheet – to actually determine whether the record supported the claim – is only more shocking

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

28

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

1  when it is considered that this Face Sheet issue formed the "basis" of United's freezing payment

2  on millions' worth of Plaintiffs' perfectly valid substance use disorder claims submitted between

3  2016 and through 2018.

4       93.    But this tragically comical ground for stopping millions of dollars of payments to

5  Plaintiffs is even more egregious given that United withheld and refused to disclose to Plaintiffs

6  that this was "reason" for refusing to pay or process the claims. Instead, Plaintiffs were forced to

7  waste countless staff hours *for nearly two years* dealing with United's "Program and Network

8  Integrity" team's ("PNI") outrageous incompetence or intentional efforts to bury Plaintiffs in

9  useless medical records requests, all while this PNI team steadfastly refused to explain (or

10 themselves had no idea) *why and for what reason* the claims were being "audited" in the first

11 place. Moreover, this stonewalling occurred at United's staff level and, subsequently, by

12 United's in-house counsel as well.

13      94.    With respect to United's PNI team, the email exchanges summarized below

14 between Plaintiffs billers and United's PNI staff concerning this Face Sheet issue (which

15 Plaintiffs were unaware of at the time) is just one example of the highly effective pre-payment

16 review "black hole" United has created to prevent providers from getting their claims processed

17 and paid.

18      (a)    <u>December 5, 2016</u>: Plaintiff's biller emails Vicki C., Optum's "Provider

19 Experience Team Lead, Program Network Integrity Behavioral and Physical Health Network

20 Optum Shared Services." In the email, Plaintiff's biller lists 54 claims submitted by Plaintiff

21 Beachside totaling $355,850.00 for which medical records were requested and already submitted.

22 To make that clear, the email provides the exact date on which the medical records for each of

23 the claims was *both mailed and faxed*. Plaintiff's biller concluded the email by asking for the

24 claims "current status."

25      (b)    <u>December 9, 2016</u>: Vicki C. emails Plaintiff's biller and purports to

26 provide the information Plaintiff's biller had requested in the December 5 email.

27      (c)    <u>January 16, 2017</u>: Plaintiff's biller responds to Vicki C.'s December 9,

28 2016 email and informs her that the information Vicki provided on December 9 was *for the*

*wrong provider,* and had nothing to do with the 54 claims Plaintiff's biller was inquiring about. Plaintiff's biller again identified the claims and billed amounts for each patient and listed the dates on which medical records were both mailed and faxed.

(d)     January 25, 2017: Plaintiff's biller e-mails Vicki C., informing her that this was the third e-mail to Vicki C. (the last two were ignored) regarding issues Plaintiff Beachside was experiencing with two claims for Member ID XXXXXXXX602, with dates of service 9/26-9/30 for a total of $29,250. Plaintiff's biller informs Vicki C. that all medical records that were requested had been sent on December 8, 2016 via certified mail but that a representative named "Courtney" stated that *only records for one of the claims was received,* which did not make sense to Plaintiff because *all of the records had been sent together.* In additional, Plaintiff's biller explained that a United representative named "Megan" who Plaintiff's biller spoke to that same day stated to Plaintiff's biller that the records were "incomplete" and therefore only approved for one date of service (9/28), which Plaintiff's biller again explained did not make sense because *medical records were sent for every date of service.* Plaintiff's biller concluded the email by asking for someone to contact her as soon as possible or to forward her to someone that could help.

(e)     Later that same day: Vicki C. responded to Plaintiff's biller's January 25 email and stated: "**I am training a new representative** for our phone so I will work overtime to look into this issue for you. **Please allow additional time.**"

(f)     January 31, 2017: Plaintiff's biller e-mails Vicki C., informing Vicki that she has been waiting for "3 weeks for information" regarding patients she had inquired about on January 16, 2017. "**Can you please provide us with an update as soon as possible seeing as there are several claims that have been stuck in a pending status for almost *5 months*.**" Plaintiff's biller asks for Vicki C.'s supervisor and requests to be contacted "as soon as possible."

(g)     February 1, 2017: Vicki C. responds to Plaintiff's biller: "My apologies, I will look into this today for you."

(h)     February 7, 2017 (9:49 AM): Plaintiff's biller e-mails Vicki C.: "It's

COMPLAINT                              Exhibit A, Page 40

February 7th and I still have not heard back from you regarding the claims....This is a constant ongoing problem and it's extremely frustrating considering **all I'm trying to do is get these claims processed**."

(i)     February 7, 2017 (2:28 PM): Plaintiff's biller re-sends the list of claims sent on January 16, 2017 and confirms that "**this would be the 4th time sending it to you...please provide status as soon as possible**. Thank you."

(j)     February 10, 2017: Plaintiff's biller e-mails "To whom it may concern" at optum.pni.communications@optum.com and details "several issues regarding multiple claims from our facility." Plaintiff's biller notes that she tried to call other representatives who placed Plaintiff's biller on hold and "**after 30 minutes of being on hold at least, they hung up on us**." Plaintiff's biller also points out that the only information Vicki C. provided was on December 9, 2016, which was "regarding claims for a free-standing laboratory which has nothing to do with us" and therefore had inadvertently "**sent us [patient] information for services that were not rendered by our facility**. Please contact us immediately regarding all of the above."

(k)     February 20, 2017: Vicki C. e-mails Plaintiff's biller a spreadsheet for Plaintiff Beachside.

(l)     April 10, 2017 (12:15 PM): Vicki C. e-mails Plaintiff's biller and reports being "baffled how you would like to speak to my manager....I am reaching out to you to see what is going on."

(m)     April 10, 2017 (1:43 PM): Plaintiff's biller e-mails optum.pni.tips@optum.com, optum.pni.communications@optum.com, and Vicki C., reiterating numerous issues regarding claims at the facility. Plaintiff's biller states: "Since being in this audit we have worked with you and have complied with every request that we have received. We have sent thousands of dollars' worth of medical records and certified mail to ensure that everything is received." "We have called your PNI department several times and....we end up getting hung up on almost every single time or are transferred to a voicemail where no one ever returns our call regarding our concerns." "When we send medical records we always fax them to XXX-XXX-6379 and we always certify mail them to Po Box 30535 Salt Lake City, UT 84130.

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

31

593559.1

The reason that we certify them is to ensure that they are received in the right location and are not lost. We have been told by your representatives that medical records are not on file when we have a tracking number confirming that they were received and signed for." "We need accurate information. *We need to know how long this audit is going to last considering we have been complying with you since August of 2016.*"

(n)  April 10, 2017 (2:06 PM): Vicki C. to Plaintiff's biller stating "**I had no idea that you were having problems**" and providing fax numbers for the PNI and appeals departments.

(o)  April 10, 2017 (7:09 PM):  Plaintiff's biller to Vicki C. and others summarizing continuing problems Plaintiff was having with United, including:

(i)  *Certified mail continually misplaced or lost*. "When we have a signed confirmation with tracking number which shows as delivered. Your team keeps insisting they don't have it."

(ii)  *Medical records being incomplete according to United's staff* despite the fact that the medical records are sent together as a whole, i.e., claiming to "only receive for example…only 1-20 [pages] and we sent 1-60 [pages] in the same envelope that is certified?" Plaintiff notes that it has several certified mails of records having been sent numerous times because United's staff keeps telling Plaintiff that the records were never received or are incomplete.

(iii)  *Lack of responsiveness and lack of professionalism*. Plaintiff reports that notwithstanding "8 months of sending records and complying with the PNI department and things are going nowhere" and "instead of [United] being helpful with this audit they are rude, unprofessional and ha[ve] a habit of just hanging up on us."

(p)  April 11, 2017 (7:40 AM): Vicki C. responds to Plaintiff's biller, purporting to explain why some portions of the medical records may be received and others not:

"The imaging team **may very well image some pages at a time so they may be the reason why you may send 60 pages and 20 pages show up….I can try to locate the records that are missing for you however, I will need for you to send me a spreadsheet** consisting of member's identification number, name or

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

1     date of birth, dates of services, and the date you sent the records."

2         (q)    April 11, 2017 (7:41 AM): Vicki C. sends Plaintiff's biller an "appeals"

3     fax number without explaining why or how the appeals department was involved.

4         (r)    April 11, 2017 (12:58 PM): Plaintiff's biller responds to Vicki C.: "Why

5     would I send medical records to the appeals fax number?" "The claims dept advised us to send

6     all requesting medical records to PNI fax…Please advise why would need to send to appeals

7     when we have [not] even gotten to that part yet."

8         (s)    April 11, 2017 (1:13 PM): Plaintiff's biller e-mails Vicki C. and explains

9     remaining "confused" about Vicki C.'s email regarding the scanning of the medical records

10    which, according to Vicki C., PNI will sometimes do selectively.  Plaintiff's biller also tells

11    Vicki C: **"We were told that we have to be in the 85th percentile with our records to be**

12    **removed from the audit** *but how are we ever going to get to that point when all of our records*

13    *are lost and incomplete on your end*."

14        (t)    April 11, 2017 (1:39 PM): Vicki C. responds to Plaintiff's biller stating: "**I**

15    **am trying my best to assist you** if you would like my assistance with my matter **my suggestion**

16    **is that you try to cooperate**." Vicki C. then offers "to try and locate those [medical] records"

17    but only if Plaintiff's biller creates a "spreadsheet" with the information. Vicki C. also mentions

18    in the e-mail setting up a "conference" with an "auditor" regarding the pre-payment review and

19    notes a "85 percent passing rate," and says that "the conference with the auditor will be a

20    specialized power point tailored to the company and *will explain in detail what Optum is*

21    *looking for and the information that is missing from your records*."

22        (u)    September 12, 2017: Plaintiff's biller sends another United representative,

23    Lashonda B. (who has email address "@uhc"), an e-mail titled "SOBERTEC, LLC

24    SPREADSHEET."

25        (v)    September 17, 2017: Lashonda B responds to Plaintiff's biller stating that

26    the medical records for Plaintiff Beachside were completed and being sent by her supervisor.

27        (w)    Later that day (4:38 PM): Lashonda responds to Plaintiff's biller and says

28    "Thank you for sending the spreadsheet for beachside therapy and Sobertech, However **I did Not**

33

COMPLAINT                              Exhibit A, Page 43

1   agree to do an spreadsheet for sober tech only beachside therapy. Sober tech will be sent

2   back to you all."

3        (x)    September 18, 2017 (9:04 AM): Plaintiff's biller e-mails Lashonda B. and

4   attaches a spreadsheet titled "Sobertec PNI spreadsheet.xlsx."

5        (y)    September 18, 2017 (9:11 AM) Lashonda B. responds to Plaintiff's biller,

6   complaining that she agreed to do Lorena **"an favor"** and "do an spreadsheet for Beachside

7   recovery. This is not required by any rep to do so." Lashonda B. also says that she was supposed

8   to be given only 100 dates of service "[b]ut when received the spreadsheet it was over 300 [dates

9   of service]. Which in again I did NOT AGREE to do no more than 100 per the conversation we

10  had on 09/06". Lashonda B. then states **"Again I will NOT BE COMPLETING NO MORE**

11  **SPREADSHEETS AFTER BEACHSIDE RECOVERY.** You will need to call in to continue

12  to get assistance." Lashonda B. then concluded the mail with **"FYI: It's an Privilege to have a**

13  **spreadsheet completed on the facility behalf not a requirement."**

14       (z)    September 18, 2017 (11:02 AM): Plaintiff's biller responds, thanking

15  Lashonda B. for the Beachside spreadsheet but explaining that when they spoke on September 6,

16  2017, Lashonda B. had been advised that Plaintiff's biller was working on both Beachside

17  Recovery and Sobertec, and told Plaintiff's biller to send spreadsheets for both facilities to

18  provide a status update on all of the patients. Plaintiff's biller concluded by stating: **"If you are**

19  **unwilling to assist me with this facility as well as Beachside then please give me the name**

20  **and email of the representative that can.** Either way since both facilities are under an audit and

21  have multiple claims and I am working on all of them **I honestly don't see why would not be**

22  **willing to assist me."**

23       95.    Unfortunately, the above email saga is just one of many of Plaintiffs'

24  extraordinary, albeit futile, efforts to satisfy United's insatiable appetite for medical records that

25  it cannot seem to receive, locate, or keep track of.

26       96.    Nevertheless, this exchange with Vicki C. and Lashonda B. is sufficient to

27  illustrate why United's 85% "passing rate" purportedly necessary to be removed from "audit" or

28  "pre-payment review" is completely rigged and designed to ensure that providers will never meet

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

1   that rate because it depends on United actually receiving and handling the records competently!

2   97.   These emails also demonstrate that Plaintiffs were all times left completely in the

3   dark as to why medical records were being requested but they complied with each and every

4   request – and were only told that some educational PowerPoint might someday explain what

5   United was looking for.

6   98.   In addition, on the rare occasion when United's PNI team actually offered to

7   "look for" the medical records that they themselves lost or ignored, Plaintiffs were tasked with

8   creating "spreadsheets" to help *United*, which the PNI team likewise ignored – or only responded

9   to when its team members were feeling charitable enough to do Plaintiffs a "favor."

10   **Plaintiffs' Efforts to Understand the Basis of the Audit and Pre-Payment Review Were**

11   **Also Stonewalled by United's Counsel, Ultimately Culminating in an Embarrassing**

12   **Admission of the Face Sheet Denials by United's Provider "Education" Lead**

13   99.   Indeed, it was not until well into 2018 when Plaintiffs began corresponding with

14   Optum's Associate General Counsel, "Mike B.," that Plaintiffs began to understand that this

15   bogus audit and grueling pre-payment review actually stemmed from United's fabricated

16   concerns with Plaintiffs' Face Sheets. Again, this realization still came very slowly and with

17   continued efforts throughout to continue to delay the ultimate reason for the review, as the

18   chronology of Plaintiffs' interactions with United's counsel and its mis-named provider

19   "education" department below illustrate.

20   (a)   April 2018: Plaintiffs contact Mike B. requesting details around United's

21   decision to initiate pre-payment review for Plaintiffs Sobertec, LLC and Beachside Recovery,

22   LLC. Counsel confirmed that Optum was reviewing the matter.

23   (b)   May 2018: United confirms that both Plaintiffs have been under review

24   **since September 2016** and indicates that the vast majority of the denials/reasons for the review

25   were because of the following cryptic comment:

26   *"Service Not Code-able as billed. The documentation received appears to be*
*inconsistent and/or possibly contradicting to the level of care billed. Additional*
27   *clarification is necessary for further review."*

28   United did not explain what this meant but then stated that it **would remove Plaintiffs from pre-**

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

**pay review once each provider demonstrated a passing rate greater than 80% for two consecutive months**. Plaintiff requested that United provide the patient specific reports so that the facilities could review the reasons for each denial. Mike B. also agreed to an educational call to discuss the results and agreed to provide the specific patient data.

(c)     July 2018: After numerous requests, Plaintiffs received the patient specific reports on July 5, 2018. However, Plaintiffs were unable to fully reconcile United's rationale for the denial. Plaintiffs worked with United's provider "Education Lead" representative, Katrina G., to schedule the "educational call" in August 2018. After United canceled the first scheduled call, the training session took place on August 23, 2018.

(d)     August 2018: The "educational call" to discuss the pre-payment review status for Plaintiff Sobertec was conducted.  In attendance were Katrina G. and Mike B. for United; and for Plaintiffs, two representatives of Plaintiff Sobertec along with three of Plaintiffs' billers and three of Plaintiffs' attorneys who had been corresponding with Mike B. During the call, Katrina G. walked through a PowerPoint presentation that addressed denials for four revenue codes/CPT codes: REV1002/H0010, REV0906/H0015, REV1002/H0018, and REV0912/S0201. Katrina G. indicated that the primary basis for denial for each category was due to the medical records being inconsistent with the services billed. When probed further, **Katrina G. stated that the *Face Sheets* were inconsistent with the services billed on the claim. Katrina G. also stated that the reviewer may deny the charges based on the "erroneous" Face Sheet *without looking further at the medical records, even though the records supported the services billed*.** Katrina G. further admitted that payment would be withheld if <u>any</u> inconsistences were noted during review. Finally, at that time, Plaintiff learned that United had used the Face Sheet to suspend the claims by claiming that the services rendered were inconsistent with the services billed by Plaintiff.  Plaintiffs were stunned by this belated revelation, which also made no sense because the Face Sheet was in no way actually inconsistent or erroneous and only provided additional information about the member's current program! Nevertheless, Plaintiffs agreed to immediately remove the "current program" information on the Face Sheet from the medical records going forward and requested a follow-up discussion with

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

36

COMPLAINT                    Exhibit A, Page 46

1  Mike B. to discuss concerns with the improper denials. In subsequent discussions with Mike B.,
2  however, **Counsel denied that Katrina G. made any statements regarding services being**
3  **denied on the basis of the face sheet without review of the remaining records**.
4  Unsurprisingly, Plaintiffs are unable to retrieve United's "WebEx" presentation in which these
5  admissions were made.

6  (e)  September 2018: Plaintiffs hold a conference with Mike B. to address the
7  backlog of appeals and Plaintiffs' concerns that United was withholding payment of the claims
8  without reviewing the complete medical record. Despite the several individuals who had heard
9  Katrina G.' statements on the call, Mike B. disagreed that Katrina G. had stated that the payment
10 had been withheld because of the face sheet, but ultimately agreed to look at the complete
11 universe of pending claims since September 2016. Mike B. then requested a full listing of claims
12 at issue, which Plaintiffs provided. Mike B. then requested an opportunity to review a sampling
13 of medical records, and provided a list of 20 patient names and requested the appeal records for
14 further exploration of the appeal status and reason for payment denial.

15 (f)  October 2018: Rather than limiting the requested information to just 20
16 patients (which Plaintiffs are informed and believe were non-randomly selected), Plaintiffs
17 provided all supporting documentation and an updated and complete spreadsheet for each
18 facility, including appeal letters and billing information for each patient.

19 (g)  November 2018: Plaintiffs send Mike B. a comprehensive claims list, with
20 supporting documentation for all unpaid services since September 2016 for Plaintiffs Sobertec
21 and Beachside. Along with the comprehensive list, Plaintiffs provided the appeal documentation
22 for each of the claims sent to Mike B.

23 (h)  December 2018: Plaintiffs arrange a follow-up call with Mike B. to
24 discuss payment on the outstanding claims. Mike B. requests confirmation of the process that
25 Plaintiffs utilized for submitting pre-payment medical records and Plaintiffs confirm that their
26 process was consistent with United's submission requirements. Mike B. then agrees to have the
27 appeals department review all claims and agrees that the claims would be adjudicated if the
28 medical records were available for review. Plaintiffs requests a status update from Mike B. prior

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

37

COMPLAINT                                    Exhibit A, Page 47

1    to the holidays, but Mike B. requests a meeting during the first week in January 2019 instead.

2       (i)   January 2019: Despite Plaintiffs attempts to arrange it, Mike B. cancels a

3    scheduled call to discuss the status of the various appeals, but provides a spreadsheet with

4    several claims that were allegedly untimely. Plaintiffs reviewed the sheet and noted that many of

5    the patient names on the spreadsheet did not align with the appeals previously submitted, and

6    request a call with Mike B. to discuss next steps. During the call, however, Mike B. indicates that

7    **United's business unit alleged that it did not receive any of Sobertec/Beachside's medical**

8    **record documentation prior to the dates listed on the spreadsheet** he provided. Plaintiffs

9    reiterate that Plaintiffs' billers had numerous discussions with its PNI unit, including Vicki C.

10   regarding receipt of the documentation. Mike B. disputes this and requests evidence of any such

11   correspondence.

12      (j)   March 2019: Plaintiffs provide copies of emails between Plaintiffs billers

13   and United's PNI team. While Plaintiffs provided this information to Mike B. electronically,

14   Mike B. requests a hard copy, which was mailed on March 6, 2019. This mailing also includes

15   the appeals submission from November 2018. Plaintiffs attempt to arrange a follow-up call with

16   Mike B. on March 14, 2019, but Mike B. fails to take the call and fails to respond to any

17   subsequent requests to discuss the documents Plaintiffs provided.

18   **United Further Capitalizes on Its Habit of Requesting and "Losing" Medical Records by**

19   **Objecting to Large Numbers of Claims as "Non-timely"**

20      100.   In addition to United's PNI team and its counsel stringing Plaintiffs along for

21   years in an effort to hide the fact of the Face Sheet denials, United took the added measure of

22   leveraging their its incompetence in failing to properly receive the medical records (it never

23   needed) to contrive yet another fabricated ground to suspend processing large swaths of

24   Plaintiffs' claims.

25      101.   Specifically, as mentioned by Mike B. shortly before going "radio-silent," after

26   requesting and invariably losing Plaintiffs' medical records, or failing to "locate" them due to

27   Defendants' own internal back-log, United claimed that the records Plaintiffs submitted (in many

28   cases several times) were "untimely." To make this argument, United would simply look to the

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

38

COMPLAINT

Exhibit A, Page 48

1   date of its initial medical records request and conclude that *the absence of the records in their*

2   *system* meant that they were never submitted and are therefore were "nontimely" or "untimely"

3   when United ultimately received them after the second, third or fourth re-submission!  Plaintiffs

4   are informed and believe that United would encourage providers, like Plaintiffs, to re-submit the

5   records United for the second, third, or fourth time in large part to take the outrageous position

6   that the re-submission was ***too late***!  In other words, United is using its own stunning inability to

7   receive and process records submitted by Plaintiffs as a "foil" to falsely contend that Plaintiffs'

8   claims should also be time-barred.

9   <u>**United's Own Mistakes Were Responsible for Plaintiffs' Alleged "Failure" Rate**</u>

10       102.    United's errors described above were not anomalies; rather, they were the source

11   of the overwhelming majority of the suspended or "reviewed" claims, depriving Plaintiffs of

12   millions of dollars for services rendered to Defendants' members.   For example, United's own

13   internal audit estimated that this "face sheet" issue alone was the source of approximately **<u>63</u>**

14   **<u>percent</u>** of the objections to Plaintiffs' claims.  Another **<u>22 percent</u>** of the flagged claims were

15   attributable to Plaintiffs' supposed "untimely" production of medical records – when, as

16   discussed above, Plaintiffs actually had sent those same records to Defendants multiple times,

17   but Defendants had failed to process them on time.  In other words, **Defendants' audit revealed**

18   **that *Defendants' own mistakes* in processing Plaintiffs' claims were to blame for <u>85 percent</u>**

19   **of Plaintiffs' unpaid claims**.  Based on their own claim "error" logic, it is United that should be

20   audited, not Plaintiffs.

21   <u>**United Refuses to Admit its Own Error or Pay the Affected Claims and Ceases All**</u>

22   <u>**Communication Regarding the Affected Claims**</u>

23       103.    Rather than admit their mistakes and agree to re-process Plaintiffs' claims for

24   payment, however, United opted to "double-down" on its absurd positions.

25       104.    For example, during the August 2018 "educational" call, Plaintiffs noted that, had

26   United reviewed any portion of the submitted records beyond the Face Sheet, they would quickly

27   have seen that all of the enclosed medical records did indeed support the services for which

28   Plaintiffs were seeking payment.   However, United's "educator," Katrina G., responded

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

593559.1

1    truthfully by claiming that the "inconsistency" between the "current program" identified on the

2    Face Sheet and the level of care being billed, *was itself a sufficient basis to withhold payment of*

3    *the claims*, regardless of what the actual medical records and other supporting documentation

4    showed. Mike B.'s subsequent attempts to deny that Katrina G. ever admitted this fact to several

5    people who heard this on the call only underscores how far United will go to cover up the

6    shamelessly pretextual nature of United's audit and pre-payment review scheme. In either case,

7    United's counsel's subsequent reticence and refusal to entertain any more discussion is an

8    admission that even United may have run out of excuses to continue holding hostage Plaintiffs'

9    claims.

10        105.    Indeed, as of November 2018, Plaintiffs submitted a detailed list of hundreds of

11   suspended and yet unpaid claims from the 2016 to 2017 time period, along with comprehensive

12   appeal documentation for each of the listed claims.  But since that time United has continued to

13   refuse payment without any rational explanation and stills claims that they never received any of

14   the medical records supporting the claims – even though Plaintiffs provided written

15   communications between Plaintiffs and United's PNI team confirming that Plaintiffs had

16   previously submitted those same records (often several times!) over the prior two years.

17        106.    In summary, United has given no indication that they will ever pay Plaintiffs on

18   the claims at issue – at least not until Plaintiffs file this lawsuit.

19        107.    Plaintiffs are informed and believe that United's aforementioned audit, pre-

20   payment reviews, claims denials, and dilatory claims handling practices were at all times

21   pretextual and were undertaken for the purpose of erecting barriers to reimbursement as part of

22   an overall scheme to deprive Plaintiffs of payment for their services rendered to United's

23   insureds, so that United could retain more of their insureds' healthcare premiums and pay less

24   towards their actual mental health care, contrary to United's legal obligation to cover mental

25   health substance use disorder services, including from OON providers.

26        108.    In addition, Plaintiffs are informed and believe that United's demonstrated

27   penchant for continually losing medical records and generally grossly mishandling claims and

28   supporting information submitted by Plaintiffs (and other OON mental health providers), to the

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

1    extent it was not outright intentional, was at least knowingly permitted by United because it

2    profited them. By subjecting Plaintiffs' claims to outrageously incompetent claims handling

3    procedures and staff, United could leverage the invariable failures at its staff level for its own

4    financial benefit by causing needless, costly delays and claims processing "hurdles" for

5    Plaintiffs. Plaintiffs are further informed and believe that United intentionally or knowingly

6    permitted this conduct in the hopes that Plaintiffs would either tire and give up on the claims or

7    otherwise settle for far less than Plaintiffs are entitled to.

8                    **The Harm to Plaintiffs has been Catastrophic**

9           109.    The aforementioned practices, to date, are not isolated and represent an unlawful

10   pattern and practice resulting in many **hundreds** of claims to date that remain unpaid.  While

11   Plaintiffs are still attempting to identify the entire universe of claims wrongfully held hostage or

12   underpaid since September 2016, Plaintiffs have already identified wrongfully suspended claims

13   totaling **in excess of $14,000,000** in billed charges that remain due and owing from Defendants.

14   (Plaintiffs are informed and believe, and based thereon allege, that the total universe could be as

15   much as twice this amount.)

16          110.    Attached as Exhibits C and D are Plaintiffs' current (and only partial) list of

17   claims at issue in this case.[57]   Plaintiffs fully expect to supplement these spreadsheets as

18   Plaintiffs identify the remaining claims that Defendants have not paid or processed, including

19   claims that become overdue during the duration of this lawsuit.

20          111.    As a result of this massive accounts receivable and lost revenue described above,

21   Plaintiffs' businesses have been devastated.  Plaintiff Sobertec in particular has suffered a

22   complete collapse of its business operations, having been left with no choice but to lay-off all of

23   its roughly 100+ employees; to stop accepting new clients; and to cease operations.  Based on its

24   highly profitable track record between 2012 and the start of Defendants' misconduct in or around

25

26

27   [57] Exhibits C and D do not include patient names for patient privacy reasons.  Plaintiffs will
     provide versions containing the patients' names directly to Defendants upon request in a
28   nonpublic, confidential manner.

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

41

September 2016, Sobertec will suffer future lost profits in an amount to be determined at trial but that Sobertec estimates will be well into the tens of millions of dollars.   Plaintiff Beachside Recovery, meanwhile, has avoided the same collapse, but still has been required to layoff employees, terminate leases, reduce its operations, and abort expansion plans as the result of Defendants' wrongful non-payment of claims, such that it too will suffer future lost profits in an amount to be determined at trial.

112.     In short, United's "proactive approach" of holding Plaintiffs' money hostage and causing cash-starved Plaintiffs to literally burn themselves out attempting to comply with United's needless and burdensome documentation requests has largely worked, and resulted in "greater savings" to United, albeit at the expense of United's own insureds' "freedom of choice" and access to life-saving care, and the MHPAEA.

**FIRST CAUSE OF ACTION**

(For Breach of Implied-in-Fact Contract Against All Defendants)

113.     Plaintiffs incorporate by reference all paragraphs alleged above as if fully set forth herein.

114.     Defendants knew that Plaintiffs were treating, and would continue to treat, their insureds.  And, based on the course of conduct and dealing between them, both Defendants and Plaintiffs knew or had reason to know that the other party would interpret their ongoing relationship and performance as creating a contract under which Defendants agreed to pay Plaintiffs for Plaintiffs' OON services rendered to Defendants' insureds at Plaintiffs' reasonable rate for such services.

115.     Plaintiffs have performed all duties required of them under this implied-in-fact contract alleged herein, except as excused by Defendants' material breaches of such contract.

116.     Defendants' conduct described herein constitutes a breach of the parties implied-in-fact contract, thereby entitling Plaintiffs to damages naturally and directly resulting from Defendants' breach and violations, as well as consequential damages, including lost profits and expenses incurred in pursuing payment for its services and an award of pre-judgment interest and costs in an amount to be proven at trial.

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor,
LOS ANGELES, CALIFORNIA 90024

593559.1

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

## SECOND CAUSE OF ACTION

(For Quantum Meruit Against All Defendants)

117.    Plaintiffs incorporate by reference all paragraphs alleged above as if fully set forth herein.

118.    Insofar as Plaintiffs' claim for breach of implied-in-fact contract fails for any reason, recovery in *quantum meruit* is nonetheless appropriate because Plaintiffs have enriched Defendants and therefore Defendants cannot conscientiously refuse to make restitution to Plaintiffs.  Defendants knew that Plaintiffs' services were not being provided to Defendants' insureds free of charge and it is unfair for Defendants to receive the benefit of Plaintiffs' services without paying for them.  Plaintiffs are entitled to recover the reasonable value of the services rendered to Defendants' insureds.

119.    Defendants sold and/or administered policies and accepted the premiums or other payments from their insureds or on their insureds' behalf.  When Defendants' insureds and enrollees sought medically necessary addiction treatment from Plaintiffs, Defendants confirmed to Plaintiffs that the treatment was authorized and would be covered.  Defendants specifically requested and authorized Plaintiffs' services and/or otherwise promised, consented, pledged, agreed, and committed to pay the reasonable cost of Plaintiffs' services rendered to Defendants' insureds.

120.    At the behest of Defendants, Plaintiffs provided medically necessary mental/behavioral/substance use disorder health treatment to Defendants' insureds.  It was only after Plaintiffs rendered the treatment at issue that Defendants, on erroneous or false grounds, refused to compensate Plaintiffs for the services rendered to their insureds.  Defendants were and are enriched by Plaintiffs' provision of services to such insureds, by keeping their insureds' premiums without having to pay for the care that Plaintiffs provided to those insureds, and by retaining the money they would have otherwise had to pay in compensation for the care provided by Plaintiffs.  Defendants received the benefit of having their insureds receive healthcare for which Defendants received premium payments but without having to pay for the services, all to Plaintiffs' detriment.

593559.1

1    121.   Plaintiffs are entitled to receive the reasonable value of the treatment provided to

2    Defendants' insureds that has inequitably enriched Defendants.

3                                **THIRD CAUSE OF ACTION**

4                        (For Promissory Estoppel Against all Defendants)

5    122.   Plaintiffs incorporate by reference all paragraphs alleged above as if fully set forth

6    herein.

7    123.   Prior to Plaintiffs' rendering the services associated with the claims at issue,

8    Defendants promised and asserted that the addiction treatment services that Plaintiffs were to

9    provide to Defendants' insureds would be covered and paid for by Defendants.   Defendants

10   authorized services and verified benefits, as described above, and prior to around September

11   2016, engaged in a course of conduct in which Defendants regularly paid Plaintiffs for their

12   services at rates that were consistent with the reasonable value of those services.

13   124.   The course of conduct was also consistent with broader industry custom and

14   practice for OON health care and mental health care providers and insurers.   Moreover, the

15   parties' conduct must be viewed against the backdrop of the comprehensive regulatory scheme

16   under which the parties conducted business.  As discussed herein, insurers must handle claims in

17   good faith and cannot impermissibly modify or rescind authorizations or otherwise delay or

18   obstruct claims processing as vehicle to achieve such result.   As repeat players with a large

19   market share of the industry, Defendants knew that Plaintiffs would interpret their

20   communications regarding insurance coverage and authorizations in light of the regulations that

21   circumscribe Defendants' conduct, and that Plaintiffs would reasonably expect Defendants to act

22   in accordance with the law.

23   125.   Plaintiffs are informed and believe, and based thereon allege, that Defendants had

24   reason to believe that Plaintiffs would expend substantial resources rendering the services to

25   Defendants' insureds and that Plaintiffs would expect payment to be made at a reasonable rate.

26   126.   Through the conduct described above, Defendants led Plaintiffs to believe – and

27   Plaintiffs did reasonably believe – that there were no issues with their billing practices and the

28   manner in which they submitted their claims, and that they would continue to be paid for treating

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

1    Defendants' insureds at the same rates as before.

2        127.    Plaintiffs are informed and believe, and based thereon allege, that Defendants

3    intended for Plaintiffs to rely on their promises, assertions and conduct regarding coverage and

4    payment, and Plaintiffs did in fact reasonably so rely in providing the addiction treatment

5    services to Defendants' insureds.   Defendants must be estopped from denying payment to

6    Plaintiffs, and Defendants' promises to pay Plaintiffs for their servicers at their long-established

7    reasonable rates must be enforced in order to avoid injustice.

8        128.    As a direct and proximate result of Defendants' failure to provide payment for the

9    behavioral health treatment services that Plaintiffs rendered to Defendants' insureds, Plaintiffs

10   have been damaged in an amount to be proven at trial but which in any event is no less than the

11   reasonable rate of Plaintiffs' services rendered.

## FOURTH CAUSE OF ACTION

(For Fraud and Deceit Against all Defendants)

14       129.    Plaintiffs incorporate by reference all paragraphs alleged above as if fully set forth

15   herein.

16       130.    Prior to agreeing to render its services to Defendants' insureds, Plaintiffs

17   contacted Defendants to verify the insureds' benefits and coverage and to obtain authorization to

18   provide the services.   In response, Defendants represented to Plaintiffs that the mental/behavioral

19   health treatment services that Plaintiffs were to provide to Defendants' insureds would be

20   covered and paid for by Defendants and Defendants specifically authorized Plaintiffs to provide

21   their services to Defendants' insureds.

22       131.    Defendants also represented to Plaintiffs that their claims and their facilities were

23   under a valid "audit" and that, as a result, Plaintiffs were obligated to submit paperwork and

24   other information, including extensive medical records, which Defendants represented would be

25   received, reviewed, and used to process the claims, satisfy the audit if an 85% "passing rate" was

26   achieved, and that Plaintiffs' compliance and diligent response to such requests would ultimately

27   result in Plaintiffs' removal from the audit and "pre-payment" review.

28       132.    Unfortunately, Defendants' aforementioned representations, including the

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

1   promise to cover and pay for the mental health/substance use disorder treatment services that

2   Plaintiffs rendered to Defendants' insureds were not true and knowingly false when made.

3   Instead, after Plaintiffs rendered services to Defendants' insureds in reliance on Defendants'

4   representations and conduct, Defendants implemented a plan, tactic, and strategy to reverse

5   course and deny or otherwise indefinitely suspend processing of the claims on various knowingly

6   false and arbitrary grounds, with full knowledge that, without such pretexts and false

7   justifications, Defendants intent to refuse to pay Plaintiffs would be too easily exposed.

8       133.   Plaintiffs are informed and believe, and thereon allege, that Defendants knew that

9   the representations they made regarding their audits, records requests, and coverage and payment

10  of Plaintiffs' services were false when made.

11      134.   Plaintiffs are informed and believe, and based thereon allege, that Defendants

12  induced Plaintiffs to provide the care and intended that Plaintiffs rely upon Defendants'

13  representations concerning coverage and payment and the validity of Defendant's audit and

14  claim review process to cause Plaintiffs to continue rendering services to Defendants' insureds,

15  and Plaintiffs. Plaintiffs did in fact reasonably rely upon such representations in rendering

16  services, and continuing to render services, to Defendants' insureds.

17      135.   As a result of their reliance on Defendants' representations, Plaintiffs were

18  harmed in that they provided services to Defendants' insureds at great cost and have not received

19  payment from Defendants for those services.  In addition, Plaintiffs were further harmed by

20  relying on Defendants' false and pretextual audits, document requests, and claim reviews by

21  expending substantial resources attempting to comply and respond to these requests and

22  representations, all while Defendants knew and had planned at the time the audits and claims

23  review practices were initiated, that Plaintiffs would not be permitted under any circumstance to

24  "pass" or otherwise remove themselves from such review.

25      136.   Plaintiffs' reliance on Defendants' aforementioned representations was a

26  substantial factor in causing harm to Plaintiffs. In addition to the loss of money for services

27  rendered, Plaintiffs were forced to incur costs associated with Defendants' false and pretextual

28  audits and intentionally harassing and burdensome requests.

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

137.    Plaintiffs' reliance on Defendants' representations was a substantial factor in causing harm to Plaintiffs.  Such harm to Plaintiff Sobertec was a substantial in factor causing Sobertec to close and cease operations; and for Plaintiff Beachside, such harm was a substantial factor in dramatically reducing the size and scope of its workforce, operations, and revenues. Plaintiffs are informed and believe that Defendants knew and intended such damage to occur. Defendants should therefore be held liable for those damages in an amount to be proven at trial.

138.    The foregoing conduct of Defendants is the result of willful and malicious or intentionally deceptive conduct, or conduct that manifests a knowing and reckless indifference toward, and disregard of, the rights of Plaintiffs and the health, well-being, and freedom of Defendants' insured's to receive life-saving substance use disorder services. Defendants acted in conscious disregard of the rights of Plaintiffs and without regard for human decency and without a penalty sufficient to deter such outrageous and morally corrupt business practices, Defendants will continue to implement these false and fraudulent practices. Plaintiffs are therefore entitled to punitive damages.

## FIFTH CAUSE OF ACTION

(For Negligent Misrepresentation Against all Defendants)

139.    Plaintiffs incorporate by reference all paragraphs alleged above as if fully set forth herein.

140.    Prior to agreeing to render its services to Defendants' insureds, Plaintiffs contacted Defendants to verify the insureds' benefits and coverage and to obtain authorization to provide the services.  Defendants represented to Plaintiffs that the mental/behavioral health treatment services that Plaintiffs were to provide to Defendants' insureds would be covered and paid for by Defendants and Defendants specifically authorized Plaintiffs to provide their services to Defendants' insureds. Defendants also represented to Plaintiffs that their claims and their facilities were under a valid "audit" and that, as a result, Plaintiffs were obligated to submit paperwork and other information, including extensive medical records, which Defendants represented would be received, reviewed, and used to process the claims, satisfy the audit if an 80-85% "passing rate" was achieved, and that Plaintiffs' compliance and diligent response to

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

1    such requests would ultimately result in Plaintiffs' removal from the audit and "pre-payment"

2    review.

3        141.    Defendants' above representations that they would cover and pay for the

4    mental/behavioral health treatment services that Plaintiffs rendered to Defendants' insureds, and

5    that Plaintiffs were under an audit for legitimate reasons, were not true when made.  After

6    Plaintiffs rendered services to Defendants' insureds in reliance on Defendants' representations

7    and conduct, Defendants thereafter reversed course and refused to process and pay the claims on

8    various arbitrary grounds, concocting new and evolving false justifications for this delay.

9        142.    Defendants had no reasonable grounds for believing that the representations they

10   made regarding the coverage and payment of Plaintiffs' services were true when made.

11       143.    Plaintiffs are informed and believe, and based thereon allege, that Defendants

12   intended that Plaintiffs rely upon Defendants' representations concerning coverage and payment

13   in agreeing to continue rendering services to Defendants' insureds, and Plaintiffs did in fact

14   reasonably rely upon Defendants' representations in rendering services to Defendants' insureds.

15   Plaintiffs are further informed and believe that Defendants audits, claim reviews, prepayment

16   reviews, and any other grounds Defendants utilized for suspending or failing to process Plaintiffs

17   claims were based on assumptions, conclusions, and speculation that was not true when made,

18   and Defendants had no reasonable grounds for believing their truth.

19       144.    As a result of their reliance on Defendants' representations, Plaintiffs were

20   harmed in that they provided services to Defendants' insureds at great cost and have not received

21   payment from Defendants for those services. Plaintiffs also expended substantial resources

22   attempting to respond to Defendants' needlessly burdensome and harassing documentation

23   requests.  Plaintiffs' reliance on Defendants' representations was a substantial factor in causing

24   harm to Plaintiffs.  Defendants should therefore be held liable for those damages in an amount to

25   be proven at trial.

### SIXTH CAUSE OF ACTION

(For Negligence Against all Defendants)

28       145.    Plaintiffs incorporate by reference all paragraphs alleged above as if fully set forth

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

herein.

146. Defendants, who are in the business of receiving, reviewing and processing provider claims, have a duty to fairly and competently receive, review and process Plaintiffs' claims and the supporting information and medical records that Plaintiffs submitted in connection those claims. This duty includes, at minimum, ensuring that documents submitted by Plaintiffs are received, maintained, and stored adequately and not lost, misplaced, or discarded, and that the documentation provided by Plaintiffs at Defendants' request are fairly and competently reviewed by Defendants' agents and employees. Defendants also have a duty to timely and accurately respond to Plaintiffs' requests for claims status information, including the status of medical records submitted by Plaintiffs at Defendants' request.

147. Notwithstanding this duty, however, Defendants have continually and grossly mishandled Plaintiffs' claims and supporting documentation, for example, by failing to receive and losing documents, or claiming that they cannot be found or located even despite Plaintiffs' repeated efforts to resubmit the information, and by making claims determinations after reviewing only the first "face sheet" or cover page of extensive medication documentation.

148. In addition, Defendants have failed and refused to timely or accurately respond to Plaintiffs' request for information, including the status of medical records and other information Defendants requested. Instead, Defendants failed to respond and would routinely hang up on Plaintiffs, provided no information or misinformation, and shockingly claimed that Defendants were doing Plaintiffs a "favor" in providing even partial information to Plaintiffs.

149. Plaintiffs are informed and believe that Defendants are fully aware that Plaintiffs' claims and supporting documentation are being routinely lost or otherwise mishandled, and that their claims processers are not adequately receiving, reviewing, or otherwise handling the medical records that Defendants regularly request. Nevertheless, Plaintiffs are informed and believe that Defendants have no incentive to correct these claim handling failures, and have permitted or allowed such systematic and gross incompetence to continue because it has the effect of creating barriers or obstacles to payment that ultimately benefit Defendants financially.

150. Defendants' convenient habit of losing or misplacing claims and supporting

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

1    documentation is particularly effective in reducing their financial liability because, by
2    continually mishandling, losing, or failing to properly maintain claims and supporting
3    documentation, Defendants' have created an unnecessarily burdensome, costly, and grossly
4    inefficient and unfair claims handling system which causes economic duress to providers by
5    needlessly consuming a provider's resources and thereby placing additional pressure on
6    providers to settle for less than the amount they are entitled to, just so that they can "cut their
7    losses" and obtain some reimbursement necessary to continue their operations. Defendants
8    would not be able to obtain such unfair economic leverage if they instead promptly, efficiently,
9    and competently processed the claims and supporting information.

10        151.    The same is true for Defendants shockingly superficial "review" of only the "face
11    page" of Plaintiffs' extensive medical records, because such outrageous incompetence and
12    profound indolence permits Defendants to wholly ignore the documents provided by Plaintiff
13    that support Plaintiffs' provision of services to Defendants members, thereby giving Defendant
14    "cause" to deny payment to Plaintiffs.

15        152.    Defendants are informed and believe that these claims handling failures and the
16    gross inefficiency of Defendants' claims handling processes are perpetuated, in large part,
17    through Defendants' ineffective workflows and poor or improper incentives, quotas, hiring,
18    training, and/or supervision of their staffs. These failures are especially deleterious because these
19    are the individuals who are ultimately responsible for ensuring the day-to-day, safe receipt,
20    maintenance, and review of the documentation submitted by providers, like Plaintiffs, and such
21    documentation forms the basis of Defendants denials, suspensions, audits, pre-payment review,
22    passage/error rates, and various other critical outcomes for providers and their patients.

23        153.    Plaintiffs were and continue to be directly harmed by the aforementioned conduct
24    in the form of perpetually delayed and/or suspended payment of claims, and the additional,
25    needless expense of being forced to continually resubmit information and respond to Defendants'
26    repeated false assertions that documents were never submitted, were not timely submitted, or that
27    the records do not support Plaintiffs' claims for payment. Defendants' grossly incompetent
28    claims handling practices described herein were and remain a substantial factor in causing harm

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

50
COMPLAINT
       Exhibit A, Page 60

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

1 to Plaintiffs. Defendants should therefore be held liable for those damages in an amount to be

2 proven at trial.

3         **SEVENTH CAUSE OF ACTION**

4    (For Unfair Business Practices – Bus. & Prof. Code § 17200 Against all Defendants)

5    154. Plaintiffs incorporate by reference all paragraphs alleged above as if fully set forth

6 herein.

7    155. Defendants' conduct as set forth in this Complaint constitutes unlawful, unfair,

8 and fraudulent business practices in violation of California's Unfair Competition Law, Bus. &

9 Prof. Code §§ 17200, *et seq.*

10    156. California Business & Professions Code § 17200 provides: "As used in this

11 chapter, unfair competition shall mean and include any unlawful or fraudulent business act or

12 practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by

13 Chapter 1 (commencing with section 17500) of Part 3 of Division 7 of the Business and

14 Professions Code."

15    157. Defendants' scheme is unlawful, unfair and fraudulent. They intended to sell the

16 subject policies and pocket the premiums, sat back as their insureds sought medically necessary

17 substance use disorder treatment, confirmed to Plaintiffs that the insureds were covered for the

18 services to be provided, waited for those services to be rendered and billed, and then, on

19 unspecified, false, or otherwise improper or non-existent bases and in direct contravention of

20 their prior representations concerning coverage and payment, refused to reimburse Plaintiffs for

21 services rendered. Defendants were and are enriched by keeping premiums without having to pay

22 for mental health care. Defendants' practices were unfair and deceptive to Plaintiffs, who were

23 (reasonably) induced to treat Defendants' insureds and misled into believing that they would be

24 paid fairly for such treatment. The unfairness and fraudulence of Defendants' conduct is also

25 underscored by its detrimental effect on policyholders, who were fraudulently misled into

26 believing that they were paying for policies that would cover treatment provided by OON

27 providers like Plaintiffs, when in fact such was not the case. Defendants' failure to pay for this

28 care ultimately leaves these policyholders exposed to financial liability to the providers that

would not have existed had Defendants paid Plaintiffs for the care. Thus, in reality, the policies sold were worth far less than what a reasonable person buying the policy would have believed. This harm to Plaintiffs, other similarly situated mental health care providers, and individual members of the public seeking mental health care and substance use disorder services, is substantial and is not outweighed by any countervailing benefits to consumers or society.

158.   Defendants' conduct as alleged herein is also unlawful, in that it violates the following claims handling obligations imposed on it by statute and regulation:

- Defendants' actions, as described above, violate laws and policies set forth in California's Unfair Insurance Practices Act ("UIPA"), Cal. Ins. Code § 790 *et seq.*, including, without limitation, misrepresentations to Plaintiffs relating to coverage, the failure to acknowledge and act reasonably promptly on communications, the failure to adopt and implement reasonable standards for the prompt investigation and processing of claims, the failure to affirm or deny coverage of claims, the failure to attempt in good faith to effectuate prompt, fair, and equitable settlement of claims, and requiring Plaintiffs to institute litigation to recover amounts due.  Cal. Ins. Code § 790.03(h).

- Defendants' actions, as described above, violate Cal. Ins. Code section 796.04, which provides that Defendants shall not rescind or modify an authorization after a provider renders the health care service in good faith and pursuant to the authorization for any reason, including, but not limited to, the insurer's subsequent rescission, cancellation, or modification of the insured's or policyholder's contract or the insurer's subsequent determination that it did not make an accurate determination of the insured's eligibility.

- Defendants' actions, as described above, violate laws and policies set forth in California Insurance Code § 2695.7, which requires that claim denials be accompanied by "a statement listing all bases for such rejection or denial and the factual and legal bases for each reason given for such rejection or denials which is then within the insurer's knowledge."

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

Exhibit A, Page 62

- Insofar as any of the claims involve HMO plans or plans governed by the Knox-Keene Act, Defendants' actions violate laws and policies set forth in California's Knox-Keene Health Care Service Plan Act of 1975 ("Knox-Keene Act"), California Health & Safety Code § 1340 *et seq.* Specifically, Defendants' actions, as described above, violate California Health and Safety Code §§ 1371 through 1371.37 and 28 C.C.R. § 1300.71, which requires that health plans handle submitted claims carefully, promptly, transparently and with adequate explanation of grounds for denial, and in good faith.

- Defendants' actions, as described above, also violate Federal laws and policies set forth in the Mental Health Parity Act ("MHPA") and the Mental Health Parity and Addiction Equity Act ("MHPAEA"), and state laws and policies set forth in the California Mental Health Parity Act ("CMHPA"), Health and Safety Code section 1374.72 and Insurance Code section 10144.5, which require Defendants to provide and pay for mental health services in "parity" with other medical services.

- In particular, Plaintiffs are informed and believe and therefore allege that Defendants' aforementioned actions including its audits, pre-payment and post-payment reviews, records requests, and other claim review policies, as implemented by Defendants and in operation, violate the MHPAEA as prohibited NQTLs pursuant to 29 CFR 2590.712(c)(4) because they are applied, or applied more stringently than the processes, strategies, evidentiary standards, or other factors used in applying the limitations with respect to medical/surgical benefits in the classification.

159. Defendants' conduct as alleged herein constitutes common law "bad faith." Defendants have breached all of the aforementioned legal requirements by failing to reimburse Plaintiffs for substance use disorder services that they had rendered to Defendants' insureds in good faith without a factual or legal basis on which to base the withholding of payment, and by repeatedly and willfully failing to provide Plaintiffs with specific, good-faith explanations for Defendants' non-payment of the claims. Defendants' inability to provide an accurate factual or

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

1   legal justification for its refusal to pay Plaintiffs' claims indicates that Defendants never had an

2   intention to fairly process and pay the claims.

3        160.   Defendants' aforementioned conduct also violates Insurance Code section 10133,

4   because Defendants' actions frustrated their insureds' right to choose Plaintiffs and were

5   designed to direct, participate in, and control the selection of the providers from whom their

6   insureds secure healthcare services.

7        161.   Pursuant to Cal. Bus. & Prof. Code §§ 17200 *et seq.*, Plaintiffs are entitled to

8   restitution, a permanent injunction requiring Defendants to refrain from engaging in the unlawful

9   and unfair business practices alleged herein and a declaration as to the validity of Plaintiffs'

10   claims and Plaintiffs' right to be reimbursed by Defendants for services that Plaintiffs rendered

11   to Defendants' insureds and enrollees, as well as a declaration that Defendants' claim denials and

12   method of claims handling is unlawful and unfair.

13        162.   Plaintiffs also are entitled to an award of attorneys' fees pursuant to California

14   Code of Civil Procedure § 1021.5.  Plaintiffs bring this cause of action on behalf of itself and on

15   behalf of other similarly situated treatment centers and further, for the benefit of patients in dire

16   need for mental health care in this state.  On information and belief, other drug and alcohol

17   treatment centers in California have been subjected to the same or similar types of improper

18   audits, reviews, claims suspensions and other roadblocks and denials of payment that Defendants

19   instituted at roughly the same time.  Plaintiffs are therefore informed and believe that

20   Defendants' unfair and unlawful practice of suspending and withholding the payment of claims

21   is systematic and is affecting numerous similarly-situated OON treatment centers in California

22   and elsewhere.

23        163.   Unfortunately, absent lawsuits such as this one, such conduct and egregious

24   violations of state and federal parity laws and the MHPAEA will remain beyond the reach of

25   federal and state agencies, which lack the power or authority to curb such violations and issue

26   civil penalties sufficient to deter such conduct. Defendants' conduct as alleged herein is

27   unlawful, unfair, and harmful to Plaintiffs and to the larger class of all similarly situated

28   treatment centers, and those insureds who seek treatment from these providers under policies

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

COMPLAINT

1    granting coverage for such treatment at a time when drug-related overdoses are increasing at an

2    alarming rate nationwide.

3          164.   Plaintiffs therefore seek to enforce important rights affecting the public interest

4    within the meaning of California Code of Civil Procedure § 1021.5.

5    **PRAYER**

6    WHEREFORE, Plaintiffs pray for the following relief:

7    A.   Declare that Plaintiffs' Claims for payment are valid and enforceable against

8    Defendants and that Defendants' claim denials and processing delays are unlawful;

9    B.   Award injunctive and equitable relief as necessary to stop Defendants' pattern of

10   unlawful and unfair conduct, including, without limitation, restitution to Plaintiffs of the

11   reasonable cost of the mental/behavioral health treatment services that Plaintiffs rendered to

12   Defendants' insureds;

13   C.   Award damages in an amount to be proven at trial that is not less than

14   $14,000,000, including direct and consequential damages plus all applicable interest and costs;

15   D.   Award all attorneys' fees and costs incurred in bringing this action, to the extent

16   recoverable by law;

17   E.   Award pre-judgment interest;

18   F.   Award punitive and exemplary damages in an amount sufficient to punish and

19   deter Defendants from continuing their willful and outrageous misconduct;

20   G.   Issue any such other relief as the Court deems appropriate, just, and proper.

21   Dated:  May 10, 2019          NELSON HARDIMAN LLP

22

23                   By:_____

24                       Zachary Rothenberg
                          Salvatore J. Zimmitti

25                       Attorneys for Plaintiffs SOBERTEC LLC
                       and BEACHSIDE RECOVERY LLC

26

27

28

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

# EXHIBIT A

Deposit Date    02/05/2019
Lockbox    LAX W  0511330
Batch    0009000
Total    $0.00
Seq#    00014
Type    Additional Document
Amt    $0.00

United Healthcare Insurance Company of the River Valley
UnitedHealthcare
P.O. Box 740805
Atlanta, GA  30374-0805







**Claim Information**

| | |
|---|---|
| Patient: | |
| Patient Acct #: | |
| Date of Service: | 01/01/2019 |
| Provider: | Beachside Recovery Llc |
| Claim ID: | 948574999/EE9362968 |
| Claim #: | 7560292472 |
| Member: | |
| Member ID: | |
| Group: | |
| Group #: | GA8W8295/NW000 |
| Letter ID: | PFA001 |

090CETPUA1021001-02772-01
BEACHSIDE RECOVERY LLC
PO BOX 511330
LOS ANGELES CA 90051-7885

January 28, 2019

Dear Beachside Recovery Llc:

In reviewing your claim for ▮▮▮▮▮▮▮▮ we noticed it may have been billed with inaccurate information such as incorrect diagnosis codes, modifiers, units or place of service. We realize mistakes can occur in billing, so we're asking you to send us medical records to help clarify this information before we process your claim.

**What information do I need to send?**
To help us process your claim, please send us the following:
- The patient's treatment records for any treatment related to this claim, such as:
  - Presenting symptoms and complaints
  - Treatment plan/goals
  - Test information and results
  - Medical management notes
  - Medication records
  - Length of counseling session(s) (session length; start/stop times)
    Note: We are not requesting individual psychotherapy notes.
- If the services are related to a hospital stay, include a copy of the daily schedule, nursing and physician notes, treatment plan, intake/discharge summaries and an itemized bill of the services.
- A copy of this letter

Please include records for every date of service on the claim. We don't need records for any other dates. To help ensure we understand the records, please translate them into English, if necessary.

Please mail the records with a copy of this letter to:
Optum Program and Network Integrity
PO Box 30535
Salt Lake City, UT 84130-0535
Fax: 248-733-6379

Thank you in advance for providing this information. The claim is on hold. It's important that we hear back from you in 45 days or we may not be able to process the claim. When you send us the information we need, we'll process the claim and notify you of our decision.

If we can answer any questions for you, please call Provider Services at 877-842-3210. Thank you.





FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
ST. PAUL, MN
PERMIT NO. 266

039  LAX4AP1  90051

Deposit Date    02/05/2019
Lockbox    LAX W  0511330
Batch    0009000
Total    $0.00
Seq#    00014
Type    Additional Document
Amt    $0.00

# EXHIBIT B

2/5/2019                                    Kipu - beachsiderecoverycenter.kipuworks.com

███████████████████████ ♂ **2019-18**

Birthdate: 11/29/1981 Bed: Brasilia UP Dbl 1-2
Allergies: CODEINE
Admission: 01/26/2019 Care Team

| Date 1st contact | Rep on intake call | 1st contact name | 1st contact phone | 1st contact relationship |
|---|---|---|---|---|
| 01/25/2019 | JAMIE STAVROPOULOS | n/a | n/a | n/a |

| | |
|---|---|
| Location: Brasilia - 23671 Brasilia St. Mission Viejo, CA 92691<br>Current Program: PHP | Case Manager: Lori Tarlow-Hayes, Alcohol and Drug Counselor CADC-II Aii6031214<br>Primary Physician: Venice Sanchez, M.D. LIC# A115232<br>Primary Therapist: Andrew-James Seargeant, Therapist, AMFT #100440 |

| Admission Date | Referrer | Contact? | Anticipated Discharge Date |
|---|---|---|---|
| 01/26/2019 10:00 AM | | No | |

| Discharge/Transition Date | Discharge/Transition to | Discharge Type | |
|---|---|---|---|

## CLIENT INFORMATION HAS NOT BEEN VALIDATED - PLEASE VALIDATE

## Client Information



Phone: ███████████
DOB: 11/29/1981  SSN: █████████
Sex: Male
Marital Status: Married
Race: White
Ethnicity: Caucasian

| Occupation | Employer | | Employer Phone |
|---|---|---|---|
| REEFER TECHNICIAN | ████████ | | ████████ |

## Payment Method

Insurance

## Insurance Information

| Company | Policy | Group ID | Status |
|---|---|---|---|
| REGENCE BCBS (INDEMINITY) | ██████████ | 10009613 | Active |

| Phone | Type | Plan Type |
|---|---|---|
| 866-227-0913 | Primary | PPO |

| rx | rx Phone | rx Group | rx BIN | rx PCN |
|---|---|---|---|---|
| | 1-844-765-2897 | | 610624 | 02080000 |

| Subscriber | Relationship | SSN | DOB |
|---|---|---|---|
| ███████████ | Self | ██████ | 11/29/1981 |

Subscriber Employer
████████████

2/5/2019                           Kipu - beachsiderecoverycenter.kipuworks.com

## Concurrent Reviews

| Start date | End date | # of days | Auth date | Authorization # | | Status | Level of care | Frequency |
|---|---|---|---|---|---|---|---|---|
| 02/02/2019 | 02/15/2019 | 12 | 02/01/2019 | 003002467 | | Approved | PHP/Day-Night | sessions |

| Next review | #Hours/Day | #Days/Week | Days of week | Next LOC | Next LOC Date | | | |
|---|---|---|---|---|---|---|---|---|
| 02/15/2019 | | | Mon,Tue,Wed,Thu,Fri,Sat | | | | | |

LCD
Yes

Insurance
REGENCE BCBS (INDEMINITY)
GD is requesting 12 sessions PHP they authorized the request and will call back with
auth number

| Start date | End date | # of days | Auth date | Authorization # | | Status | Level of care | Frequency |
|---|---|---|---|---|---|---|---|---|
| 01/26/2019 | 02/01/2019 | 7 | 01/28/2019 | 002986543 | | Approved | Residential | daily |

LCD
Yes

| Next review | #Hours/Day | #Days/Week | Days of week | Next LOC | Next LOC Date | | | |
|---|---|---|---|---|---|---|---|---|
| 02/01/2019 | | | Sun,Mon,Tue,Wed,Thu,Fri,Sat | | | | | |

Insurance
REGENCE BCBS (INDEMINITY)
BH line 1800-780-7881 GD spoke to Tomicka B. GD faxed in clinical requesting 7 days
RTC 1/28. Peter S 206-332-4840 called and gave auth for 7 days RTC but let GD know
it will go to the doctor peer to peer if more time is requested due to his already long
stay at RTC. They want info on progress, SI and how he is doing mentally.

## Contacts



| Type | Relationship |
|---|---|
| Emergency | Spouse/Partner |
| Name | Phone |
| ██████████ | ███████ |

| Type | Relationship |
|---|---|
| Emergency | Parent |
| Name | Phone |
| ████████████ | ███████ |

| Type | Relationship |
|---|---|
| Emergency | |
| Name | Phone |
| █████████ | ███████ |

| Type | Relationship |
|---|---|
| Emergency | Brother/Sister |
| Name | Phone |
| ██████████ | ███████ |

| Type | Relationship |
|---|---|
| Emergency | Brother/Sister |
| Name | Phone |
| ████████████████ | ███████ |

| Type | Relationship |
|---|---|
| Emergency | Other |
| Name | Phone |
| █████████ | ███████ |

| Type | Relationship |
|---|---|
| Emergency | Brother/Sister |
| Name | Phone |
| ███████████ | ███████ |

## Allergies and Food Restrictions

### Allergies

| Allergen | Allergy Type | Reaction | Reaction Type | Onset | Treatment | Status Type | Source |
|---|---|---|---|---|---|---|---|
| CODEINE | Drug | | Adverse Reaction | | | Active | |

## Diets

Regular Diet

## External Apps

| External App Name | Unique Patient ID | Action | Response |
|---|---|---|---|
| PingMD | | | |

Client Record Source: Casey P.: User Entry

# EXHIBIT C

**Sobertec, LLC**
UHC Claim Master

| DATE | CLAIM NUMBER | FROM DOS | TO DOS |
|------|--------------|----------|--------|
| N/A | N/A | 07/19/16 | 07/22/16 |
| N/A | N/A | 07/25/16 | 07/25/16 |
| N/A | N/A | 07/01/16 | 07/01/16 |
| N/A | N/A | 07/04/16 | 07/08/16 |
| N/A | N/A | 07/11/16 | 07/13/16 |
| N/A | N/A | 08/29/16 | 08/31/16 |
| N/A | N/A | 08/01/16 | 08/05/16 |
| N/A | N/A | 08/08/16 | 08/12/16 |
| N/A | N/A | 08/15/16 | 08/19/16 |
| N/A | N/A | 08/22/16 | 08/26/16 |
| N/A | N/A | 08/29/16 | 08/31/16 |
| N/A | N/A | 08/01/16 | 08/05/16 |
| N/A | N/A | 08/01/16 | 08/05/16 |
| N/A | N/A | 08/08/16 | 08/12/16 |
| N/A | N/A | 08/22/16 | 08/25/16 |
| N/A | N/A | 08/26/16 | 08/29/16 |
| N/A | N/A | 08/30/16 | 08/31/16 |
| N/A | N/A | 09/05/16 | 09/06/16 |
| N/A | N/A | 09/07/16 | 09/09/16 |
| N/A | N/A | 09/12/16 | 09/16/16 |
| N/A | N/A | 09/19/16 | 09/23/16 |
| N/A | N/A | 09/26/16 | 09/30/16 |
| N/A | N/A | 09/08/16 | 09/10/16 |
| N/A | N/A | 09/11/16 | 09/12/16 |
| N/A | N/A | 09/13/16 | 09/14/16 |
| N/A | N/A | 09/15/16 | 09/16/16 |
| N/A | N/A | 09/19/16 | 09/23/16 |
| N/A | N/A | 09/26/16 | 09/30/16 |
| N/A | N/A | 09/05/16 | 09/09/16 |
| N/A | N/A | 09/19/16 | 09/23/16 |
| N/A | N/A | 09/26/16 | 09/30/16 |
| N/A | N/A | 09/01/16 | 09/02/16 |
| N/A | N/A | 09/05/16 | 09/06/16 |
| N/A | N/A | 09/07/16 | 09/09/16 |
| N/A | N/A | 09/12/16 | 09/14/16 |
| N/A | N/A | 09/15/16 | 09/16/16 |
| N/A | N/A | 09/21/16 | 09/23/16 |
| N/A | N/A | 09/26/16 | 09/30/16 |
| N/A | N/A | 09/08/16 | 09/10/16 |
| N/A | N/A | 09/11/16 | 09/14/16 |
| N/A | N/A | 09/15/16 | 09/18/16 |
| N/A | N/A | 09/19/16 | 09/23/16 |
| N/A | N/A | 09/26/16 | 09/30/16 |
| N/A | N/A | 09/28/16 | 09/29/16 |
| N/A | N/A | 09/30/16 | 09/30/16 |
| N/A | N/A | 09/02/16 | 09/02/16 |
| N/A | N/A | 09/05/16 | 09/09/16 |
| N/A | N/A | 09/12/16 | 09/16/16 |
| N/A | N/A | 09/19/16 | 09/21/16 |
| N/A | N/A | 09/12/16 | 09/16/16 |
| N/A | N/A | 09/19/16 | 09/23/16 |

| | | | |
|---|---|---|---|
| N/A | N/A | 09/26/16 | 09/30/16 |
| N/A | N/A | 09/12/16 | 09/16/16 |
| N/A | N/A | 09/14/16 | 09/16/16 |
| N/A | N/A | 09/17/16 | 09/19/16 |
| N/A | N/A | 09/20/16 | 09/21/16 |
| N/A | N/A | 09/22/16 | 09/25/16 |
| N/A | N/A | 09/26/16 | 09/28/16 |
| N/A | N/A | 09/29/16 | 09/30/16 |
| N/A | N/A | 09/19/16 | 09/23/16 |
| N/A | N/A | 09/26/16 | 09/30/16 |
| N/A | N/A | 09/01/16 | 09/01/16 |
| N/A | N/A | 09/02/16 | 09/02/16 |
| N/A | N/A | 09/05/16 | 09/08/16 |
| N/A | N/A | 09/20/16 | 09/20/16 |
| N/A | N/A | 10/17/16 | 10/21/16 |
| N/A | N/A | 10/10/16 | 10/14/16 |
| N/A | N/A | 10/03/16 | 10/03/16 |
| N/A | N/A | 10/06/16 | 10/07/16 |
| N/A | N/A | 10/03/16 | 10/03/16 |
| N/A | N/A | 10/04/16 | 10/07/16 |
| N/A | N/A | 10/10/16 | 10/11/16 |
| N/A | N/A | 10/03/16 | 10/07/16 |
| N/A | N/A | 10/10/16 | 10/14/16 |
| N/A | N/A | 10/17/16 | 10/21/16 |
| N/A | N/A | 10/24/16 | 10/28/16 |
| N/A | N/A | 10/31/16 | 10/31/16 |
| N/A | N/A | 10/03/16 | 10/07/16 |
| N/A | N/A | 10/10/16 | 10/14/16 |
| N/A | N/A | 10/17/16 | 10/21/16 |
| N/A | N/A | 10/24/16 | 10/28/16 |
| N/A | N/A | 10/31/16 | 10/31/16 |
| N/A | N/A | 10/03/16 | 10/03/16 |
| N/A | N/A | 10/04/16 | 10/07/16 |
| N/A | N/A | 10/10/16 | 10/14/16 |
| N/A | N/A | 10/17/16 | 10/18/16 |
| N/A | N/A | 10/19/16 | 10/21/16 |
| N/A | N/A | 10/10/16 | 10/13/16 |
| N/A | N/A | 10/06/16 | 10/09/16 |
| N/A | N/A | 10/01/16 | 10/05/16 |
| N/A | N/A | 10/14/16 | 10/16/16 |
| N/A | N/A | 10/17/16 | 10/21/16 |
| N/A | N/A | 10/24/16 | 10/28/16 |
| N/A | N/A | 10/02/16 | 10/04/16 |
| N/A | N/A | 10/05/16 | 10/09/16 |
| N/A | N/A | 10/10/16 | 10/12/16 |
| N/A | N/A | 10/10/16 | 10/10/16 |
| N/A | N/A | 10/03/16 | 10/07/16 |
| N/A | N/A | 10/24/16 | 10/25/16 |
| N/A | N/A | 10/26/16 | 10/28/16 |
| N/A | N/A | 10/10/16 | 10/14/16 |
| N/A | N/A | 10/01/16 | 10/03/16 |
| N/A | N/A | 10/04/16 | 10/07/16 |
| N/A | N/A | 10/18/16 | 10/20/16 |
| N/A | N/A | 10/17/16 | 10/17/16 |
| N/A | N/A | 10/03/16 | 10/07/16 |

| | | | |
|---|---|---|---|
| N/A | N/A | 10/10/16 | 10/14/16 |
| N/A | N/A | 10/17/16 | 10/21/16 |
| N/A | N/A | 10/24/16 | 10/28/16 |
| N/A | N/A | 10/31/16 | 10/31/16 |
| N/A | N/A | 10/31/16 | 10/31/16 |
| N/A | N/A | 10/28/16 | 10/28/16 |
| N/A | N/A | 10/24/16 | 10/27/16 |
| N/A | N/A | 10/16/16 | 10/18/16 |
| N/A | N/A | 10/19/16 | 10/21/16 |
| N/A | N/A | 10/06/16 | 10/09/16 |
| N/A | N/A | 10/10/16 | 10/11/16 |
| N/A | N/A | 10/12/16 | 10/15/16 |
| N/A | N/A | 11/09/16 | 11/11/16 |
| N/A | N/A | 11/14/16 | 11/18/16 |
| N/A | N/A | 11/21/16 | 11/25/16 |
| N/A | N/A | 11/28/16 | 11/30/16 |
| N/A | N/A | 11/02/16 | 11/04/16 |
| N/A | N/A | 11/07/16 | 11/11/16 |
| N/A | N/A | 11/14/16 | 11/18/16 |
| N/A | N/A | 11/21/16 | 11/25/16 |
| N/A | N/A | 11/28/16 | 11/30/16 |
| N/A | N/A | 11/07/16 | 11/10/16 |
| N/A | N/A | 11/11/16 | 11/14/16 |
| N/A | N/A | 11/15/16 | 11/17/16 |
| N/A | N/A | 11/18/16 | 11/21/16 |
| N/A | N/A | 11/22/16 | 11/22/16 |
| N/A | N/A | 11/23/16 | 11/26/16 |
| N/A | N/A | 11/27/16 | 11/28/16 |
| N/A | N/A | 11/02/16 | 11/04/16 |
| N/A | N/A | 11/07/16 | 11/11/16 |
| N/A | N/A | 11/14/16 | 11/18/16 |
| N/A | N/A | 11/21/16 | 11/25/16 |
| N/A | N/A | 11/28/16 | 11/30/16 |
| N/A | N/A | 11/01/16 | 11/04/16 |
| N/A | N/A | 11/07/16 | 11/11/16 |
| N/A | N/A | 11/14/16 | 11/18/16 |
| N/A | N/A | 11/21/16 | 11/25/16 |
| N/A | N/A | 11/30/16 | 11/30/16 |
| N/A | N/A | 11/01/16 | 11/02/16 |
| N/A | N/A | 11/03/16 | 11/04/16 |
| N/A | N/A | 11/07/16 | 11/10/16 |
| N/A | N/A | 11/11/16 | 11/11/16 |
| N/A | N/A | 11/14/16 | 11/16/16 |
| N/A | N/A | 11/25/16 | 11/25/16 |
| N/A | N/A | 11/07/16 | 11/11/16 |
| N/A | N/A | 11/14/16 | 11/18/16 |
| N/A | N/A | 11/21/16 | 11/25/16 |
| N/A | N/A | 11/28/16 | 11/30/16 |
| N/A | N/A | 11/04/16 | 11/07/16 |
| N/A | N/A | 11/08/16 | 11/10/16 |
| N/A | N/A | 11/11/16 | 11/13/16 |
| N/A | N/A | 11/14/16 | 11/16/16 |
| N/A | N/A | 11/02/16 | 11/04/16 |
| N/A | N/A | 11/14/16 | 11/18/16 |
| N/A | N/A | 11/21/16 | 11/25/16 |

| | | | |
|---|---|---|---|
| N/A | N/A | 11/28/16 | 11/30/16 |
| N/A | N/A | 11/01/16 | 11/01/16 |
| N/A | N/A | 11/21/16 | 11/25/16 |
| N/A | N/A | 11/28/16 | 11/30/16 |
| N/A | N/A | 11/02/16 | 11/04/16 |
| N/A | N/A | 11/07/16 | 11/11/16 |
| N/A | N/A | 11/14/16 | 11/18/16 |
| N/A | N/A | 11/21/16 | 11/25/16 |
| N/A | N/A | 11/28/16 | 11/30/16 |
| N/A | N/A | 11/04/16 | 11/08/16 |
| N/A | N/A | 11/09/16 | 11/12/16 |
| N/A | N/A | 11/13/16 | 11/16/16 |
| N/A | N/A | 11/17/16 | 11/18/16 |
| N/A | N/A | 11/19/16 | 11/19/16 |
| N/A | N/A | 11/21/16 | 11/23/16 |
| N/A | N/A | 11/25/16 | 11/26/16 |
| N/A | N/A | 11/29/16 | 11/30/16 |
| N/A | N/A | 11/07/16 | 11/11/16 |
| N/A | N/A | 11/14/16 | 11/18/16 |
| N/A | N/A | 11/21/16 | 11/25/16 |
| N/A | N/A | 11/28/16 | 11/30/16 |
| N/A | N/A | 11/02/16 | 11/04/16 |
| N/A | N/A | 11/07/16 | 11/10/16 |
| N/A | N/A | 11/11/16 | 11/11/16 |
| N/A | N/A | 11/14/16 | 11/18/16 |
| N/A | N/A | 11/21/16 | 11/25/16 |
| N/A | N/A | 12/02/16 | 12/02/16 |
| N/A | N/A | 12/05/16 | 12/09/16 |
| N/A | N/A | 12/12/16 | 12/16/16 |
| N/A | N/A | 12/19/16 | 12/23/16 |
| N/A | N/A | 12/26/16 | 12/30/16 |
| N/A | N/A | 12/02/16 | 12/02/16 |
| N/A | N/A | 12/05/16 | 12/08/16 |
| N/A | N/A | 12/12/16 | 12/14/16 |
| N/A | N/A | 12/02/16 | 12/02/16 |
| N/A | N/A | 12/05/16 | 12/09/16 |
| N/A | N/A | 12/12/16 | 12/16/16 |
| N/A | N/A | 12/19/16 | 12/23/16 |
| N/A | N/A | 12/26/16 | 12/30/16 |
| N/A | N/A | 12/01/16 | 12/02/16 |
| N/A | N/A | 12/05/16 | 12/07/16 |
| N/A | N/A | 12/12/16 | 12/16/16 |
| N/A | N/A | 12/21/16 | 12/23/16 |
| N/A | N/A | 12/26/16 | 12/30/16 |
| N/A | N/A | 12/02/16 | 12/02/16 |
| N/A | N/A | 12/05/16 | 12/09/16 |
| N/A | N/A | 12/12/16 | 12/16/16 |
| N/A | N/A | 12/12/16 | 12/16/16 |
| N/A | N/A | 12/19/16 | 12/23/16 |
| N/A | N/A | 12/26/16 | 12/30/16 |
| N/A | N/A | 12/27/16 | 12/29/16 |
| N/A | N/A | 12/30/16 | 12/31/16 |
| N/A | N/A | 12/30/16 | 12/30/16 |
| N/A | N/A | 12/02/16 | 12/02/16 |
| N/A | N/A | 12/05/16 | 12/09/16 |

| | | | |
|---|---|---|---|
| N/A | N/A | 12/12/16 | 12/16/16 |
| N/A | N/A | 12/19/16 | 12/21/16 |
| N/A | N/A | 12/26/16 | 12/30/16 |
| N/A | N/A | 12/02/16 | 12/02/16 |
| N/A | N/A | 12/05/16 | 12/09/16 |
| N/A | N/A | 12/12/16 | 12/16/16 |
| N/A | N/A | 12/19/16 | 12/23/16 |
| N/A | N/A | 12/26/16 | 12/30/16 |
| N/A | N/A | 12/01/16 | 12/02/16 |
| N/A | N/A | 12/05/16 | 12/09/16 |
| N/A | N/A | 12/12/16 | 12/16/16 |
| N/A | N/A | 12/19/16 | 12/23/16 |
| N/A | N/A | 12/26/16 | 12/29/16 |
| N/A | N/A | 12/30/16 | 12/30/16 |
| N/A | N/A | 12/02/16 | 12/02/16 |
| N/A | N/A | 12/05/16 | 12/09/16 |
| N/A | N/A | 12/12/16 | 12/16/16 |
| N/A | N/A | 12/19/16 | 12/19/16 |
| N/A | N/A | 12/26/16 | 12/30/16 |
| N/A | N/A | 12/30/16 | 12/31/16 |
| N/A | N/A | 01/02/17 | 01/06/17 |
| N/A | N/A | 01/09/17 | 01/13/17 |
| N/A | N/A | 01/16/17 | 01/20/17 |
| N/A | N/A | 01/23/17 | 01/27/17 |
| N/A | N/A | 01/02/17 | 01/06/17 |
| N/A | N/A | 01/09/17 | 01/13/17 |
| N/A | N/A | 01/16/17 | 01/20/17 |
| N/A | N/A | 01/23/17 | 01/27/17 |
| N/A | N/A | 01/30/17 | 01/30/17 |
| N/A | N/A | 01/02/17 | 01/03/17 |
| N/A | N/A | 01/02/17 | 01/06/17 |
| N/A | N/A | 01/09/17 | 01/13/17 |
| N/A | N/A | 01/16/17 | 01/20/17 |
| N/A | N/A | 01/23/17 | 01/27/17 |
| N/A | N/A | 01/30/17 | 01/30/17 |
| N/A | N/A | 01/13/17 | 01/13/17 |
| N/A | N/A | 01/16/17 | 01/20/17 |
| N/A | N/A | 01/23/17 | 01/27/17 |
| N/A | N/A | 01/30/17 | 01/30/17 |
| N/A | N/A | 01/02/17 | 01/06/17 |
| N/A | N/A | 01/09/17 | 01/11/17 |
| N/A | N/A | 01/02/17 | 01/06/17 |
| N/A | N/A | 01/09/17 | 01/13/17 |
| N/A | N/A | 01/16/17 | 01/20/17 |
| N/A | N/A | 01/23/17 | 01/27/17 |
| N/A | N/A | 01/30/17 | 01/30/17 |
| N/A | N/A | 01/02/17 | 01/03/17 |
| N/A | N/A | 01/02/17 | 01/06/17 |
| N/A | N/A | 01/09/17 | 01/13/17 |
| N/A | N/A | 01/16/17 | 01/20/17 |
| N/A | N/A | 01/23/17 | 01/27/17 |
| N/A | N/A | 01/30/17 | 01/30/17 |
| N/A | N/A | 01/05/17 | 01/08/17 |
| N/A | N/A | 01/09/17 | 01/12/17 |
| N/A | N/A | 01/07/17 | 01/10/17 |

| | | | |
|---|---|---|---|
| N/A | N/A | 01/11/17 | 01/13/17 |
| N/A | N/A | | |
| N/A | N/A | 02/06/17 | 02/10/17 |
| N/A | N/A | 02/01/17 | 02/03/17 |
| N/A | N/A | 02/06/17 | 02/10/17 |
| N/A | N/A | 02/13/17 | 02/17/17 |
| N/A | N/A | 02/20/17 | 02/24/17 |
| N/A | N/A | 02/01/17 | 02/01/17 |
| N/A | N/A | 02/06/17 | 02/10/17 |
| N/A | N/A | 02/13/17 | 02/17/17 |
| N/A | N/A | 02/20/17 | 02/24/17 |
| N/A | N/A | 02/27/17 | 02/27/17 |
| N/A | N/A | 02/01/17 | 02/03/17 |
| N/A | N/A | 02/06/17 | 02/08/17 |
| N/A | N/A | 02/01/17 | 02/03/17 |
| N/A | N/A | 02/06/17 | 02/10/17 |
| N/A | N/A | 02/13/17 | 02/17/17 |
| N/A | N/A | 02/20/17 | 02/24/17 |
| N/A | N/A | 02/27/17 | 02/27/17 |
| N/A | N/A | 02/01/17 | 02/01/17 |
| N/A | N/A | 02/01/17 | 02/03/17 |
| N/A | N/A | 02/06/17 | 02/10/17 |
| N/A | N/A | 02/13/17 | 02/17/17 |
| N/A | N/A | 02/20/17 | 02/24/17 |
| N/A | N/A | 02/27/17 | 02/27/17 |
| N/A | N/A | 02/09/17 | 02/12/17 |
| N/A | N/A | 02/13/17 | 02/14/17 |
| N/A | N/A | 02/13/17 | 02/17/17 |
| N/A | N/A | 02/06/17 | 02/11/17 |
| N/A | N/A | 02/13/17 | 02/14/17 |
| N/A | N/A | 03/06/17 | 03/10/17 |
| N/A | N/A | 03/27/17 | 03/29/17 |
| N/A | N/A | 03/30/17 | 03/31/17 |
| N/A | N/A | 03/01/17 | 03/01/17 |
| N/A | N/A | 03/06/17 | 03/10/17 |
| N/A | N/A | 03/13/17 | 03/17/17 |
| N/A | N/A | 03/20/17 | 03/24/17 |
| N/A | N/A | 03/27/17 | 03/31/17 |
| N/A | N/A | 03/18/17 | 03/22/17 |
| N/A | N/A | 03/23/17 | 03/27/17 |
| N/A | N/A | 03/01/17 | 03/03/17 |
| N/A | N/A | 03/06/17 | 03/10/17 |
| N/A | N/A | 03/13/17 | 03/17/17 |
| N/A | N/A | 03/20/17 | 03/24/17 |
| N/A | N/A | 03/27/17 | 03/31/17 |
| N/A | N/A | 03/21/17 | 03/25/17 |
| N/A | N/A | 03/27/17 | 03/31/17 |
| N/A | N/A | 03/01/17 | 03/01/17 |
| N/A | N/A | 03/06/17 | 03/08/17 |
| N/A | N/A | 03/30/17 | 03/31/17 |
| N/A | N/A | 03/21/17 | 03/25/17 |
| N/A | N/A | 03/27/17 | 03/31/17 |
| N/A | N/A | 03/01/17 | 03/03/17 |
| N/A | N/A | 03/06/17 | 03/10/17 |
| N/A | N/A | 03/13/17 | 03/17/17 |

| | | | |
|---|---|---|---|
| N/A | N/A | 03/20/17 | 03/24/17 |
| N/A | N/A | 03/27/17 | 03/31/17 |
| N/A | N/A | 03/30/17 | 03/31/17 |
| N/A | N/A | 03/13/17 | 03/16/17 |
| N/A | N/A | 03/17/17 | 03/17/17 |
| N/A | N/A | 04/24/17 | 04/28/17 |
| N/A | N/A | 04/27/17 | 04/30/17 |
| N/A | N/A | 04/03/17 | 04/07/17 |
| N/A | N/A | 04/10/17 | 04/14/17 |
| N/A | N/A | 04/27/17 | 04/27/17 |
| N/A | N/A | 04/03/17 | 04/07/17 |
| N/A | N/A | 04/10/17 | 04/12/17 |
| N/A | N/A | 04/17/17 | 04/17/17 |
| N/A | N/A | 04/11/17 | 04/17/17 |
| N/A | N/A | 04/17/17 | 04/21/17 |
| N/A | N/A | 04/03/17 | 04/05/17 |
| N/A | N/A | 04/01/17 | 04/01/17 |
| N/A | N/A | 04/03/17 | 04/07/17 |
| N/A | N/A | 04/10/17 | 04/13/17 |
| N/A | N/A | 04/02/17 | 04/04/17 |
| N/A | N/A | 04/05/17 | 04/08/17 |
| N/A | N/A | 04/10/17 | 04/15/17 |
| N/A | N/A | 04/17/17 | 04/21/17 |
| N/A | N/A | 04/24/17 | 04/28/17 |
| N/A | N/A | 04/01/17 | 04/04/17 |
| N/A | N/A | 04/05/17 | 04/08/17 |
| N/A | N/A | 04/09/17 | 04/10/17 |
| N/A | N/A | 04/11/17 | 04/14/17 |
| N/A | N/A | 04/15/17 | 04/18/17 |
| N/A | N/A | 04/19/17 | 04/22/17 |
| N/A | N/A | 04/23/17 | 04/25/17 |
| N/A | N/A | 04/26/17 | 04/28/17 |
| N/A | N/A | 04/01/17 | 04/01/17 |
| N/A | N/A | 04/27/17 | 04/28/17 |
| N/A | N/A | 04/03/17 | 04/07/17 |
| N/A | N/A | 04/10/17 | 04/14/17 |
| N/A | N/A | 04/17/17 | 04/21/17 |
| N/A | N/A | 04/24/17 | 04/28/17 |
| 06/08/17 | 6532781031 | 05/19/17 | 05/22/17 |
| 05/25/18 | 3347601901 | 05/12/17 | 05/15/17 |
| 07/21/17 | 8109805486 | 05/18/17 | 05/21/17 |
| 05/31/17 | 6528269729 | 05/15/17 | 05/18/17 |
| 05/25/17 | 6530521607 | 05/16/17 | 05/20/17 |
| 08/02/17 | 8119313715 | 05/24/17 | 05/27/17 |
| 08/08/17 | 8123183860 | 05/28/17 | 05/31/17 |
| 06/07/17 | 6541266362 | 05/22/17 | 05/25/17 |
| 07/26/17 | 8112305029 | 05/26/17 | 05/29/17 |
| 05/31/17 | 6528269730 | 05/19/17 | 05/21/17 |
| 05/12/17 | 6508710575 | 05/01/17 | 05/05/17 |
| 05/24/17 | 6528269694 | 05/15/17 | 05/19/17 |
| 09/19/17 | 3316593257 | 05/02/17 | 05/04/17 |
| 05/27/17 | 6518283392 | 05/08/17 | 05/11/17 |
| 10/12/17 | 3319549183 | 05/24/17 | 05/26/17 |
| 07/31/17 | 8116281227 | 05/23/17 | 05/24/17 |
| 05/19/18 | 8363845864 | 05/16/17 | 05/17/17 |

| | | | |
|---|---|---|---|
| 07/31/17 | 8116272268 | 05/22/17 | 05/23/17 |
| 01/31/18 | 6510974095 | 05/02/17 | 05/04/17 |
| 05/26/17 | 6532781022 | 05/17/17 | 05/19/17 |
| 06/01/17 | 6541266354 | 05/22/17 | 05/24/17 |
| 09/15/17 | 3316559913 | 05/30/17 | 05/31/17 |
| 07/09/18 | 8396611209 | 05/13/17 | 05/17/17 |
| 07/20/17 | 8108110385 | 05/22/17 | 05/23/17 |
| 08/16/17 | 8130178879 | 05/29/17 | 05/30/17 |
| 07/19/17 | 8108099671 | 05/25/17 | 05/26/17 |
| 06/07/17 | 6551410874 | 05/29/17 | 05/30/17 |
| 07/03/17 | 6558525900 | 05/31/17 | 05/31/17 |
| 05/27/17 | 6522612917 | 05/08/17 | 05/12/17 |
| 06/07/17 | 6537668436 | 05/15/17 | 05/19/17 |
| 06/09/17 | 6543904297 | 05/22/17 | 05/26/17 |
| 01/26/18 | 6953170718 | 05/01/17 | 05/05/17 |
| 05/27/17 | 6522612919 | 05/08/17 | 05/11/17 |
| 05/24/17 | 6510974093 | 05/01/17 | 05/05/17 |
| 05/29/17 | 6520881700 | 05/08/17 | 05/12/17 |
| 06/10/17 | 6543904303 | 05/22/17 | 05/26/17 |
| 06/07/17 | 6541266352 | 05/23/17 | 05/26/17 |
| 05/12/18 | 7038037200 | 05/13/17 | 05/18/17 |
| 05/23/17 | 6525925276 | 05/08/17 | 05/13/17 |
| 07/21/17 | 8109806048 | 05/15/17 | 05/19/17 |
| 06/13/17 | 6551826781 | 05/22/17 | 05/26/17 |
| 06/02/17 | 6530521617 | 05/15/17 | 05/19/17 |
| 08/02/17 | 8119895386 | 05/31/17 | 05/31/17 |
| 08/10/17 | 6640017245 | 05/08/17 | 05/08/17 |
| 05/13/17 | 6510974090 | 05/01/17 | 05/05/17 |
| 05/19/17 | 6506320677 | 05/01/17 | 05/01/17 |
| 05/18/17 | 6518283393 | 05/12/17 | 05/12/17 |
| 06/01/17 | 6541266351 | 05/22/17 | 05/22/17 |
| 12/02/17 | 3325481073 | 05/29/17 | 05/31/17 |
| 08/10/17 | 8125823002 | 05/29/17 | 05/31/17 |
| 06/21/17 | 6554018725 | 05/29/17 | 05/31/17 |
| 06/07/17 | 6551410871 | 05/29/17 | 05/31/17 |
| 05/26/17 | 6532781030 | 05/22/17 | 05/22/17 |
| 06/30/17 | 8093273976 | 05/05/17 | 05/05/17 |
| 05/25/17 | 6530521606 | 05/17/17 | 05/18/17 |
| 05/12/18 | 7038037203 | 05/15/17 | 05/16/17 |
| 09/19/17 | 3316593305 | 05/02/17 | 05/03/17 |
| 07/11/17 | 8102124798 | 05/19/17 | 05/19/17 |
| 05/24/17 | 6528269728 | 05/16/17 | 05/18/17 |
| 07/10/17 | 8101204682 | 05/09/17 | 05/10/17 |
| 04/01/18 | 7038037202 | 05/16/17 | 05/16/17 |
| 07/20/17 | 8108110390 | 05/25/17 | 05/26/17 |
| 06/13/17 | 6543904300 | 05/22/17 | 05/23/17 |
| 07/14/17 | 8104774428 | 05/05/17 | 05/05/17 |
| 05/26/17 | 6532781021 | 05/15/17 | 05/16/17 |
| 04/05/18 | 7067746281 | 06/12/17 | 06/18/17 |
| 08/02/17 | 8119895379 | 06/01/17 | 06/10/17 |
| 09/15/17 | 3316560047 | 06/12/17 | 06/17/17 |
| 06/22/17 | 6564153851 | 06/01/17 | 06/05/17 |
| 06/29/17 | 6591046870 | 06/19/17 | 06/24/17 |
| 06/21/17 | 6577187242 | 06/12/17 | 06/17/17 |
| 07/05/17 | 6600090661 | 06/19/17 | 06/24/17 |

| | | | |
|---|---|---|---|
| 08/07/17 | 8123180249 | 06/01/17 | 06/04/17 |
| 07/20/17 | 6624964734 | 06/26/17 | 06/30/17 |
| 06/21/17 | 6577187243 | 06/06/17 | 06/10/17 |
| 07/14/17 | 6603697882 | 06/23/17 | 06/26/17 |
| 07/14/17 | 6603697883 | 06/27/17 | 06/30/17 |
| 08/24/17 | 6603697878 | 06/26/17 | 06/28/17 |
| 08/02/17 | 8119897913 | 06/07/17 | 06/10/17 |
| 08/11/17 | 8125833862 | 06/14/17 | 06/17/17 |
| 06/29/17 | 6591046877 | 06/19/17 | 06/22/17 |
| 09/13/17 | 8153057228 | 06/25/17 | 06/27/17 |
| 09/16/17 | 8155085772 | 06/28/17 | 06/30/17 |
| 06/21/17 | 6556240749 | 06/02/17 | 06/04/17 |
| 08/14/17 | 8128940537 | 06/05/17 | 06/07/17 |
| 08/11/17 | 8125826140 | 06/12/17 | 06/14/17 |
| 08/11/17 | 8125833867 | 06/12/17 | 06/13/17 |
| 08/11/17 | 8125826130 | 06/09/17 | 06/10/17 |
| 06/23/17 | 6581539891 | 06/16/17 | 06/17/17 |
| 07/05/17 | 6600090662 | 06/26/17 | 06/27/17 |
| 06/29/17 | 6591046875 | 06/15/17 | 06/23/17 |
| 06/21/17 | 6556240748 | 06/01/17 | 06/01/17 |
| 06/23/17 | 6564153842 | 06/05/17 | 06/09/17 |
| 06/30/17 | 6581539896 | 06/12/17 | 06/15/17 |
| 01/25/18 | 6950785948 | 06/05/17 | 06/09/17 |
| 02/17/18 | 3334548116 | 06/12/17 | 06/16/17 |
| 08/16/17 | 8131418899 | 06/19/17 | 06/24/17 |
| 09/26/17 | 3317729887 | 06/26/17 | 06/30/17 |
| 06/22/17 | 6554018721 | 06/02/17 | 06/02/17 |
| 07/24/17 | 8102444155 | 06/01/17 | 06/01/17 |
| 08/10/17 | 8125822988 | 06/02/17 | 06/02/17 |
| 06/20/17 | 6554018724 | 06/02/17 | 06/02/17 |
| 10/24/17 | 3321227209 | 07/01/17 | 07/05/17 |
| 08/28/17 | 6649219235 | 07/21/17 | 07/25/17 |
| 08/02/17 | 6636559788 | 07/06/17 | 07/10/17 |
| 08/08/17 | 6646542823 | 07/22/17 | 07/26/17 |
| 11/19/17 | 3323749716 | 07/27/17 | 07/31/17 |
| 07/27/17 | 6636559776 | 07/17/17 | 07/22/17 |
| 08/09/17 | 6646542821 | 07/24/17 | 07/27/17 |
| 07/11/17 | 6611384113 | 07/01/17 | 07/06/17 |
| 07/28/17 | 6622865614 | 07/13/17 | 07/16/17 |
| 08/04/17 | 6634384073 | 07/17/17 | 07/20/17 |
| 08/08/17 | 6646542814 | 07/16/17 | 07/19/17 |
| 08/08/17 | 6646542816 | 07/24/17 | 07/27/17 |
| 07/27/17 | 6624964747 | 07/02/17 | 07/04/17 |
| 08/01/17 | 6634384070 | 07/14/17 | 07/16/17 |
| 08/10/17 | 6649219236 | 07/29/17 | 07/31/17 |
| 11/16/17 | 3323707959 | 07/03/17 | 07/07/17 |
| 07/12/17 | 6611384111 | 07/03/17 | 07/07/17 |
| 07/19/17 | 6622865592 | 07/10/17 | 07/14/17 |
| 07/27/17 | 6636559769 | 07/17/17 | 07/21/17 |
| 09/19/17 | 3316592544 | 07/26/17 | 07/29/17 |
| 07/28/17 | 6636559775 | 07/11/17 | 07/14/17 |
| 11/16/17 | 3323707272 | 07/11/17 | 07/13/17 |
| 08/03/17 | 6649219221 | 07/26/17 | 07/28/17 |
| 08/03/17 | 6649219222 | 07/24/17 | 07/25/17 |
| 11/01/17 | 3321871806 | 07/25/17 | 07/28/17 |

| | | | |
|---|---|---|---|
| 08/01/17 | 6639232005 | 07/17/17 | 07/21/17 |
| 08/11/17 | 6652138827 | 07/24/17 | 07/28/17 |
| 08/02/17 | 6629147366 | 07/11/17 | 07/14/17 |
| 08/04/17 | 6636559774 | 07/17/17 | 07/21/17 |
| 11/20/17 | 3323751394 | 07/24/17 | 07/28/17 |
| 08/03/17 | 6634384049 | 07/17/17 | 07/21/17 |
| 11/16/17 | 3323694503 | 07/31/17 | 07/31/17 |
| 10/31/17 | 3321846076 | 07/24/17 | 07/24/17 |
| 07/20/17 | 6624964730 | 07/10/17 | 07/10/17 |
| 11/16/17 | 3323706924 | 07/14/17 | 07/14/17 |
| 04/18/18 | 3342831548 | 07/24/17 | 07/24/17 |
| 11/27/17 | 3321849135 | 07/31/17 | 07/31/17 |
| 11/17/17 | 3323728551 | 07/20/17 | 07/20/17 |
| 12/07/17 | 3326109207 | 07/27/17 | 07/27/17 |
| 11/07/17 | 3322515009 | 07/31/17 | 07/31/17 |
| 11/20/17 | 3323751772 | 07/31/17 | 07/31/17 |
| 09/15/17 | 6697202620 | 08/14/17 | 08/18/17 |
| 11/03/17 | 8192290899 | 08/19/17 | 08/23/17 |
| 08/21/17 | 6661637280 | 08/02/17 | 08/06/17 |
| 10/05/17 | 8171479539 | 08/05/17 | 08/12/17 |
| 11/19/17 | 3323749691 | 08/19/17 | 08/23/17 |
| 10/04/17 | 8169464259 | 08/01/17 | 08/05/17 |
| 08/21/17 | 6661637283 | 08/02/17 | 08/06/17 |
| 03/06/18 | 6944470365 | 08/03/17 | 08/06/17 |
| 10/24/17 | 3321210572 | 08/01/17 | 08/05/17 |
| 10/11/17 | 8174446681 | 08/11/17 | 08/16/17 |
| 11/19/17 | 3323749720 | 08/01/17 | 08/05/17 |
| 11/19/17 | 3323749727 | 08/07/17 | 08/11/17 |
| 09/04/17 | 6685146359 | 08/11/17 | 08/14/17 |
| 08/22/17 | 6661637268 | 08/01/17 | 08/04/17 |
| 11/19/17 | 3323749677 | 08/11/17 | 08/14/17 |
| 11/04/17 | 8193059605 | 08/24/17 | 08/27/17 |
| 11/04/17 | 8193059609 | 08/28/17 | 08/31/17 |
| 11/19/17 | 3323749734 | 08/14/17 | 08/16/17 |
| 08/11/17 | 6663351433 | 08/01/17 | 08/03/17 |
| 10/11/17 | 8174446682 | 08/07/17 | 08/08/17 |
| 10/23/17 | 8182903193 | 08/14/17 | 08/21/17 |
| 09/14/17 | 6709774784 | 08/31/17 | 08/31/17 |
| 09/05/17 | 6686465361 | 08/14/17 | 08/18/17 |
| 11/21/17 | 3324291976 | 08/09/17 | 08/11/17 |
| 08/11/17 | 6663351432 | 08/04/17 | 08/04/17 |
| 08/16/17 | 6671188348 | 08/11/17 | 08/11/17 |
| 11/21/17 | 3324291865 | 08/07/17 | 08/07/17 |
| 11/24/17 | 3324335132 | 09/06/17 | 09/11/17 |
| 10/05/17 | 6745437169 | 09/15/17 | 09/23/17 |
| 12/07/17 | 8217168201 | 09/20/17 | 09/24/17 |
| 11/24/17 | 3324335053 | 09/01/17 | 09/05/17 |
| 12/07/17 | 8217168198 | 09/25/17 | 09/29/17 |
| 11/24/17 | 3324335139 | 09/12/17 | 09/16/17 |
| 10/23/17 | 6768444138 | 09/25/17 | 09/30/17 |
| 01/31/18 | 6927082092 | 09/01/17 | 09/04/17 |
| 10/05/17 | 6757116606 | 09/21/17 | 09/28/17 |
| 11/15/17 | 8200682205 | 09/14/17 | 09/17/17 |
| 11/22/17 | 8205065903 | 09/18/17 | 09/21/17 |
| 11/22/17 | 8205065905 | 09/25/17 | 09/28/17 |

| | | | |
|---|---|---|---|
| 11/24/17 | 3324335150 | 09/17/17 | 09/20/17 |
| 11/24/17 | 3324335102 | 09/21/17 | 09/24/17 |
| 09/19/17 | 6717179248 | 09/01/17 | 09/04/17 |
| 09/28/17 | 6733306115 | 09/08/17 | 09/11/17 |
| 03/14/18 | 3338082957 | 09/05/17 | 09/07/17 |
| 09/22/17 | 6733306098 | 09/01/17 | 09/05/17 |
| 09/22/17 | 6733306100 | 09/08/17 | 09/12/17 |
| 11/09/17 | 8196901461 | 09/08/17 | 09/10/17 |
| 11/17/17 | 8201593144 | 09/11/17 | 09/13/17 |
| 11/22/17 | 8205065904 | 09/22/17 | 09/24/17 |
| 10/13/17 | 6753915780 | 09/25/17 | 09/27/17 |
| 11/24/17 | 3324335119 | 09/28/17 | 09/30/17 |
| 09/19/17 | 6717179249 | 09/05/17 | 09/07/17 |
| 09/22/17 | 6733306101 | 09/13/17 | 09/15/17 |
| 09/28/17 | 6742842176 | 09/18/17 | 09/20/17 |
| 09/28/17 | 6742842175 | 09/21/17 | 09/22/17 |
| 12/25/17 | 8228864959 | 09/30/17 | 09/30/17 |
| 04/04/18 | 3341029553 | 09/10/17 | 09/10/17 |
| 11/28/17 | 8208695168 | 09/30/17 | 09/30/17 |
| 10/05/17 | 6757116605 | 09/29/17 | 09/29/17 |
| 11/07/17 | 6799584726 | 10/01/17 | 10/05/17 |
| 11/07/17 | 6770627578 | 10/01/17 | 10/05/17 |
| 11/07/17 | 6782761620 | 10/06/17 | 10/10/17 |
| 11/07/17 | 6807768752 | 10/23/17 | 10/28/17 |
| 10/12/17 | 6770627568 | 10/02/17 | 10/07/17 |
| 10/30/17 | 6799584705 | 10/10/17 | 10/14/17 |
| 11/07/17 | 6799584727 | 10/06/17 | 10/09/17 |
| 11/21/17 | 6838492679 | 10/25/17 | 10/31/17 |
| 10/11/17 | 6768444140 | 10/04/17 | 10/07/17 |
| 10/31/17 | 6799584707 | 10/18/17 | 10/21/17 |
| 10/20/17 | 6785022005 | 10/09/17 | 10/12/17 |
| 10/30/17 | 6799584711 | 10/18/17 | 10/21/17 |
| 10/23/17 | 6777727641 | 10/04/17 | 10/07/17 |
| 11/06/17 | 6782761612 | 10/11/17 | 10/13/17 |
| 11/02/17 | 6807768755 | 10/25/17 | 10/27/17 |
| 10/11/17 | 6768444141 | 10/02/17 | 10/03/17 |
| 10/30/17 | 6799584706 | 10/16/17 | 10/17/17 |
| 11/16/17 | 6820612049 | 10/30/17 | 10/31/17 |
| 10/20/17 | 6785022006 | 10/13/17 | 10/14/17 |
| 10/30/17 | 6799584710 | 10/16/17 | 10/17/17 |
| 11/02/17 | 6807768754 | 10/23/17 | 10/24/17 |
| 10/23/17 | 6768444137 | 10/02/17 | 10/03/17 |
| 11/06/17 | 6794673202 | 10/16/17 | 10/17/17 |
| 11/06/17 | 6794673200 | 10/19/17 | 10/20/17 |
| 11/10/17 | 6823003651 | 10/30/17 | 10/31/17 |
| 10/11/17 | 6768444145 | 10/02/17 | 10/03/17 |
| 11/14/17 | 6818314135 | 10/31/17 | 10/31/17 |
| 12/11/17 | 8219490747 | 10/01/17 | 10/01/17 |
| 10/20/17 | 6785022002 | 10/09/17 | 10/09/17 |
| 11/06/17 | 6794673201 | 10/18/17 | 10/18/17 |
| 11/03/17 | 6810427515 | 10/23/17 | 10/23/17 |
| 11/29/17 | 6831525535 | 11/05/17 | 11/09/17 |
| 11/20/17 | 6818314136 | 11/01/17 | 11/04/17 |
| 01/06/18 | 8239182519 | 11/06/17 | 11/10/17 |
| 12/27/17 | 6900903802 | 11/22/17 | 11/25/17 |

| | | | |
|---|---|---|---|
| 12/27/17 | 6900903803 | 11/27/17 | 11/30/17 |
| 11/16/17 | 6833391954 | 11/06/17 | 11/09/17 |
| 01/07/18 | 8239441504 | 11/01/17 | 11/03/17 |
| 11/09/17 | 6820612051 | 11/02/17 | 11/03/17 |
| 11/10/17 | 6823003653 | 11/02/17 | 11/03/17 |
| 01/30/18 | 8265012525 | 11/20/17 | 11/24/17 |
| 12/11/17 | 6860506737 | 11/20/17 | 11/24/17 |
| 01/03/18 | 8236381794 | 11/10/17 | 11/10/17 |
| 11/09/17 | 6820612050 | 11/01/17 | 11/01/17 |
| 01/03/18 | 8236381793 | 11/11/17 | 11/11/17 |
| 12/19/17 | 6872435621 | 11/27/17 | 11/29/17 |
| 11/10/17 | 6823003652 | 11/01/17 | 11/01/17 |
| 01/23/18 | 8255628160 | 11/13/17 | 11/13/17 |
| 01/23/18 | 8255628161 | 11/15/17 | 11/17/17 |
| 02/20/18 | 8284953957 | 12/04/17 | 12/09/17 |
| 02/13/18 | 8280091712 | 12/11/17 | 12/15/17 |
| 03/12/18 | 8304347098 | 12/19/17 | 12/21/17 |
| 02/19/18 | 8284484422 | 12/18/17 | 12/22/17 |
| 03/07/18 | 8300506870 | 12/26/17 | 12/29/17 |
| 02/12/18 | 8279242413 | 12/01/17 | 12/02/17 |
| 02/12/18 | 8279248986 | 12/01/17 | 12/08/17 |
| 02/20/18 | 8284491594 | 12/11/17 | 12/15/17 |
| 02/27/18 | 8287981823 | 12/18/17 | 12/22/17 |
| 03/13/18 | 8304362275 | 12/25/17 | 12/29/17 |
| 03/08/18 | 8301531601 | 12/25/17 | 12/25/17 |
| 02/06/18 | 6938463423 | 01/05/18 | 01/10/18 |
| 01/23/18 | 6930703463 | 01/03/18 | 01/07/18 |
| 02/06/18 | 6961040196 | 01/20/18 | 01/24/18 |
| 02/06/18 | 6950949861 | 01/11/18 | 01/15/18 |
| 02/02/18 | 6966007834 | 01/10/18 | 01/17/18 |
| 01/25/18 | 6940657272 | 01/11/18 | 01/14/18 |
| 02/27/18 | 7009955720 | 01/28/18 | 01/31/18 |
| 01/31/18 | 6940657271 | 01/08/18 | 01/10/18 |
| 02/02/18 | 6966007833 | 01/05/18 | 01/09/18 |
| 02/06/18 | 6961040197 | 01/25/18 | 01/27/18 |
| 02/09/18 | 6979896197 | 01/29/18 | 01/31/18 |
| 02/02/18 | 6966007835 | 01/25/18 | 01/26/18 |
| 02/02/18 | 6950949857 | 01/15/18 | 01/19/18 |
| 02/02/18 | 6966007832 | 01/22/18 | 01/26/18 |
| 02/09/18 | 6979896196 | 01/15/18 | 01/15/18 |
| 02/09/18 | 6979896194 | 01/29/18 | 01/31/18 |
| 02/08/18 | 6966007836 | 01/08/18 | 01/26/18 |
| 04/05/18 | 3341064088 | 02/11/18 | 02/16/18 |
| 03/19/18 | 7030364220 | 02/22/18 | 02/28/18 |
| 03/14/18 | 7027965422 | 02/12/18 | 02/18/18 |
| 03/14/18 | 7027965424 | 02/19/18 | 02/25/18 |
| 02/27/18 | 7009955700 | 02/02/18 | 02/10/18 |
| 03/13/18 | 7022906829 | 02/15/18 | 02/19/18 |
| 03/13/18 | 7022906830 | 02/20/18 | 02/24/18 |
| 04/05/18 | 3341064069 | 02/17/18 | 02/21/18 |
| 02/27/18 | 7009955701 | 02/12/18 | 02/17/18 |
| 03/14/18 | 7027965423 | 02/08/18 | 02/11/18 |
| 03/13/18 | 7022906831 | 02/25/18 | 02/28/18 |
| 03/05/18 | 7009955719 | 02/12/18 | 02/14/18 |
| 03/14/18 | 7027965421 | 02/05/18 | 02/07/18 |

Exhibit A, Page 84

| | | | |
|---|---|---|---|
| 03/21/18 | 7038037204 | 02/26/18 | 02/27/18 |
| 02/09/18 | 6979896198 | 02/01/18 | 02/02/18 |
| 02/27/18 | 7009955721 | 02/01/18 | 02/01/18 |
| 02/09/18 | 6979896195 | 02/02/18 | 02/02/18 |
| 03/22/18 | 7050684062 | 03/11/18 | 03/18/18 |
| 05/04/18 | 3345159379 | 03/19/18 | 03/25/18 |
| 05/04/18 | 3345159396 | 03/26/18 | 03/31/18 |
| 05/02/18 | 8349961326 | 03/05/18 | 03/10/18 |
| 04/26/18 | 7075372085 | 03/26/18 | 03/31/18 |
| 04/11/18 | 7077081607 | 03/28/18 | 03/31/18 |
| 05/02/18 | 8349227375 | 03/05/18 | 03/09/18 |
| 04/05/18 | 7053013623 | 03/05/18 | 03/09/18 |
| 04/16/18 | 7053013624 | 03/12/18 | 03/16/18 |
| 05/01/18 | 8346528357 | 03/01/18 | 03/04/18 |
| 04/10/18 | 7063115799 | 03/19/18 | 03/21/18 |
| 04/26/18 | 3344002157 | 03/26/18 | 03/29/18 |
| 04/26/18 | 8344005375 | 03/01/18 | 03/03/18 |
| 04/03/18 | 7063115789 | 03/19/18 | 03/21/18 |
| 04/13/18 | 7075372084 | 03/22/18 | 03/24/18 |
| 05/04/18 | 3345159361 | 03/17/18 | 03/18/18 |
| 04/20/18 | 7075372116 | 03/22/18 | 03/22/18 |
| 04/03/18 | 7063115788 | 03/17/18 | 03/17/18 |
| 04/16/18 | 7089671901 | 04/01/18 | 04/08/18 |
| 04/25/18 | 7100491933 | 04/10/18 | 04/15/18 |
| 05/10/18 | 7122528490 | 04/22/18 | 04/27/18 |
| 04/18/18 | 7090653502 | 04/01/18 | 04/04/18 |
| 01/09/19 | 7544364055 | 04/27/18 | 04/30/18 |
| 05/03/18 | 7110298483 | 04/16/18 | 04/17/18 |
| 04/12/18 | 7089671836 | 04/08/18 | 04/08/18 |
| 09/20/18 | 7361935497 | 05/18/18 | 05/27/18 |
| 03/27/19 | 7680520067 | 05/18/18 | 05/21/18 |
| 07/19/18 | 7257068570 | 05/05/18 | 05/10/18 |
| 05/29/18 | 7147568898 | 05/07/18 | 05/11/18 |
| 11/16/18 | 7460542378 | 05/25/18 | 05/27/18 |
| 05/29/18 | 7147568997 | 05/04/18 | 05/07/18 |
| 06/19/18 | 7189854330 | 05/29/18 | 05/31/18 |
| 03/12/19 | 7680520068 | 05/22/18 | 05/24/18 |
| 05/29/18 | 7147569012 | 05/08/18 | 05/10/18 |
| 05/18/18 | 7135286864 | 05/01/18 | 05/01/18 |
| 07/12/18 | 7231856841 | 06/25/18 | 06/30/18 |
| 06/21/18 | 7197233319 | 06/01/18 | 06/05/18 |
| 06/21/18 | 7197233294 | 06/06/18 | 06/10/18 |
| 07/06/18 | 7221881959 | 06/18/18 | 06/23/18 |
| 07/12/18 | 7233818680 | 06/25/18 | 06/30/18 |
| 06/26/18 | 7206753712 | 06/11/18 | 06/14/18 |
| 07/06/18 | 7221881968 | 06/17/18 | 06/20/18 |
| 07/05/18 | 7221881953 | 06/21/18 | 06/24/18 |
| 06/20/18 | 7194905558 | 06/04/18 | 06/08/18 |
| 06/27/18 | 7209181034 | 06/11/18 | 06/15/18 |
| 08/03/18 | 8426501959 | 06/27/18 | 06/30/18 |
| 06/27/18 | 7206753716 | 06/15/18 | 06/16/18 |
| 07/02/18 | 7206755718 | 06/15/18 | 06/16/18 |
| 07/06/18 | 7221881947 | 06/18/18 | 06/19/18 |
| 01/08/19 | 7544364060 | 07/27/18 | 07/31/18 |
| 07/19/18 | 7242220090 | 07/01/18 | 07/05/18 |

| | | | |
|---|---|---|---|
| 07/19/18 | 7242225830 | 07/02/18 | 07/07/18 |
| 07/25/18 | 7256054205 | 07/09/18 | 07/14/18 |
| 03/25/19 | 7680522379 | 07/02/18 | 07/07/18 |
| 09/17/18 | 8461681049 | 07/19/18 | 07/22/18 |
| 09/24/18 | 8466249180 | 07/23/18 | 07/26/18 |
| 09/17/18 | 8461681099 | 07/16/18 | 07/18/18 |
| 08/07/18 | 7277111935 | 07/27/18 | 07/29/18 |
| 08/14/18 | 7289805447 | 07/30/18 | 07/31/18 |
| 03/21/19 | 7680522384 | 07/09/18 | 07/09/18 |
| 08/29/18 | 7315498251 | 08/14/18 | 08/19/18 |
| 08/22/18 | 7301636070 | 08/03/18 | 08/08/18 |
| 08/14/18 | 7289805449 | 08/01/18 | 08/05/18 |
| 08/22/18 | 7301636659 | 08/06/18 | 08/10/18 |
| 08/30/18 | 7317693898 | 08/13/18 | 08/17/18 |
| 09/07/18 | 7341019474 | 08/27/18 | 08/31/18 |
| 08/22/18 | 7301636649 | 08/09/18 | 08/12/18 |
| 09/06/18 | 7325376153 | 08/21/18 | 08/24/18 |
| 08/31/18 | 7327934891 | 08/20/18 | 08/24/18 |
| 08/30/18 | 7317693911 | 08/18/18 | 08/20/18 |
| 08/28/18 | 7317693916 | 08/13/18 | 08/15/18 |
| 09/06/18 | 7327935017 | 08/20/18 | 08/21/18 |
| 01/08/19 | 7544364066 | 08/01/18 | 08/02/18 |
| 08/28/18 | 7317693922 | 08/16/18 | 08/17/18 |
| 08/16/18 | 7301636672 | 08/11/18 | 08/11/18 |
| 09/03/18 | 7325376162 | 08/25/18 | 08/25/18 |
| 09/07/18 | 7341017921 | 08/27/18 | 08/27/18 |
| 09/19/18 | 7348752925 | 09/03/18 | 09/08/18 |
| 12/15/18 | 8524963512 | 09/28/18 | 09/30/18 |
| 10/10/18 | 7389356891 | 09/24/18 | 09/28/18 |
| 09/26/18 | 7373427420 | 09/17/18 | 09/21/18 |
| 10/03/18 | 7386601413 | 09/24/18 | 09/28/18 |
| 09/26/18 | 7363136593 | 09/12/18 | 09/14/18 |
| 09/25/18 | 7363136592 | 09/10/18 | 09/11/18 |
| 10/03/18 | 7373427418 | 09/20/18 | 09/21/18 |
| 09/07/18 | 7341019477 | 09/01/18 | 09/01/18 |
| 11/15/18 | 7470301540 | 11/06/18 | 11/11/18 |
| 11/08/18 | 7456360724 | 11/01/18 | 11/05/18 |
| 10/31/18 | 7442014865 | 10/15/18 | 10/18/18 |
| 10/31/18 | 7442014871 | 10/26/18 | 10/29/18 |
| 11/20/18 | 7477970322 | 11/15/18 | 11/18/18 |
| 10/31/18 | 7442014861 | 10/19/18 | 10/21/18 |
| 10/31/18 | 7442014854 | 10/08/18 | 10/12/18 |
| 10/18/18 | 7416447771 | 10/08/18 | 10/12/18 |
| 11/20/18 | 7477970321 | 11/12/18 | 11/14/18 |
| 10/23/18 | 7424400243 | 10/17/18 | 10/19/18 |
| 11/08/18 | 7456363895 | 10/30/18 | 10/31/18 |
| 11/30/18 | 7495478540 | 11/19/18 | 11/20/18 |
| 03/27/19 | 7672399417 | 10/08/18 | 10/12/18 |
| 12/21/18 | 8540361814 | 10/22/18 | 10/23/18 |
| 03/20/19 | 7672399416 | 10/03/18 | 10/05/18 |
| 10/23/18 | 7424316877 | 10/15/18 | 10/19/18 |
| 10/17/18 | 7411456377 | 10/01/18 | 10/01/18 |
| 11/15/18 | 7470301540 | 11/06/18 | 11/11/18 |
| 11/08/18 | 7456360724 | 11/01/18 | 11/05/18 |
| 11/20/18 | 7477970322 | 11/15/18 | 11/18/18 |

| 01/11/19 | 7548289966 | 11/07/18 | 11/09/18 |
| 11/20/18 | 7477970321 | 11/12/18 | 11/14/18 |
| 02/14/19 | 8576005875 | 11/29/18 | 11/30/18 |
| 11/30/18 | 7495478540 | 11/19/18 | 11/20/18 |

# EXHIBIT D

**Beachside Recovery, LLC**
UHC Claim Master

| DATE | CLAIM NUMBER | FROM DOS | TO DOS |
|------|--------------|----------|--------|
| N/A | N/A | 03/04/16 | 03/07/16 |
| N/A | N/A | 06/02/16 | 06/05/16 |
| N/A | N/A | 06/06/16 | 06/10/16 |
| N/A | N/A | 07/07/16 | 07/10/16 |
| N/A | N/A | 07/11/16 | 07/13/16 |
| N/A | N/A | 07/14/16 | 07/16/16 |
| N/A | N/A | 07/17/16 | 07/18/16 |
| N/A | N/A | 08/09/16 | 08/12/16 |
| N/A | N/A | 08/15/16 | 08/19/16 |
| N/A | N/A | 08/01/16 | 08/05/16 |
| N/A | N/A | 08/08/16 | 08/10/16 |
| N/A | N/A | 08/12/16 | 08/12/16 |
| N/A | N/A | 08/15/16 | 08/17/16 |
| N/A | N/A | 08/22/16 | 08/22/16 |
| N/A | N/A | 08/23/16 | 08/26/16 |
| N/A | N/A | 09/09/16 | 09/11/16 |
| N/A | N/A | 09/19/16 | 09/19/16 |
| N/A | N/A | 09/10/16 | 09/14/16 |
| N/A | N/A | 09/06/16 | 09/09/16 |
| N/A | N/A | 09/12/16 | 09/16/16 |
| N/A | N/A | 09/19/16 | 09/23/16 |
| N/A | N/A | 09/26/16 | 09/30/16 |
| N/A | N/A | 09/02/16 | 09/09/16 |
| N/A | N/A | 09/12/16 | 09/16/16 |
| N/A | N/A | 09/26/16 | 09/30/16 |
| N/A | N/A | 09/26/16 | 09/28/16 |
| N/A | N/A | 09/12/16 | 09/15/16 |
| N/A | N/A | 09/16/16 | 09/18/16 |
| N/A | N/A | 09/20/16 | 09/23/16 |
| N/A | N/A | 09/26/16 | 09/28/16 |
| N/A | N/A | 09/29/16 | 09/30/16 |
| N/A | N/A | 09/26/16 | 09/30/16 |
| N/A | N/A | 09/10/16 | 09/12/16 |
| N/A | N/A | 09/13/16 | 09/16/16 |
| N/A | N/A | 09/17/16 | 09/18/16 |
| N/A | N/A | 09/19/16 | 09/23/16 |
| N/A | N/A | 09/26/16 | 09/30/16 |
| N/A | N/A | 09/17/16 | 09/18/16 |
| N/A | N/A | 09/25/16 | 09/26/16 |
| N/A | N/A | 09/16/16 | 09/18/16 |
| N/A | N/A | 09/21/16 | 09/21/16 |
| N/A | N/A | 09/28/16 | 09/30/16 |
| N/A | N/A | 10/03/16 | 10/07/16 |
| N/A | N/A | 10/11/16 | 10/14/16 |
| N/A | N/A | 10/24/16 | 10/28/16 |
| N/A | N/A | 10/31/16 | 10/31/16 |
| N/A | N/A | 10/10/16 | 10/12/16 |
| N/A | N/A | 10/24/16 | 10/26/16 |
| N/A | N/A | 10/03/16 | 10/07/16 |
| N/A | N/A | 10/10/16 | 10/12/16 |
| N/A | N/A | 10/14/16 | 10/14/16 |

Exhibit A, Page 89

| | | | |
|---|---|---|---|
| N/A | N/A | 10/24/16 | 10/28/16 |
| N/A | N/A | 10/10/16 | 10/14/16 |
| N/A | N/A | 10/03/16 | 10/07/16 |
| N/A | N/A | 10/10/16 | 10/13/16 |
| N/A | N/A | 10/14/16 | 10/18/16 |
| N/A | N/A | 10/19/16 | 10/28/16 |
| N/A | N/A | 10/01/16 | 10/04/16 |
| N/A | N/A | 10/05/16 | 10/07/16 |
| N/A | N/A | 10/10/16 | 10/14/16 |
| N/A | N/A | 10/17/16 | 10/20/16 |
| N/A | N/A | 10/24/16 | 10/31/16 |
| N/A | N/A | 10/27/16 | 10/30/16 |
| N/A | N/A | 10/31/16 | 10/31/16 |
| N/A | N/A | 10/05/16 | 10/17/16 |
| N/A | N/A | 10/18/16 | 10/21/16 |
| N/A | N/A | 10/24/16 | 10/28/16 |
| N/A | N/A | 10/31/16 | 10/31/16 |
| N/A | N/A | 10/11/16 | 10/12/16 |
| N/A | N/A | 11/24/16 | 11/27/16 |
| N/A | N/A | 11/01/16 | 11/04/16 |
| N/A | N/A | 11/07/16 | 11/09/16 |
| N/A | N/A | 11/01/16 | 11/04/16 |
| N/A | N/A | 11/01/16 | 11/05/16 |
| N/A | N/A | 11/06/16 | 11/08/16 |
| N/A | N/A | 11/09/16 | 11/11/16 |
| N/A | N/A | 11/14/16 | 11/18/16 |
| N/A | N/A | 11/28/16 | 11/30/16 |
| N/A | N/A | 11/01/16 | 11/06/16 |
| N/A | N/A | 11/07/16 | 11/07/16 |
| N/A | N/A | 11/14/16 | 11/21/16 |
| N/A | N/A | 11/22/16 | 11/25/16 |
| N/A | N/A | 11/28/16 | 11/30/16 |
| N/A | N/A | 11/09/16 | 11/12/16 |
| N/A | N/A | 11/13/16 | 11/15/16 |
| N/A | N/A | 11/16/16 | 11/20/16 |
| N/A | N/A | 11/21/16 | 11/25/16 |
| N/A | N/A | 11/26/16 | 11/27/16 |
| N/A | N/A | 11/08/16 | 11/12/16 |
| N/A | N/A | 11/13/16 | 11/15/16 |
| N/A | N/A | 11/16/16 | 11/20/16 |
| N/A | N/A | 11/22/16 | 11/26/16 |
| N/A | N/A | 11/02/16 | 11/02/16 |
| N/A | N/A | 11/07/16 | 11/11/16 |
| N/A | N/A | 11/14/16 | 11/18/16 |
| N/A | N/A | 11/21/16 | 11/25/16 |
| N/A | N/A | 11/30/16 | 11/30/16 |
| N/A | N/A | 12/14/16 | 12/17/16 |
| N/A | N/A | 12/19/16 | 12/24/16 |
| N/A | N/A | 12/02/16 | 12/16/16 |
| N/A | N/A | 12/12/16 | 12/17/16 |
| N/A | N/A | 12/19/16 | 12/21/16 |
| N/A | N/A | 12/22/16 | 12/23/16 |
| N/A | N/A | 12/26/16 | 12/27/16 |
| N/A | N/A | 12/01/16 | 12/02/16 |
| N/A | N/A | 12/02/16 | 12/02/16 |

| | | | |
|---|---|---|---|
| N/A | N/A | 12/05/16 | 12/07/16 |
| N/A | N/A | 12/05/16 | 12/07/16 |
| N/A | N/A | 12/20/16 | 12/23/16 |
| N/A | N/A | 12/26/16 | 12/29/16 |
| N/A | N/A | 12/01/16 | 12/02/16 |
| N/A | N/A | 12/05/16 | 12/09/16 |
| N/A | N/A | 12/14/16 | 12/23/16 |
| N/A | N/A | 12/26/16 | 12/29/16 |
| N/A | N/A | 12/06/16 | 12/06/16 |
| N/A | N/A | 12/19/16 | 12/24/16 |
| N/A | N/A | 12/27/16 | 12/29/16 |
| N/A | N/A | 12/30/16 | 12/31/16 |
| N/A | N/A | 12/14/16 | 12/16/16 |
| N/A | N/A | 12/26/16 | 12/30/16 |
| N/A | N/A | 12/01/16 | 12/02/16 |
| N/A | N/A | 01/06/17 | 01/06/17 |
| N/A | N/A | 01/09/17 | 01/13/17 |
| N/A | N/A | 01/12/17 | 01/17/17 |
| N/A | N/A | 01/18/17 | 01/21/17 |
| N/A | N/A | 01/23/17 | 01/28/17 |
| N/A | N/A | 01/01/17 | 01/05/17 |
| N/A | N/A | 01/16/17 | 01/17/17 |
| N/A | N/A | 01/23/17 | 01/27/17 |
| N/A | N/A | 01/30/17 | 01/31/17 |
| N/A | N/A | 01/02/17 | 01/06/17 |
| N/A | N/A | 01/09/17 | 01/09/17 |
| N/A | N/A | 01/24/17 | 01/27/17 |
| N/A | N/A | 01/28/17 | 01/31/17 |
| N/A | N/A | 01/02/17 | 01/06/17 |
| N/A | N/A | 01/09/17 | 01/11/17 |
| N/A | N/A | 01/09/17 | 01/13/17 |
| N/A | N/A | 01/16/17 | 01/19/17 |
| N/A | N/A | 01/01/17 | 01/02/17 |
| N/A | N/A | 01/04/17 | 01/07/17 |
| N/A | N/A | 01/09/17 | 01/14/17 |
| N/A | N/A | 01/16/17 | 01/18/17 |
| N/A | N/A | 01/19/17 | 01/20/17 |
| N/A | N/A | 01/23/17 | 01/27/17 |
| N/A | N/A | 01/30/17 | 01/31/17 |
| N/A | N/A | 01/16/17 | 01/20/17 |
| N/A | N/A | 01/24/17 | 01/27/17 |
| N/A | N/A | 02/01/17 | 02/03/17 |
| N/A | N/A | 02/01/17 | 02/02/17 |
| N/A | N/A | 02/03/17 | 02/04/17 |
| N/A | N/A | 02/06/17 | 02/11/17 |
| N/A | N/A | 02/13/17 | 02/17/17 |
| N/A | N/A | 02/20/17 | 02/24/17 |
| N/A | N/A | 02/10/17 | 02/10/17 |
| N/A | N/A | 02/13/17 | 02/14/17 |
| N/A | N/A | 02/19/17 | 02/22/17 |
| N/A | N/A | 02/23/17 | 02/25/17 |
| N/A | N/A | 02/26/17 | 02/28/17 |
| N/A | N/A | 03/27/17 | 03/30/17 |
| N/A | N/A | 03/31/17 | 03/31/17 |
| N/A | N/A | 03/01/17 | 03/02/17 |

| | | | |
|---|---|---|---|
| N/A | N/A | 03/01/17 | 03/01/17 |
| N/A | N/A | 03/01/17 | 03/04/17 |
| N/A | N/A | 03/13/17 | 03/16/17 |
| N/A | N/A | 03/20/17 | 03/24/17 |
| N/A | N/A | 03/05/17 | 03/14/17 |
| N/A | N/A | 03/15/17 | 03/24/17 |
| N/A | N/A | 03/17/17 | 03/21/17 |
| N/A | N/A | 03/22/17 | 03/26/17 |
| N/A | N/A | 03/23/17 | 03/31/17 |
| N/A | N/A | 03/01/17 | 03/01/17 |
| N/A | N/A | 03/27/17 | 03/31/17 |
| N/A | N/A | 03/06/17 | 03/09/17 |
| N/A | N/A | 03/10/17 | 03/10/17 |
| N/A | N/A | 03/13/17 | 03/17/17 |
| N/A | N/A | 03/20/17 | 03/24/17 |
| N/A | N/A | 03/27/17 | 03/31/17 |
| N/A | N/A | 04/21/17 | 04/21/17 |
| N/A | N/A | 04/24/17 | 04/29/17 |
| N/A | N/A | 04/28/17 | 04/28/17 |
| N/A | N/A | 04/21/17 | 04/24/17 |
| N/A | N/A | 04/25/17 | 04/27/17 |
| N/A | N/A | 04/28/17 | 04/30/17 |
| N/A | N/A | 04/01/17 | 04/01/17 |
| N/A | N/A | 04/03/17 | 04/08/17 |
| N/A | N/A | 04/10/17 | 04/12/17 |
| N/A | N/A | 04/13/17 | 04/14/17 |
| N/A | N/A | 04/17/17 | 04/21/17 |
| N/A | N/A | 04/24/17 | 04/28/17 |
| N/A | N/A | 04/25/17 | 04/27/17 |
| N/A | N/A | 04/28/17 | 04/30/17 |
| N/A | N/A | 04/01/17 | 04/01/17 |
| N/A | N/A | 04/03/17 | 04/08/17 |
| N/A | N/A | 04/10/17 | 04/15/17 |
| N/A | N/A | 04/17/17 | 04/21/17 |
| N/A | N/A | 04/03/17 | 04/07/17 |
| N/A | N/A | 04/10/17 | 04/14/17 |
| N/A | N/A | 04/17/17 | 04/21/17 |
| N/A | N/A | 04/24/17 | 04/28/17 |
| N/A | N/A | 04/04/17 | 04/06/17 |
| N/A | N/A | 04/09/17 | 04/12/17 |
| N/A | N/A | 04/13/17 | 04/15/17 |
| 05/12/17 | 6508710555 | 05/02/17 | 05/02/17 |
| 05/24/17 | 6528269764 | 05/16/17 | 05/17/17 |
| 05/26/17 | 6532780987 | 05/01/17 | 05/04/17 |
| 08/18/17 | 3313005590 | 05/26/17 | 05/26/17 |
| 07/04/17 | 8088248109 | 05/31/17 | 05/31/17 |
| 05/22/17 | 6522612886 | 05/08/17 | 05/08/17 |
| 08/18/17 | 3313005443 | 05/08/17 | 05/13/17 |
| 08/18/17 | 3313005478 | 05/15/17 | 05/20/17 |
| 12/04/17 | 3325491858 | 05/15/17 | 05/20/17 |
| 05/24/17 | 6528269763 | 05/16/17 | 05/21/17 |
| 05/26/17 | 6532780990 | 05/15/17 | 05/20/17 |
| 02/16/18 | 3334574612 | 05/06/17 | 05/06/17 |
| 02/16/18 | 3334575072 | 05/07/17 | 05/07/17 |
| 08/18/17 | 3313005295 | 05/18/17 | 05/19/17 |

| | | | |
|---|---|---|---|
| 06/05/17 | 6528269762 | 05/16/17 | 05/20/17 |
| 09/13/17 | 8153033332 | 05/30/17 | 05/31/17 |
| 05/30/17 | 6518283428 | 05/01/17 | 05/02/17 |
| 08/18/17 | 3313005693 | 05/29/17 | 05/31/17 |
| 06/30/17 | 8092410151 | 05/04/17 | 05/06/17 |
| 08/18/17 | 3313005328 | 05/15/17 | 05/17/17 |
| 05/10/17 | 6504367057 | 05/01/17 | 05/04/17 |
| 08/18/17 | 3313005538 | 05/22/17 | 05/25/17 |
| 05/21/17 | 6522612942 | 05/12/17 | 05/14/17 |
| 05/25/17 | 6530521640 | 05/19/17 | 05/21/17 |
| 07/04/17 | 8088248119 | 05/28/17 | 05/30/17 |
| 06/13/17 | 6506320715 | 05/01/17 | 05/03/17 |
| 06/12/17 | 6541266374 | 05/22/17 | 05/24/17 |
| 06/12/17 | 6541266372 | 05/25/17 | 05/27/17 |
| 05/13/17 | 6510974060 | 05/03/17 | 05/06/17 |
| 05/12/17 | 6508710548 | 05/01/17 | 05/05/17 |
| 05/17/17 | 6516237425 | 05/08/17 | 05/12/17 |
| 05/24/17 | 6528269645 | 05/15/17 | 05/19/17 |
| 05/11/17 | 6506320604 | 05/01/17 | 05/05/17 |
| 09/14/17 | 8154282603 | 05/27/17 | 05/29/17 |
| 06/12/17 | 6528269767 | 05/19/17 | 05/21/17 |
| 07/06/17 | 8098712843 | 05/01/17 | 05/04/17 |
| 07/14/17 | 8104767842 | 05/08/17 | 05/11/17 |
| 02/16/18 | 3334575310 | 05/12/17 | 05/15/17 |
| 05/21/17 | 6522612944 | 05/08/17 | 05/11/17 |
| 05/25/17 | 6530521641 | 05/15/17 | 05/18/17 |
| 06/19/17 | 6551410904 | 05/28/17 | 05/31/17 |
| 11/03/17 | 3311771795 | 05/23/17 | 05/26/17 |
| 05/11/17 | 6506320723 | 05/04/17 | 05/07/17 |
| 06/05/17 | 6528269761 | 05/15/17 | 05/18/17 |
| 08/18/17 | 3313005214 | 05/08/17 | 05/13/17 |
| 06/21/17 | 6577187180 | 06/12/17 | 06/12/17 |
| 06/28/17 | 6588671641 | 06/23/17 | 06/23/17 |
| 06/22/17 | 6579210802 | 06/12/17 | 06/12/17 |
| 06/28/17 | 6588671637 | 06/19/17 | 06/19/17 |
| 07/07/17 | 6603697836 | 06/26/17 | 06/26/17 |
| 07/05/17 | 6600090636 | 06/28/17 | 06/30/17 |
| 12/05/17 | 3325510424 | 06/19/17 | 06/23/17 |
| 12/27/17 | 3325510475 | 06/26/17 | 06/30/17 |
| 07/28/17 | 6624964773 | 06/30/17 | 06/30/17 |
| 03/06/19 | 7668036298 | 06/30/17 | 06/30/17 |
| 12/20/17 | 3327406709 | 06/12/17 | 06/13/17 |
| 08/18/17 | 3313005741 | 06/01/17 | 06/02/17 |
| 07/05/17 | 6600090638 | 06/26/17 | 06/27/17 |
| 07/04/17 | 8088248110 | 06/01/17 | 06/02/17 |
| 08/23/17 | 8137720807 | 06/21/17 | 06/22/17 |
| 06/30/17 | 6577187178 | 06/14/17 | 06/16/17 |
| 10/18/17 | 3320646274 | 06/19/17 | 06/20/17 |
| 09/17/17 | 3316563331 | 06/08/17 | 06/10/17 |
| 06/28/17 | 6588671640 | 06/19/17 | 06/22/17 |
| 06/29/17 | 6588671638 | 06/20/17 | 06/23/17 |
| 08/25/17 | 8138522317 | 06/27/17 | 06/30/17 |
| 07/10/17 | 6593375563 | 06/23/17 | 06/25/17 |
| 09/06/17 | 3315348724 | 06/05/17 | 06/07/17 |
| 06/14/17 | 6564153778 | 06/05/17 | 06/09/17 |

| | | | |
|---|---|---|---|
| 07/07/17 | 6593375562 | 06/20/17 | 06/22/17 |
| 07/27/17 | 6624964777 | 06/25/17 | 06/27/17 |
| 07/27/17 | 6624964778 | 06/28/17 | 06/30/17 |
| 09/06/17 | 3315349025 | 06/01/17 | 06/04/17 |
| 06/19/17 | 6551410902 | 06/01/17 | 06/04/17 |
| 07/04/17 | 8088248112 | 06/05/17 | 06/10/17 |
| 06/22/17 | 6579210803 | 06/13/17 | 06/17/17 |
| 09/07/17 | 3315380738 | 06/15/17 | 06/18/17 |
| 07/04/17 | 8088248124 | 06/12/17 | 06/17/17 |
| 06/22/17 | 6579210805 | 06/05/17 | 06/10/17 |
| 08/29/17 | 8141858500 | 07/01/17 | 07/01/17 |
| 01/27/18 | 6954589744 | 07/03/17 | 07/07/17 |
| 12/26/17 | 3328012682 | 07/10/17 | 07/14/17 |
| 08/15/17 | 6653671750 | 07/12/17 | 07/13/17 |
| 08/17/17 | 6661637308 | 07/28/17 | 07/28/17 |
| 03/06/19 | 7668036299 | 07/01/17 | 07/01/17 |
| 10/02/17 | 8168647798 | 07/27/17 | 07/27/17 |
| 08/15/17 | 6668941587 | 07/21/17 | 07/24/17 |
| 08/14/17 | 6659859235 | 07/29/17 | 07/31/17 |
| 12/01/17 | 3324957983 | 07/30/17 | 07/31/17 |
| 10/05/17 | 8170653756 | 07/20/17 | 07/22/17 |
| 09/22/17 | 8158988520 | 07/08/17 | 07/10/17 |
| 10/07/17 | 8162100180 | 07/16/17 | 07/21/17 |
| 08/09/17 | 6649219249 | 07/17/17 | 07/21/17 |
| 08/02/17 | 6634384087 | 07/20/17 | 07/22/17 |
| 07/12/17 | 6611384072 | 07/03/17 | 07/07/17 |
| 08/02/17 | 6634384086 | 07/16/17 | 07/19/17 |
| 09/29/17 | 8164429521 | 07/22/17 | 07/26/17 |
| 12/01/17 | 3324957828 | 07/24/17 | 07/29/17 |
| 08/21/17 | 6653671751 | 07/14/17 | 07/20/17 |
| 08/01/17 | 6634384090 | 07/16/17 | 07/22/17 |
| 09/13/17 | 8153034773 | 07/08/17 | 07/13/17 |
| 07/28/17 | 6636559807 | 07/14/17 | 07/20/17 |
| 09/06/17 | 8148294541 | 07/02/17 | 07/07/17 |
| 03/03/18 | 6940657290 | 07/10/17 | 07/15/17 |
| 08/31/17 | 055823722 | 08/15/17 | 08/17/17 |
| 01/27/18 | 6954579784 | 08/07/17 | 08/09/17 |
| 08/14/17 | 6659859236 | 08/01/17 | 08/01/17 |
| 08/17/17 | 6663351484 | 08/01/17 | 08/01/17 |
| 11/13/17 | 3323103186 | 08/07/17 | 08/08/17 |
| 09/16/17 | 6707306646 | 08/30/17 | 08/31/17 |
| 08/21/17 | 6668941589 | 08/06/17 | 08/08/17 |
| 08/24/17 | 6673292431 | 08/01/17 | 08/03/17 |
| 08/31/17 | 6697202570 | 08/14/17 | 08/17/17 |
| 08/31/17 | 6697202567 | 08/14/17 | 08/17/17 |
| 10/27/17 | 8185224236 | 08/28/17 | 08/31/17 |
| 08/31/17 | 055823766 | 08/15/17 | 08/17/17 |
| 08/21/17 | 6668941588 | 08/02/17 | 08/05/17 |
| 02/19/18 | 6961040202 | 08/25/17 | 08/28/17 |
| 10/18/17 | 8179818714 | 08/21/17 | 08/26/17 |
| 09/01/17 | 055828688 | 08/18/17 | 08/22/17 |
| 10/10/17 | 8173671046 | 08/02/17 | 08/06/17 |
| 09/13/17 | 055872287 | 08/23/17 | 08/28/17 |
| 03/02/18 | 6999580681 | 09/19/17 | 09/24/17 |
| 10/10/17 | 6753915799 | 09/26/17 | 09/30/17 |

| | | | |
|---|---|---|---|
| 09/27/17 | 6728855275 | 09/09/17 | 09/13/17 |
| 02/13/18 | 6958618332 | 09/15/17 | 09/18/17 |
| 02/28/18 | 6958618336 | 09/21/17 | 09/24/17 |
| 09/27/17 | 6742842121 | 09/18/17 | 09/22/17 |
| 09/28/17 | 055932376 | 09/11/17 | 09/15/17 |
| 10/09/17 | 055969700 | 09/18/17 | 09/22/17 |
| 09/16/17 | 6707306648 | 09/02/17 | 09/04/17 |
| 09/20/17 | 6728855278 | 09/06/17 | 09/08/17 |
| 11/16/17 | 8191468786 | 09/28/17 | 09/30/17 |
| 02/28/18 | 6958618335 | 09/18/17 | 09/20/17 |
| 09/19/17 | 055892508 | 09/04/17 | 09/08/17 |
| 09/29/17 | 6745437130 | 09/18/17 | 09/21/17 |
| 11/15/17 | 8200681198 | 09/20/17 | 09/23/17 |
| 09/28/17 | 6742842123 | 09/13/17 | 09/15/17 |
| 12/01/17 | 6856149312 | 09/20/17 | 09/22/17 |
| 09/20/17 | 6728855279 | 09/09/17 | 09/10/17 |
| 09/22/17 | 6721289773 | 09/06/17 | 09/08/17 |
| 10/04/17 | 6753915735 | 09/14/17 | 09/15/17 |
| 09/28/17 | 6742842124 | 09/18/17 | 09/19/17 |
| 11/11/17 | 8193053236 | 09/01/17 | 09/01/17 |
| 09/20/17 | 6728855276 | 09/05/17 | 09/05/17 |
| 09/20/17 | 6728855207 | 09/14/17 | 09/14/17 |
| 09/29/17 | 6745437128 | 09/16/17 | 09/16/17 |
| 09/27/17 | 6742842119 | 09/16/17 | 09/16/17 |
| 09/19/17 | 055892509 | 09/02/17 | 09/02/17 |
| 10/09/17 | 055969701 | 09/16/17 | 09/16/17 |
| 09/07/17 | 6707306550 | 09/01/17 | 09/01/17 |
| 09/25/17 | 6735060600 | 09/11/17 | 09/11/17 |
| 12/11/17 | 8219456312 | 10/06/17 | 10/12/17 |
| 11/16/17 | 8191468790 | 10/09/17 | 10/14/17 |
| 11/16/17 | 8191468789 | 10/04/17 | 10/08/17 |
| 11/16/17 | 8191468792 | 10/15/17 | 10/19/17 |
| 11/10/17 | 6805600877 | 10/24/17 | 10/28/17 |
| 11/14/17 | 6805600872 | 10/20/17 | 10/24/17 |
| 10/24/17 | 6770627531 | 10/02/17 | 10/07/17 |
| 02/14/18 | 6958618338 | 10/12/17 | 10/15/17 |
| 11/06/17 | 6792424337 | 10/19/17 | 10/22/17 |
| 11/08/17 | 6805600875 | 10/26/17 | 10/29/17 |
| 12/12/17 | 8220316732 | 10/13/17 | 10/16/17 |
| 11/16/17 | 8191468784 | 10/01/17 | 10/03/17 |
| 11/08/17 | 6805600874 | 10/23/17 | 10/25/17 |
| 10/18/17 | 6780560851 | 10/11/17 | 10/14/17 |
| 02/07/18 | 8275417526 | 10/23/17 | 10/26/17 |
| 10/30/17 | 6782761591 | 10/09/17 | 10/12/17 |
| 11/04/17 | 6807768733 | 10/16/17 | 10/19/17 |
| 11/24/17 | 6818314154 | 10/29/17 | 10/31/17 |
| 11/01/17 | 6792424335 | 10/17/17 | 10/19/17 |
| 12/29/17 | 3328579720 | 10/18/17 | 10/20/17 |
| 11/04/17 | 6807768735 | 10/20/17 | 10/23/17 |
| 03/01/18 | 3336318514 | 10/22/17 | 10/23/17 |
| 11/14/17 | 6815780591 | 10/30/17 | 10/31/17 |
| 10/26/17 | 6794673151 | 10/16/17 | 10/17/17 |
| 02/07/18 | 8275417494 | 10/27/17 | 10/28/17 |
| 01/03/18 | 3329167246 | 10/13/17 | 10/14/17 |
| 11/09/17 | 6818314065 | 10/30/17 | 10/31/17 |

| | | | |
|---|---|---|---|
| 11/04/17 | 6807768736 | 10/24/17 | 10/25/17 |
| 10/11/17 | 6753915801 | 10/01/17 | 10/01/17 |
| 12/29/17 | 3328579755 | 10/21/17 | 10/21/17 |
| 11/20/17 | 6823003708 | 11/01/17 | 11/07/17 |
| 11/30/17 | 6844209290 | 11/13/17 | 11/19/17 |
| 12/14/17 | 6856149416 | 11/20/17 | 11/26/17 |
| 12/18/17 | 8215485739 | 11/06/17 | 11/11/17 |
| 11/20/17 | 6818314157 | 11/01/17 | 11/05/17 |
| 02/01/18 | 8270295571 | 11/23/17 | 11/27/17 |
| 11/14/17 | 6818314152 | 11/01/17 | 11/05/17 |
| 12/18/17 | 8215485743 | 11/15/17 | 11/19/17 |
| 07/03/18 | 8379215271 | 11/13/17 | 11/18/17 |
| 12/12/17 | 6866812554 | 11/27/17 | 11/30/17 |
| 01/09/18 | 6856149418 | 11/20/17 | 11/21/17 |
| 01/09/18 | 6863859736 | 11/26/17 | 11/28/17 |
| 03/06/18 | 3336916674 | 11/26/17 | 11/28/17 |
| 12/08/17 | 6847757667 | 11/19/17 | 11/21/17 |
| 01/17/18 | 8248175914 | 11/20/17 | 11/24/17 |
| 02/22/18 | 8286010620 | 11/22/17 | 11/25/17 |
| 11/16/17 | 6833391892 | 11/06/17 | 11/09/17 |
| 11/23/17 | 6844209213 | 11/13/17 | 11/16/17 |
| 12/07/17 | 6831525553 | 11/10/17 | 11/12/17 |
| 11/22/17 | 6844209291 | 11/12/17 | 11/14/17 |
| 02/01/18 | 8261136111 | 11/27/17 | 11/30/17 |
| 12/11/17 | 6831525552 | 11/08/17 | 11/09/17 |
| 01/09/18 | 8215485745 | 11/20/17 | 11/21/17 |
| 11/24/17 | 6831525480 | 11/10/17 | 11/11/17 |
| 02/21/18 | 8285456755 | 11/20/17 | 11/21/17 |
| 12/27/17 | 8230295200 | 11/01/17 | 11/02/17 |
| 12/27/17 | 8230295201 | 11/03/17 | 11/04/17 |
| 01/04/18 | 8237749001 | 11/10/17 | 11/11/17 |
| 01/24/18 | 8261144626 | 11/22/17 | 11/22/17 |
| 01/10/18 | 8242383559 | 11/17/17 | 11/17/17 |
| 03/19/18 | 8309920720 | 12/01/17 | 12/07/17 |
| 01/05/18 | 6881501385 | 12/01/17 | 12/07/17 |
| 02/28/18 | 8288933392 | 12/08/17 | 12/12/17 |
| 03/02/18 | 8292125442 | 12/13/17 | 12/17/17 |
| 03/19/18 | 8309920722 | 12/11/17 | 12/15/17 |
| 12/27/17 | 6892208127 | 12/11/17 | 12/15/17 |
| 03/07/18 | 8286009332 | 12/19/17 | 12/23/17 |
| 12/19/17 | 6879062403 | 12/04/17 | 12/07/17 |
| 12/13/17 | 6879062313 | 12/04/17 | 12/08/17 |
| 12/20/17 | 6892208129 | 12/11/17 | 12/15/17 |
| 02/05/18 | 8273407437 | 12/01/17 | 12/03/17 |
| 02/15/18 | 8281126590 | 12/21/17 | 12/23/17 |
| 01/02/18 | 6909166847 | 12/20/17 | 12/22/17 |
| 12/27/17 | 6892208205 | 12/08/17 | 12/09/17 |
| 03/13/18 | 8305235668 | 12/29/17 | 12/30/17 |
| 02/22/18 | 8286009360 | 12/16/17 | 12/18/17 |
| 03/23/18 | 8313697018 | 12/18/17 | 12/20/17 |
| 12/07/17 | 6869063667 | 12/01/17 | 12/01/17 |
| 03/28/18 | 8317076986 | 01/14/18 | 01/20/18 |
| 02/12/18 | 6961040212 | 01/22/18 | 01/27/18 |
| 01/29/18 | 6938463440 | 01/08/18 | 01/13/18 |
| 01/24/18 | 6938463441 | 01/09/18 | 01/13/18 |

| | | | |
|---|---|---|---|
| 02/12/18 | 6961040210 | 01/25/18 | 01/28/18 |
| 03/23/18 | 7044449001 | 01/22/18 | 01/25/18 |
| 01/23/18 | 6929399816 | 01/04/18 | 01/07/18 |
| 02/06/18 | 6938463438 | 01/12/18 | 01/15/18 |
| 02/09/18 | 6948695352 | 01/18/18 | 01/21/18 |
| 01/31/18 | 6946413396 | 01/14/18 | 01/17/18 |
| 02/02/18 | 6953347887 | 01/19/18 | 01/22/18 |
| 02/06/18 | 6938463437 | 01/09/18 | 01/11/18 |
| 01/24/18 | 6929399817 | 01/03/18 | 01/05/18 |
| 01/24/18 | 6929399818 | 01/06/18 | 01/08/18 |
| 02/15/18 | 6975366929 | 01/29/18 | 01/31/18 |
| 03/23/18 | 7044449002 | 01/19/18 | 01/21/18 |
| 01/23/18 | 6929399814 | 01/01/18 | 01/03/18 |
| 03/13/18 | 8305266596 | 01/15/18 | 01/19/18 |
| 04/04/18 | 3341031014 | 01/22/18 | 01/26/18 |
| 03/19/18 | 3338679733 | 01/08/18 | 01/12/18 |
| 03/19/18 | 3338679844 | 01/15/18 | 01/19/18 |
| 03/19/18 | 3338680056 | 01/22/18 | 01/26/18 |
| 02/13/18 | 6950949795 | 01/15/18 | 01/19/18 |
| 03/29/18 | 8317562555 | 01/22/18 | 01/26/18 |
| 02/19/18 | 6966007812 | 01/25/18 | 01/29/18 |
| 01/19/18 | 6929399755 | 01/01/18 | 01/06/18 |
| 02/07/18 | 6961040209 | 01/26/18 | 01/28/18 |
| 02/14/18 | 6975366927 | 01/29/18 | 01/31/18 |
| 02/23/18 | 6992159993 | 02/06/18 | 02/09/18 |
| 01/11/18 | 6927082020 | 01/04/18 | 01/06/18 |
| 02/28/18 | 6990075683 | 01/30/18 | 01/31/18 |
| 02/22/18 | 6975366931 | 01/30/18 | 01/31/18 |
| 03/29/18 | 3340421834 | 01/29/18 | 01/31/18 |
| 02/12/18 | 6948695351 | 01/16/18 | 01/17/18 |
| 02/14/18 | 6975366934 | 01/28/18 | 01/29/18 |
| 01/19/18 | 6940657231 | 01/08/18 | 01/09/18 |
| 02/27/18 | 6979896161 | 01/29/18 | 01/30/18 |
| 02/07/18 | 6961040211 | 01/21/18 | 01/21/18 |
| 04/19/18 | 3342857654 | 01/31/18 | 01/31/18 |
| 01/31/18 | 6948695353 | 01/18/18 | 01/18/18 |
| 02/07/18 | 6975366847 | 01/31/18 | 01/31/18 |
| 02/01/18 | 6948695288 | 01/13/18 | 01/13/18 |
| 03/19/18 | 3338680152 | 01/29/18 | 01/29/18 |
| 02/22/18 | 6992160070 | 02/07/18 | 02/13/18 |
| 02/27/18 | 6994276586 | 02/09/18 | 02/14/18 |
| 03/08/18 | 7017394306 | 02/19/18 | 02/24/18 |
| 02/28/18 | 7002147522 | 02/13/18 | 02/18/18 |
| 02/15/18 | 6979896246 | 02/01/18 | 02/06/18 |
| 03/07/18 | 6992160074 | 02/08/18 | 02/13/18 |
| 02/22/18 | 6990075687 | 02/03/18 | 02/07/18 |
| 02/22/18 | 6990075688 | 02/08/18 | 02/12/18 |
| 02/16/18 | 6992159994 | 02/05/18 | 02/10/18 |
| 02/22/18 | 7002147446 | 02/12/18 | 02/17/18 |
| 02/22/18 | 7002147445 | 02/12/18 | 02/17/18 |
| 02/26/18 | 6990075684 | 02/01/18 | 02/04/18 |
| 02/22/18 | 6990075685 | 02/05/18 | 02/08/18 |
| 03/30/18 | 7002147444 | 02/14/18 | 02/19/18 |
| 02/28/18 | 6999580682 | 02/15/18 | 02/18/18 |
| 02/19/18 | 6975366928 | 02/01/18 | 02/04/18 |

| | | | |
|---|---|---|---|
| 03/07/18 | 7014955788 | 02/23/18 | 02/25/18 |
| 03/15/18 | 7025347789 | 02/26/18 | 02/28/18 |
| 02/22/18 | 6975366933 | 02/02/18 | 02/04/18 |
| 03/06/18 | 6992160075 | 02/05/18 | 02/07/18 |
| 03/12/18 | 6999580616 | 02/12/18 | 02/16/18 |
| 03/22/18 | 7022906793 | 02/19/18 | 02/23/18 |
| 03/30/18 | 6992159991 | 02/09/18 | 02/13/18 |
| 03/12/18 | 7017394307 | 02/25/18 | 02/27/18 |
| 02/28/18 | 7002147519 | 02/14/18 | 02/16/18 |
| 02/22/18 | 6992160071 | 02/05/18 | 02/07/18 |
| 03/07/18 | 6992159990 | 02/06/18 | 02/09/18 |
| 02/23/18 | 6992159993 | 02/06/18 | 02/09/18 |
| 02/07/18 | 6975366848 | 02/01/18 | 02/03/18 |
| 02/16/18 | 6992159992 | 02/08/18 | 02/10/18 |
| 03/05/18 | 7019815979 | 02/19/18 | 02/21/18 |
| 03/30/18 | 7019815978 | 02/20/18 | 02/22/18 |
| 03/14/18 | 7025347794 | 02/27/18 | 02/28/18 |
| 02/14/18 | 6975366930 | 02/01/18 | 02/02/18 |
| 03/27/18 | 7027965348 | 02/26/18 | 02/28/18 |
| 02/27/18 | 6999580617 | 02/12/18 | 02/14/18 |
| 02/22/18 | 6975366932 | 02/01/18 | 02/01/18 |
| 03/30/18 | 7057057268 | 03/11/18 | 03/17/18 |
| 03/21/18 | 7040322229 | 03/05/18 | 03/10/18 |
| 04/14/18 | 7053013572 | 03/13/18 | 03/18/18 |
| 03/26/18 | 7027965440 | 03/01/18 | 03/05/18 |
| 03/21/18 | 7038037213 | 03/02/18 | 03/06/18 |
| 04/06/18 | 7053013654 | 03/08/18 | 03/12/18 |
| 03/14/18 | 7025347795 | 03/01/18 | 03/04/18 |
| 05/16/18 | 7129699847 | 03/28/18 | 03/31/18 |
| 03/21/18 | 7038037214 | 03/07/18 | 03/10/18 |
| 03/31/18 | 7035752517 | 03/06/18 | 03/07/18 |
| 04/02/18 | 7040322175 | 03/02/18 | 03/06/18 |
| 03/28/18 | 7050684072 | 03/11/18 | 03/12/18 |
| 03/16/18 | 7025347790 | 03/01/18 | 03/01/18 |
| 05/10/18 | 8357354763 | 03/07/18 | 03/07/18 |
| 03/29/18 | 7065297874 | 03/21/18 | 03/22/18 |
| 05/08/18 | 7114940278 | 04/23/18 | 04/23/18 |
| 05/22/18 | 7135287622 | 04/30/18 | 04/30/18 |
| 08/24/18 | 7304166218 | 04/30/18 | 04/30/18 |
| 05/17/18 | 7135286882 | 04/30/18 | 04/30/18 |
| 08/29/18 | 7308375058 | 04/01/18 | 04/01/18 |
| 04/25/18 | 8336580527 | 04/02/18 | 04/02/18 |
| 04/27/18 | 7100490371 | 04/12/18 | 04/13/18 |
| 05/01/18 | 7110298323 | 04/17/18 | 04/18/18 |
| 05/11/18 | 7122536926 | 04/22/18 | 04/23/18 |
| 04/27/18 | 7102800633 | 04/09/18 | 04/12/18 |
| 05/22/18 | 7137443953 | 04/28/18 | 04/30/18 |
| 04/26/18 | 8336580529 | 04/03/18 | 04/05/18 |
| 04/20/18 | 7089671765 | 04/02/18 | 04/06/18 |
| 05/08/18 | 7114940277 | 04/16/18 | 04/20/18 |
| 05/10/18 | 7122536916 | 04/26/18 | 04/29/18 |
| 04/24/18 | 7098171621 | 04/06/18 | 04/09/18 |
| 04/24/18 | 7098171622 | 04/10/18 | 04/13/18 |
| 05/08/18 | 7122537300 | 04/26/18 | 04/29/18 |
| 05/10/18 | 7122536896 | 04/21/18 | 04/25/18 |

| | | | |
|---|---|---|---|
| 05/11/18 | 7127400466 | 04/25/18 | 04/30/18 |
| 05/10/18 | 7122500874 | 04/15/18 | 04/20/18 |
| 04/25/18 | 7100490375 | 04/11/18 | 04/16/18 |
| 05/31/18 | 7162321400 | 05/14/18 | 05/14/18 |
| 05/21/18 | 7135287619 | 05/04/18 | 05/05/18 |
| 05/22/18 | 7147572377 | 05/07/18 | 05/08/18 |
| 08/03/18 | 8418907344 | 05/04/18 | 05/05/18 |
| 05/16/18 | 7135286827 | 05/01/18 | 05/03/18 |
| 08/02/18 | 8418907336 | 05/01/18 | 05/03/18 |
| 06/12/18 | 7194275523 | 06/06/18 | 06/08/18 |
| 06/14/18 | 7182944213 | 05/29/18 | 05/31/18 |
| 05/25/18 | 7137443922 | 05/01/18 | 05/04/18 |
| 06/12/18 | 7172811051 | 05/20/18 | 05/23/18 |
| 06/12/18 | 7172810276 | 05/19/18 | 05/23/18 |
| 05/29/18 | 7147566393 | 05/06/18 | 05/11/18 |
| 05/22/18 | 7135287628 | 05/01/18 | 05/06/18 |
| 05/25/18 | 7147566546 | 05/07/18 | 05/12/18 |
| 05/16/18 | 7137428955 | 05/01/18 | 05/06/18 |
| 06/05/18 | 7159926079 | 05/12/18 | 05/18/18 |
| 05/25/18 | 7159926813 | 05/13/18 | 05/19/18 |
| 05/23/18 | 7147566348 | 05/07/18 | 05/13/18 |
| 07/05/18 | 7219436300 | 06/17/18 | 06/23/18 |
| 06/25/18 | 7206757021 | 06/11/18 | 06/16/18 |
| 06/14/18 | 7187528342 | 06/01/18 | 06/05/18 |
| 09/04/18 | 8451199420 | 06/26/18 | 06/30/18 |
| 06/20/18 | 7194894258 | 06/06/18 | 06/10/18 |
| 06/20/18 | 7194894265 | 06/06/18 | 06/10/18 |
| 06/18/18 | 7188269966 | 06/02/18 | 06/05/18 |
| 08/09/18 | 8431016178 | 06/21/18 | 06/24/18 |
| 07/11/18 | 7232841729 | 06/21/18 | 06/24/18 |
| 06/27/18 | 7206755726 | 06/11/18 | 06/14/18 |
| 06/12/18 | 7194275523 | 06/06/18 | 06/08/18 |
| 07/11/18 | 7232841719 | 06/15/18 | 06/17/18 |
| 07/11/18 | 7232841722 | 06/18/18 | 06/20/18 |
| 09/03/18 | 8451188291 | 06/29/18 | 06/30/18 |
| 07/12/18 | 7231857379 | 06/24/18 | 06/25/18 |
| 07/05/18 | 8402437495 | 06/07/18 | 06/08/18 |
| 12/17/18 | 7526406414 | 06/30/18 | 06/30/18 |
| 08/24/18 | 7320280168 | 06/25/18 | 06/25/18 |
| 07/17/18 | 7243139016 | 06/30/18 | 06/30/18 |
| 07/04/18 | 7231851420 | 06/29/18 | 06/29/18 |
| 08/03/18 | 7283153431 | 07/01/18 | 07/01/18 |
| 08/03/18 | 7283153402 | 07/02/18 | 07/08/18 |
| 08/03/18 | 7283152947 | 07/09/18 | 07/15/18 |
| 11/16/18 | 8466263734 | 07/31/18 | 07/31/18 |
| 08/29/18 | 7314086498 | 07/21/18 | 07/21/18 |
| 07/18/18 | 7253720470 | 07/07/18 | 07/07/18 |
| 07/19/18 | 7236106752 | 07/01/18 | 07/01/18 |
| 09/21/18 | 8465079793 | 07/23/18 | 07/23/18 |
| 09/11/18 | 8457399319 | 07/16/18 | 07/16/18 |
| 08/13/18 | 7296358845 | 07/30/18 | 07/31/18 |
| 09/19/18 | 7363939216 | 07/06/18 | 07/07/18 |
| 09/19/18 | 7363939203 | 07/30/18 | 07/31/18 |
| 08/29/18 | 7314105155 | 07/30/18 | 07/31/18 |
| 07/25/18 | 7265427249 | 07/16/18 | 07/17/18 |

| | | | |
|---|---|---|---|
| 07/18/18 | 7254240699 | 07/07/18 | 07/08/18 |
| 07/25/18 | 7265427250 | 07/18/18 | 07/20/18 |
| 07/17/18 | 7235850966 | 07/01/18 | 07/02/18 |
| 08/08/18 | 7280620486 | 07/25/18 | 07/27/18 |
| 09/19/18 | 7362294095 | 07/02/18 | 07/05/18 |
| 07/11/18 | 7242225045 | 07/02/18 | 07/06/18 |
| 07/18/18 | 7253720500 | 07/09/18 | 07/13/18 |
| 07/25/18 | 7265427248 | 07/16/18 | 07/20/18 |
| 08/01/18 | 7277110051 | 07/23/18 | 07/27/18 |
| 09/10/18 | 8456514118 | 07/10/18 | 07/12/18 |
| 07/24/18 | 7254862727 | 07/12/18 | 07/15/18 |
| 09/19/18 | 7363939212 | 07/09/18 | 07/14/18 |
| 09/19/18 | 7363939230 | 07/16/18 | 07/21/18 |
| 09/19/18 | 7363939236 | 07/23/18 | 07/28/18 |
| 08/30/18 | 7318812983 | 07/24/18 | 07/28/18 |
| 07/19/18 | 7243261665 | 07/03/18 | 07/06/18 |
| 07/25/18 | 7266298297 | 07/09/18 | 07/14/18 |
| 07/25/18 | 7266298295 | 07/16/18 | 07/21/18 |
| 08/28/18 | 7314105149 | 07/23/18 | 07/28/18 |
| 07/18/18 | 7253720473 | 07/09/18 | 07/14/18 |
| 07/24/18 | 7254240700 | 07/09/18 | 07/13/18 |
| 09/10/18 | 8456527456 | 07/09/18 | 07/13/18 |
| 09/17/18 | 8461667456 | 07/17/18 | 07/22/18 |
| 07/17/18 | 7243139018 | 07/01/18 | 07/06/18 |
| 07/17/18 | 7243139013 | 07/02/18 | 07/08/18 |
| 08/13/18 | 7296419998 | 08/03/18 | 08/03/18 |
| 09/19/18 | 7363939244 | 08/27/18 | 08/27/18 |
| 08/13/18 | 7296358841 | 08/01/18 | 08/01/18 |
| 10/19/18 | 8481728580 | 08/05/18 | 08/05/18 |
| 08/28/18 | 7311283542 | 08/08/18 | 08/10/18 |
| 10/15/18 | 8479423918 | 08/20/18 | 08/21/18 |
| 10/23/18 | 8483482701 | 08/27/18 | 08/28/18 |
| 09/19/18 | 7363939208 | 08/03/18 | 08/04/18 |
| 10/29/18 | 8493507859 | 08/21/18 | 08/25/18 |
| 10/29/18 | 8493507883 | 08/27/18 | 08/31/18 |
| 09/11/18 | 7336616935 | 08/27/18 | 08/31/18 |
| 09/17/18 | 7344574921 | 08/27/18 | 08/31/18 |
| 09/19/18 | 7363939224 | 08/20/18 | 08/24/18 |
| 10/22/18 | 8482943166 | 08/20/18 | 08/24/18 |
| 08/09/18 | 7292857089 | 08/01/18 | 08/04/18 |
| 10/16/18 | 8479967730 | 08/15/18 | 08/18/18 |
| 10/23/18 | 8483482658 | 08/22/18 | 08/25/18 |
| 09/07/18 | 7323992489 | 08/20/18 | 08/22/18 |
| 10/19/18 | 8481753136 | 08/16/18 | 08/19/18 |
| 08/22/18 | 7314105158 | 08/06/18 | 08/11/18 |
| 09/19/18 | 7363939219 | 08/06/18 | 08/11/18 |
| 10/08/18 | 7349988944 | 09/05/18 | 09/09/18 |
| 09/19/18 | 7362018047 | 09/07/18 | 09/10/18 |
| 12/11/18 | 7513650247 | 09/10/18 | 09/15/18 |
| 10/03/18 | 7374251483 | 09/17/18 | 09/21/18 |
| 10/02/18 | 7373851940 | 09/03/18 | 09/07/18 |
| 10/03/18 | 7373851941 | 09/10/18 | 09/14/18 |
| 10/06/18 | 7385010108 | 09/17/18 | 09/21/18 |
| 09/18/18 | 7344574923 | 09/03/18 | 09/06/18 |
| 09/17/18 | 7347183387 | 09/05/18 | 09/08/18 |

| | | | |
|---|---|---|---|
| 11/05/18 | 7440592701 | 09/05/18 | 09/08/18 |
| 10/08/18 | 7349988929 | 09/10/18 | 09/10/18 |
| 10/11/18 | 7393226432 | 09/24/18 | 09/26/18 |
| 09/25/18 | 7361655788 | 09/05/18 | 09/07/18 |
| 09/18/18 | 7347183404 | 09/03/18 | 09/04/18 |
| 09/18/18 | 7347183396 | 09/01/18 | 09/01/18 |
| 09/18/18 | 7344574922 | 09/01/18 | 09/01/18 |
| 11/01/18 | 7430281138 | 10/17/18 | 10/17/18 |
| 12/05/18 | 7457619377 | 10/29/18 | 11/05/18 |
| 11/01/18 | 7430281126 | 10/15/18 | 10/16/18 |
| 11/02/18 | 7426554553 | 10/15/18 | 10/20/18 |
| 11/05/18 | 7445599606 | 10/22/18 | 10/27/18 |
| 11/13/18 | 7445659883 | 10/27/18 | 10/28/18 |
| 11/13/18 | 7445659879 | 10/22/18 | 10/23/18 |
| 10/30/18 | 7427188709 | 10/15/18 | 10/17/18 |
| 10/30/18 | 7427188710 | 10/18/18 | 10/20/18 |
| 10/18/18 | 7416748450 | 10/08/18 | 10/12/18 |
| 12/13/18 | 7520249444 | 11/30/18 | 11/30/18 |
| 12/06/18 | 7468268431 | 11/06/18 | 11/06/18 |
| 11/28/18 | 7468268443 | 11/08/18 | 11/08/18 |
| 11/29/18 | 7491532917 | 11/20/18 | 11/20/18 |
| 12/06/18 | 7506509164 | 11/30/18 | 11/30/18 |
| 12/17/18 | 7506157403 | 11/27/18 | 11/28/18 |
| 11/20/18 | 7459539040 | 11/05/18 | 11/07/18 |
| 01/09/19 | 7553755746 | 11/20/18 | 11/25/18 |
| 12/07/18 | 7490813018 | 11/20/18 | 11/26/18 |
| 03/05/19 | 7652943528 | 11/20/18 | 11/26/18 |
| 01/17/19 | 7559837423 | 11/13/18 | 11/19/18 |
| 03/05/19 | 7652943522 | 11/14/18 | 11/19/18 |
| 02/27/19 | 7652943536 | 11/27/18 | 12/04/18 |
| 12/24/18 | 7520060630 | 11/24/18 | 12/03/18 |
| 12/13/18 | 7520249453 | 12/05/18 | 12/05/18 |
| 12/27/18 | 7543598575 | 12/12/18 | 12/12/18 |
| 12/13/18 | 7520249461 | 12/03/18 | 12/03/18 |
| 12/27/18 | 7544360460 | 12/18/18 | 12/18/18 |
| 12/27/18 | 7543598576 | 12/17/18 | 12/17/18 |
| 12/27/18 | 7543598580 | 12/10/18 | 12/17/18 |
| 01/07/19 | 7560291584 | 12/27/18 | 12/29/18 |
| 01/18/19 | 7544375106 | 12/08/18 | 12/09/18 |
| 01/09/19 | 7543336158 | 12/14/18 | 12/16/18 |
| 03/05/19 | 7652944592 | 12/05/18 | 12/08/18 |
| 01/09/19 | 7543387689 | 12/10/18 | 12/13/18 |
| 01/17/19 | 7560291583 | 12/19/18 | 12/26/18 |
| 01/03/19 | 7543336160 | 12/04/18 | 12/10/18 |
| 12/14/18 | 7520060639 | 12/04/18 | 12/10/18 |
| 01/15/19 | 7559970568 | 12/27/18 | 12/31/18 |
| 12/27/18 | 7543336161 | 12/11/18 | 12/18/18 |
| 01/09/19 | 7543387682 | 12/03/18 | 12/07/18 |
| 02/26/19 | 7652918669 | 12/09/18 | 12/17/18 |
| 04/09/19 | 7732150554 | 12/17/18 | 12/26/18 |

# EXHIBIT B

1  Zachary Rothenberg (SBN 215404)
   Salvatore J. Zimmitti (SBN 245678)
2  **NELSON HARDIMAN LLP**
   1100 Glendon Avenue, 14th Floor
3  Los Angeles, CA 90024
   Telephone: (310) 203-2800
4  Facsimile:  (310) 203-2727
   zrothenberg@nelsonhardiman.com
5  szimmitti@nelsonhardiman.com

6  Attorneys for Plaintiffs SOBERTEC LLC
   And BEACHSIDE RECOVERY LLC

7             SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                         COUNTY OF ORANGE

9

10  SOBERTEC LLC, a California limited        CASE NO.: 30-2019-01069823-CU-CO-CJC
11  liability company, and BEACHSIDE
    RECOVERY LLC, a California limited        [Assigned to Hon. James L. Crandall, Dept. C33]
12  liability company,
                          Plaintiffs,        **STIPULATION AND PROTECTIVE**
13                                            **ORDER REGARDING CONFIDENTIAL**
            v.                                **DOCUMENTS, INFORMATION AND**
14                                            **MATERIAL – "CONFIDENTIAL" OR**
    UNITEDHEALTH GROUP INC, a                 **"HIGHLY CONFIDENTIAL –**
15  Delaware corporation, UNITED              **ATTORNEYS' EYES ONLY"**
    HEALTHCARE SERVICES, INC., a              **DESIGNATION**
16  Minnesota corporation,
    UNITEDHEALTHCARE INSURANCE
17  COMPANY, a Connecticut corporation,       Action Filed: May 14, 2019
    UNITED BEHAVIORAL HEALTH,                 Trial Date: None Set
18  INC., a California Corporation,
    UNITEDHEALTHCARE SERVICE LLC,
19  a Delaware limited liability company,
    OPTUMINSIGHT, INC., a Delaware
20  corporation, OPTUM SERVICES, INC., a
    Delaware corporation, and DOES 1-100,
21  inclusive,

22                        Defendants.

23

24

25

26

27

28

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

WHEREAS, discovery in the above-entitled matter (hereinafter, the "Action") may require the disclosure of documents, information, and material containing confidential commercial, personal, financial, protected health, or other sensitive information;

WHEREAS, certain documents, information, and materials relevant to the claims and defenses in this Action may be subject to the Standard of Privacy of Individually Identifiable Health Information, 45 C.F.R. Parts 160 and 164, promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); California Code of Civil Procedure section 56 et seq.; or other applicable statutory or regulatory privacy protections; and

WHEREAS, Plaintiffs SOBERTEC LLC and BEACHSIDE RECOVERY LLC ("Plaintiffs") and Defendants UNITEDHEALTH GROUP INC., UNITED HEALTHCARE SERVICES, INC., UNITEDHEALTHCARE INSURANCE COMPANY, UNITED BEHAVIORAL HEALTH, INC., UNITEDHEALTHCARE SERVICE LLC, OPTUMINSIGHT, INC., and OPTUM SERVICES, INC. ("Defendants") (collectively, the "Parties", or individually, a "Party") acknowledge and agree that it is appropriate to provide safeguards to prevent the public dissemination of such confidential information, and to establish procedures to limit disclosure of such information;

**IT IS HEREBY STIPULATED**, by and between the Parties, by and through their respective counsel of record, in order to facilitate the exchange of documents, information, and material which may be subject to confidentiality limitations on disclosure due to federal laws, state laws, and privacy rights, the Parties enter into this Stipulation and Protective Order regarding Confidential Documents, Information, and Material (the "Agreement" or "Protective Order") as follows:

1. In this Stipulation and Protective Order, the terms set forth below shall have the following meanings:

a. "Confidential Information" means any document, information, or material in any form, or any portion thereof, produced in this Action that is designated "Confidential" or "Highly Confidential – Attorneys' Eyes Only" and relates to individual patient claims and/or contains confidential

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

603957.1

2
STIPULATION AND PROTECTIVE ORDER
Exhibit B, Page 104

commercial, personal, financial, or protected health information.

b.   "Disclosing Party" means the Party, person, or entity that discloses and designates or instructs the designation of documents, information, or material as "Confidential" or "Highly Confidential – Attorneys' Eyes Only."

c.   "Documents" means any "Writing," "Original" and "Duplicate" as those terms are defined in California Evidence Code sections 250, 255, and 260, which have been produced in discovery in this Action by any Party, person, or entity; and any copies, reproductions, or summaries of all or any part of the foregoing.

d.   "Receiving Party" means the Party, person, or entity who is the intended recipient of Confidential Information.

2.   The Disclosing Party shall have the right to designate Confidential Information as follows:

a.   A Disclosing Party may designate as **"Confidential"** any document, information, or material produced in discovery, pursuant to legal process, or exchanged informally for settlement purposes, if the person making the designation reasonably believes, in good faith, that the items designated contain or constitute (a) trade secrets, (b) proprietary or otherwise sensitive non-public business information, (c) information implicating an individual's legitimate expectation of privacy, or (d) "protected health information" as defined in 45 C.F.R. §§ 160.103 and 164.501.

b.   A Disclosing Party may designate as **"Highly Confidential – Attorneys' Eyes Only"** any information or documents produced in discovery, pursuant to legal process, or exchanged informally for settlement purposes, if the person making the designation reasonably believes, in good faith, that the material so designated contains or constitutes highly confidential personal or commercial information, such as trade secrets, financial information,

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

1   business strategy, or other information, disclosure of which would be
2   especially detrimental or harmful to the Disclosing Party or its business.

3       3.    Confidential Information shall be used by the Parties, persons, or entities receiving
4   them only for the purposes of preparing for, conducting, participating in the conduct of,
5   prosecuting, and/or defending this Action, and not for any business or other purpose whatsoever.

6       4.    Entering into, agreeing to, and/or complying with the terms of this Protective Order
7   shall not:

8       a.  Operate as an admission by any person that any particular document,
9   information, or material contains or reflects trade secrets, proprietary,
10   confidential, or competitively sensitive business, commercial, financial, or
11   personal information;

12       b.  Operate as a waiver for any person the right to challenge another Party's
13   designation of any documents, information, or materials as Confidential
14   Information;

15       c.  Alter, waive, modify, or abridge any right, privilege, or protection available to
16   any Party with respect to discovery, including but not limited to any Party's
17   right to assert the attorney-client privilege, the attorney work product doctrine,
18   or other privileges, or any Party's right to contest any such assertion; or

19       d.  Prejudice the right of any person to seek relief from the Court from any
20   provision of this Protective Order.

21       5.    Protected Health Information:

22       a.  All parties and counsel in this action (including all plaintiffs' counsel,
23   regardless of the particular individual(s) they represent) are authorized to
24   receive, subpoena, and transmit protected health information to the extent and
25   subject to the conditions set forth herein.

26       b.  All "covered entities," as defined in 45 C.F.R. § 160.103, are authorized to
27   disclose protected health information in this action to the extent and subject to
28   the conditions set forth herein.

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

603957.1

4

STIPULATION AND PROTECTIVE ORDER

c. Nothing in this Order authorizes counsel to obtain medical records or protected health information through means other than formal discovery requests, subpoenas, depositions, patient authorizations, or other lawful processes.

d. This Order does not control or limit the use of protected health information that comes into possession of any party or any party's counsel from source other than a covered entity as defined in 45 C.F.R. § 160.103.

6. Confidential Information must be clearly designated as such before the Confidential Information is produced. The designation label must not obscure or interfere with the legibility of the Confidential Information.

a. For Documents (other than transcripts of depositions or other pretrial or trial proceedings), the Disclosing Party must affix the designation label of "Confidential" or "Highly Confidential – Attorneys' Eyes Only" on each page of any Document containing Confidential Information.

b. For deposition testimony, the Disclosing Party may either:

i. Identify on the record, before the close of deposition, the specific portions of the testimony that are Confidential Information, or

ii. State on the record, before the close of deposition, that the entirety of the deposition testimony is Confidential Information and that the Disclosing Party has the right to identify the specific portions of the testimony that are Confidential Information within thirty (30) days of receipt of the deposition transcript.  Depositions shall be treated as "CONFIDENTIAL" during the thirty-day period following receipt of the transcript.

Where specific portions are designated as Confidential Information, the transcript pages containing Confidential Information may be separately bound by the court reporter, who must affix the designation label as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" at the top of each page.

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

The deposition of any witness (or any portion of such deposition) that encompasses "CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEY'S EYES ONLY" information shall be taken only in the presence of persons who are qualified to have access to such information. It shall be the responsibility of the party invoking any such designation of deposition testimony to alert any party attending the deposition.

c.   For Confidential Information in some form other than Documents or deposition testimony, the Disclosing Party must affix the designation label of "Confidential" or "Highly Confidential – Attorneys' Eyes Only" in a prominent place on the exterior of the container or containers in which the Confidential Information is stored. If only portions of the item are Confidential Information, the Disclosing Party, to the extent practicable, shall identify the Confidential Information.

7.   Confidential Information designated as "Confidential" shall be maintained in confidence, and not disclosed, directly or indirectly, through the production of Confidential Information or otherwise, to any person except as provided in this paragraph:

a.   Any authors of the Confidential Information or persons identified on the face of the document as having received the Confidential Information in a communication occurring prior to production;

b.   Outside counsel for the Parties in this Action (including co-counsel, members, and employees of counsel's law firm);

c.   In-house counsel for the Receiving Party;

d.   Consultants or experts retained by any Party or its counsel to furnish expert or litigation support services for the prosecution or defense of this Action;

e.   Directors, officers, and employees of the Receiving Party to whom it is necessary that the Confidential Information be shown for the purposes of this Action;

f.   Personnel of the Honorable James L. Crandall, presiding in this Action in

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

603957.1

6

STIPULATION AND PROTECTIVE ORDER

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

1    the Superior Court for the State of California, County of Orange (the

2    "Court"), pursuant to the restrictions set forth in Paragraph 10 of the

3    Protective Order and/or at the direction of the Court;

4    g.    Such other persons as hereafter may be designated by written agreement of

5    the Parties or by order of the Court; and

6    h.    Witnesses (other than persons described in paragraph 7(a)).

7    8.    Confidential Information designated as "Highly Confidential – Attorneys' Eyes

8    Only" (hereinafter "Attorneys' Eyes Only Material") shall be disclosed only to the "qualified

9    persons" listed in subparagraphs 7(a), (b), (d), (f), and (g) above, unless otherwise agreed or

10   ordered. For the purposes of subparagraph 7(b), Attorneys' Eyes Only Material may not be shown

11   to any member or employee of any law firm or other entity or individual who has been, is currently,

12   or will be in the foreseeable future involved in the negotiation of contracts on behalf of any of the

13   Parties to this Agreement, unless the person authored the document or is identified on the face of

14   the document as a previous recipient. Additionally, Attorneys' Eyes Only Material may be shown

15   to persons listed in subparagraphs 7(c) and 6(h) under the following conditions:

16   a.    For the purposes of subparagraph 7(c), Attorneys' Eyes Only Material may

17   be shown to in-house litigation counsel for the Parties, provided that any in-

18   house litigation counsel to whom Attorneys' Eyes Only Material is shown

19   is not and will not in the foreseeable future be involved in the negotiation

20   of contracts between the Parties, and does not share the documents, or the

21   contents thereof, with any of the Parties' directors, officers, agents, or

22   employees who negotiate contracts between the Parties.

23   b.    Attorneys' Eyes Only Material may be shown to persons under

24   subparagraph 7(h) if the witness is an employee of the party who produced

25   the information designated as "Highly Confidential – Attorneys' Eyes

26   Only", if the witness is identified on the face of the document as a previous

27   recipient, or if the party who produced the information as "Highly

28   Confidential – Attorneys' Eyes Only" consents before such designated

7

1    information is disclosed to the witness.

2        9.      Any Party, person, or entity receiving information designated as "Confidential" or

3    "Highly Confidential – Attorneys' Eyes Only" shall not reveal or discuss such information to or

4    with any person who is not permitted to receive such information, except as set forth herein.

5        10.     Confidential Information held by a Party may be disclosed to persons as provided

6    in Paragraphs 7 or 8 provided that prior to such disclosure the person to whom disclosure of

7    Confidential Information is to be made shall acknowledge and confirm in the form of a

8    Declaration, attached hereto as Exhibit "A", that he or she has read this Protective Order and agrees

9    to comply with its terms.

10       11.     In the event a Party inadvertently fails to designate documents, information, or

11   material as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" before copies are

12   produced to another Party, the Disclosing Party shall diligently notify in writing all recipients of

13   the documents, information, or material which should be designated as "Confidential" or "Highly

14   Confidential – Attorneys' Eyes Only." The Disclosing Party shall specifically identify, by

15   reference to document title, page number, and/or any alpha and/or numeric production designation,

16   the documents, information, or material to be designated as "Confidential" or "Highly Confidential

17   – Attorneys' Eyes Only." The Disclosing Party shall have the right to recover all copies of the

18   documents, information, or material to be designated as "Confidential" or "Highly Confidential –

19   Attorneys' Eyes Only" and apply the "Confidential" or "Highly Confidential – Attorneys' Eyes

20   Only" designation label, and the Receiving Party shall return to the Disclosing Party all copies of

21   unlabeled documents, information, or material that was inadvertently disclosed, or destroy the

22   same at the request of the Disclosing Party. The inadvertent or *in camera* disclosure of Confidential

23   Information shall not, under any circumstances, be deemed a waiver, in whole or in part, of any

24   Party's claims of confidentiality.

25       12.     If any Party objects to the designation of documents, information, or material as

26   Confidential Information, then that Party shall state the objection in writing to all counsel of record

27   in this Action. If the Parties are unable to resolve the objection by mutual agreement, the Disclosing

28   Party may seek a ruling on the challenged material from the Court, giving at least fourteen (14)

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

603957.1

8

STIPULATION AND PROTECTIVE ORDER

Exhibit B, Page 110

1   days advance written notice to the Receiving Party. In any such proceeding, the Disclosing Party

2   shall bear the burden of proof for demonstrating that the documents, information or material

3   qualifies as Confidential Information as defined in this Agreement. Until the Court rules on the

4   objection, the disputed documents, information, or material shall continue to be treated as

5   Confidential Information according to its designations as "Confidential" or "Highly Confidential

6   – Attorneys' Eyes Only". Neither Party shall be obligated to challenge the propriety of any

7   designation of documents, information, or material, and a failure to so challenge shall not preclude

8   a subsequent attack on the propriety of such designation, unless prejudice can be shown by the

9   Disclosing Party to have resulted from the delay in challenging the designation.

10         13.     In the event any Confidential Information is or was used in any pretrial or discovery

11   proceeding in this action, it shall not lose its confidentiality through such use. All pleadings,

12   motions, oral discovery, and written discovery in this Action which contain or discuss Confidential

13   Information shall be presented only to persons authorized to receive such Confidential Information

14   under this Protective Order.

15         14.     Following a party's receipt of documents subpoenaed from a third party (either from

16   another party or the third-party), any party may designate which, if any, of those documents shall

17   be considered "Confidential" or "Highly Confidential – Attorneys' Eyes Only." The third party

18   or third parties producing such documents also shall designate which, if any, of those documents

19   shall be considered "Confidential" or "Highly Confidential – Attorneys' Eyes Only." All such

20   documents so designated shall be handled in accordance with this Protective Order. Upon any

21   party or non-party making such a designation, subpoenaing counsel shall consider all such

22   designated documents "Confidential" or "Highly Confidential – Attorneys' Eyes Only," and

23   handle same in accordance with this Protective Order. A copy of the Protective Order shall be

24   served along with any subpoena for discovery served upon a third party or non-party in connection

25   with this action.

26         15.     Non-party witnesses may avail themselves of the procedures and protections in this

27   Protective Order by agreeing in writing to be bound by this Protective Order.

28         16.     In the event additional parties join or are joined in this action, they shall not have

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

603957.1

9

STIPULATION AND PROTECTIVE ORDER

1  access to Confidential Information until the newly joined party has executed and filed with the

2  Court its agreement to be fully bound by this Protective Order.

3        17.    To the extent that it is necessary to file Confidential Information containing non-

4  redacted PHI, proprietary, personal, or other information, the filing party shall ask the Court to

5  seal the materials.  The procedures set forth in Rules 2.550 and 2.551 of the California Rules of

6  Court shall govern such material filed with the Court.

7        18.    This Protective Order shall be considered a Qualified Protective Order complying

8  with 45 C.F.R. §164.512(e)(1)(v)(A) and (B) and authorizing disclosure of protected health

9  information pursuant to 45 C.F.R. §164.512(e)(1)(iv)(A). Notwithstanding state or federal law

10  limiting a Producing Party's authority to disclose protected health information, the Producing Party

11  is permitted to release protected health information in its possession in response to a discovery

12  request, provided that such a request otherwise complies with the requirements of the California

13  Code of Civil Procedure. The parties may not use or disclose Confidential Health Information

14  produced in this action for any purpose in any other action. Confidential Health Information shall

15  be subject to all other provisions of this Protective Order.

16        19.    Within 90 days following the termination of this Action through settlement or

17  adjudication, and upon written request, all Confidential Information shall be returned to the

18  Disclosing Party or destroyed; and all copies, summaries, or transcripts thereof, and any other

19  documents which contain, reflect, refer, or relate to such Confidential Information which are not

20  returned to the Disclosing Party shall be destroyed. Upon written request, counsel of record for

21  each Party shall attest to compliance with the terms of this paragraph in an affidavit or declaration

22  served on the other Party within the 90 day period. This paragraph shall not preclude counsel from

23  maintaining a file copy of any pleadings, motions, oral discovery, and written discovery that

24  contains or attaches Confidential Information.

25        20.    This Protective Order may be executed in counterparts, each when taken together

26  with the others, shall constitute a whole, as if executed simultaneously on the same document.

27        21.    This Protective Order may be amended or modified only by further order of the

28  Court upon written stipulation of the Parties or, if the Parties have a disagreement regarding

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

603957.1

1   potential amendment or modification, by application to the Court.  The obligations imposed by the

2   Protective Order shall survive the termination of this action, and

3

4   **IT IS SO STIPULATED.**

5   DATED: _____, 2019          NELSON HARDIMAN LLP

6

7

8   By: _____

9   Zachary Rothenberg
    Salvatore J. Zimmitti

10  Attorneys for Plaintiffs
    SOBERTEC LLC and
11  BEACHSIDE RECOVERY LLC

12

13

14  DATED: June 4 _____, 2019          DORSEY & WHITNEY LLP

15

16  By: _____
17  Divya S. Gupta

18  Attorneys for
19  Defendants UNITEDHEALTH GROUP INC.,
    UNITED HEALTHCARE SERVICES, INC.,
20  UNITEDHEALTHCARE INSURANCE
    COMPANY, UNITED BEHAVIORAL
21  HEALTH, INC., UNITEDHEALTHCARE
    SERVICE LLC, OPTUMINSIGHT, INC., and
22  OPTUM SERVICES, INC.

23

24

25

26

27

28

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**ORDER**</u>

**GOOD CAUSE APPEARING THEREFOR, IT IS SO ORDERED.**

DATED: _____     By: _____

HON. JAMES L. CRANDALL
Superior Court of the State of California,
County of Orange

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

603957.1

12

STIPULATION AND PROTECTIVE ORDER

**EXHIBIT A**

**DECLARATION**

I, _____, hereby declare:

1.    My address is:_____

_____.

2.    My present occupation is: _____.

3.    I have read a copy of the STIPULATION AND PROTECTIVE ORDER REGARDING CONFIDENTIAL DOCUMENTS, INFORMATION AND MATERIAL (the "Protective Order") in the action entitled "*Sobertec LLC v. UnitedHealth Group Inc., et al.*" (the "Action") pending in the Superior Court of the State of California, County or Orange, Case No.: 30-2019-01069823-CU-CO-CJC, and understand the provisions of the Protective Order.

4.    I will comply with all of the provisions of the Protective Order. I will hold in confidence, will not disclose to anyone other than those persons specifically authorized by the Protective Order, and will not copy or use except for the purposes of the Action, any materials that I receive in connection with the Action.

5.    I hereby consent to the jurisdiction of the Superior Court of the State of California, County of Orange, for the purposes of enforcing the Order and this Declaration.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on the _____ of _____, 20___, in _____.

[_____]
Declarant

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

603957.1

## PROOF OF SERVICE

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of 18 and not a party to the within action. My business address is 1100 Glendon Avenue, 14th Floor, Los Angeles, California 90024.

On June 5, 2019 , I served on the interested parties the document(s) described as **STIPULATION AND PROTECTIVE ORDER REGARDING CONFIDENTIAL DOCUMENTS, INFORMATION AND MATERIAL – "CONFIDENTIAL" OR "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" DESIGNATION** by transmitting a true and correct copy thereof addressed as follows:

### SEE ATTACHED SERVICE LIST

☒ **(BY MAIL)** I placed a true and correct copy of the above referenced document with postage fully prepaid in an envelope(s) for collection and mailing, following ordinary business practices, at the business offices of NELSON HARDIMAN, LLP, and addressed as shown above, for deposit in the United States Postal Service. I am readily familiar with the practice of NELSON HARDIMAN, LLP for collection and processing correspondence for mailing with the United States Postal Service, and I am aware service is presumed invalid if postal cancellation date or postage meter date is more than one day after the deposit for mailing.

☐ **(BY OVERNIGHT DELIVERY)** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the address referenced above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☒ **(BY ELECTRONIC MAIL)** I caused a courtesy copy of the above-referenced document to be transmitted to the interested parties via electronic transmission from the email address of rsoll@nelsonhardiman.com to the email address(es) as stated above.

☐ **(BY ELECTRONIC SERVICE)** I caused a copy of the above-referenced document to be transmitted to the interested parties via electronic transmission from the e-portal of One Legal to the email address(es) as stated above.

☐ **(BY PERSONAL SERVICE)** I caused Nationwide Attorney Service to deliver such envelope(s) by hand to the offices of the addressee(s).

[X]   (State)   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed June 5, 2019, at Los Angeles, California.

Frances Sheldon
Type or Print Name

Signature

1

PROOF OF SERVICE

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

**SERVICE LIST**
*Sobertec LLC v. UnitedHealth Group Inc., et al.*
*Orange County Superior Court Case No. 30-2019-01069823-CU-CO-CJC*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Divya S. Gupta
DORSEY & WHITNEY LLP
600 Anton Blvd., Suite 2000
Costa Mesa, CA 92626
Tel: 714-800-1493
Gupta.divya@dorsey.com
Attorneys for DEFENDANTS

Meghan DesLauriers
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Tel: 612-340-2600
deslauriers.meghan@dorsey.com
Attorneys for DEFENDANTS

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

2

606176.1

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the City of Costa Mesa, County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is 600 Anton Boulevard, Suite 2000, Costa Mesa, CA 92626. On June 17, 2019, I served the documents named below on the parties in this action as follows:

DOCUMENT(S) SERVED:     **NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**

SERVED UPON:

Zachary Rothenberg
Salvatore J. Zimmitti
NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024
Tel: (310) 203-2800; Fax: (310) 203-2727

☐ (BY MAIL) I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at Costa Mesa, California. I am readily familiar with the practice of Dorsey & Whitney LLP for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection.

☐ (BY ELECTRONIC MAIL) The above-referenced document was transmitted in "pdf" format by electronic mail ("e-mail") to each of the e-mail addresses listed, and no errors were reported.

☐ (BY PERSONAL SERVICE) I delivered to an authorized courier or driver authorized by Legal Solution to receive documents to be delivered on the same date. A proof of service signed by the courier will be filed with the court upon request.

☒ (BY FEDERAL EXPRESS) I am readily familiar with the practice of Dorsey & Whitney LLP for collection and processing of correspondence for overnight delivery and know that the document(s) described herein will be deposited in a box or other facility regularly maintained by Federal Express for overnight delivery.

☒ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court, at whose direction this service was made.

Executed on June 17, 2019, at Costa Mesa, California.

_Carmen Murashko_
Carmen Murashko

**NOTICE OF REMOVAL**